ORIGINAL

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK                Case# 1:15-CV-2978
-----------------------------------------------------------x
Brad Ralin                                  (KAM) (SMG)

                        Plaintiff

        -Against -

                                            **2ND AMENDED COMPLAINT**

The City of New York,
The New York City Department of Finance,
The New York City Police Department,       PLAINTIFF DEMANDS
Michael Sileo, Officially and Individually,  TRIAL BY JURY
J.A. Hunte, Officially and Individually
Rosemary Simmons, Officially and Individually
John and Jane Doe, Officially and Individually
                        Defendant(s)
-----------------------------------------------------------x



                    PLAINTIFF'S COMPLAINT

NOW COMES the Pro Se Plaintiff, Brad Ralin, on information, belief and established
facts, and for his causes of action against all named and unnamed Defendants states the
following:

                    STATEMENT OF THE CASE

1. The City of New York, their agencies and agents : The New York City
   Department of Finance,The New York City Police Department, The New York City
   Department of Transportation, their Police Officers, Traffic Enforcement Agents,
   Parking Control Specialists, and other unknown agents and agencies have embarked on
   a long term pattern of harassment against Brad Ralin by committing perjury and falsely
   accusing Plaintiff  under color of law for violating NYC Traffic rules: Violation Code
   83 Traffic Rule 4-08 § (j)(1) for an improper registration - commercial vehicle for
   having no rear seat$\underline{S}$ (plural) etc.

2. For approximately 15 years the City of N.Y. and their agents have committed
   perjury under the color of law fraudulently claiming plaintiff has an improperly
   registered vehicle. Plaintiff's Ford E150 Passenger vehicle (VIN#
   1FTEE14Y9PHA79791) a modified van is a properly registered passenger van as
   defined under New York State Department of Motor Vehicles Rule and Regulation
   106.3.d because it has a " permanently bolted rear auto seat and rear side window ".

1

3. NYS Department of Motor Vehicles is the only governmental agency that has the authority to issue vehicle registrations and license plates, and to define what is a commercial vehicle in New York State.

4. Plaintiff has made approximately15 years of complaints to City of New York officials regarding perjury, harassment and ticket quotas as related to all of the approximately 50+ dismissed improper registration - commercial vehicle Notice of Parking Violations (NOPV's). No action was taken to effectively stop the continuous issuance of the perjurious NOPV's, or to punish, train or supervise the city agents and officials responsible for the continuous issuance over approximately 15 years.

5. Defendants' and defendants' agents' conduct, actions, and inactions under "color of law " has violated plaintiff's constitutional rights including but not limited to his 5th, 14th, 4th and and 1st amendments of the Constitution of the United States, due process rights, right to cross-examination, right to impartial tribunal etc. Defendants have continuously harassed plaintiff with abuse of process, color of law violations and violations of due process threatening his constitutional  right to travel etc.

6. The City of New York, their agencies and agents have conspired and engaged in an illegal ticket quota enterprise. The illegal ticket quota policy, practice and enterprise uses threats, extortion, perjury and asset / property confiscation to raise revenues from the public. Defendants' and defendants' agents' conduct, (actions and inactions) and ticket quota policy and practice have violated racketeering laws.

7. The facts to be set forth allow plaintiff to plead Monell Claims and obtain relief for defendants' failure to screen, train, supervise, control, discipline, for defendants' officials' policy and practice of illegal ticket quotas, racketeering, and for other violations of law that violated plaintiff's constitutional rights (etc.).

### JURISDICTION AND VENUE

8. The following jurisdictional and venue claims merit this 2nd Amended Complaint to be afforded judicial review on behalf of plaintiff.

9. Jurisdiction is based upon:

    a) The jurisdiction of this court is invoked pursuant to 18 U.S.C. §242 for Color of Law violations.

    b) The acts of the defendants occurred in the Eastern District of New York and venue is based on 28 U.S.C. § 1391(b).

    c) The jurisdiction of this court is invoked pursuant to 42 U.S.C. §1983 for Color of Law violations.

d) The jurisdiction of this court is invoked pursuant to 42 U.S.C. §1983 for
   Denial of Due Process.

e) The jurisdiction of this court is invoked pursuant to 42 U.S.C. § 1983 for
   Abuse of Process.

f) The jurisdiction of this court invoked pursuant to 42 U.S.C. § 1983
   Harassment.

g) The jurisdiction of this court invoked pursuant to the 1st Amendment to the
   of the Constitution of the United States.

h) The jurisdiction of this court invoked pursuant to the 14th Amendment to the
   Constitution of the United States.

i) The jurisdiction of this court invoked pursuant to the 5th Amendment to the
   Constitution of the United States.

j) The jurisdiction of this court invoked pursuant to the 4th Amendment to the
   Constitution of the United States.

k) The jurisdiction of this court is invoked pursuant to 42 U.S.C. § 1988 for
   Costs, Fees and Attorneys Fees.

l) The jurisdiction of this court is invoked pursuant to 18 U.S.C. § 1961-68 for
   violations under "RICO "- Racketeering.

m) The jurisdiction of this court is invoked pursuant to 18 U.S.C. § 1951 for
   violations under the Hobbs Act.

n) The jurisdiction of this court invoked pursuant to 28 U.S.C. § 1331.

o) The jurisdiction of this court invoked pursuant to 28 U.S.C. § 1343.

## PARTIES

10. Pro Se Plaintiff, Brad Ralin - 65-09 99th Street Flushing, New York 11374
    is a resident of Queens in the State of New York.

11.a) Defendant, The City of New York c/o NYC Law Department Corporation
      Council 100 Church Street 4th Floor New York, N.Y. 10007 is a Municipal
      Corporation existing under the laws of the State of New York and employs all
      Defendants.

   b) Defendant, The New York City Police Department 1 Police Plaza Room 1406
      New York, N.Y. 10038 c/o NYC Law Department Corporation Council
      100 Church Street 1st Floor New York, N.Y. 10007 is a City Government
      Agency / Municipal Corporation.

   c) Defendant, The New York City Department of Finance 66 John Street  Room
      104 New York, New York 10038 NYC Law Department Corporation
      Council 100 Church Street 1st Floor New York, N.Y. 10007 is a City
      Government Agency / Municipal Corporation.

d) Defendant, Michael Sileo - NYPD Commanding Officer - of unknown address c/o New York City Police Department Queens North Enforcement 135-20 32nd Avenue Flushing, New York 11354 is, and at all times relevant to this action was, a Commanding Officer - Manager of the New York City Police Department and acted under the color of city and state law. Michael Sileo is a resident of unknown / New York State. Michael Sileo is being sued in both his official and individual capacity.

e) Defendant, J.A. Hunte - tax registry # 357087 of unknown address c/o The New York City Police Department / Brooklyn North Command 25 Chapel Street Brooklyn, New York 11201 (previously New York City Police Department / Queens North Enforcement 135-20 32nd Avenue, Flushing, New York 11354) is, and at all times relevant to this action was, a Traffic Enforcement Agent of the New York City Police Department and acted under the color of city and state law. J.A. Hunte is a resident of unknown / New York State. J.A. Hunte is being sued in both his/her official and individual capacity.

f) Defendant, Rosemary Simmons - tax registry 357687 of unknown address c/o The New York City Police Department / Queens North Enforcement 135-20 32nd Avenue, Flushing, New York 11354 is, and at all times relevant to this action was, a Traffic Enforcement Agent of The New York City Police Department and acted under the color of city and state law. R. Simmons is a resident of unknown / New York State. R. Simmons is being sued in both her official and individual capacity.

g) John and Jane Doe of unknown address c/o NYC Law Department Corporation Council 100 Church Street 1st Floor New York, N.Y. 10007 are agents of the City of New York. John and Jane Doe are residents of unknown, New York State. John and Jane Doe are both being sued in both his / her official and individual capacities.

<u>SUMMARY OF FACTS</u>

12. Plaintiff is the legal owner of a New York State registered 1993 Ford Econoline E150 Van. Plaintiff's van is a properly registered " passenger " van in accordance with <u>NYS Department of Motor Vehicle regulation - 106.3.d</u> - by having " a) one rear window on the driver's side and b) one seat permanently installed behind the driver. ".

13. Plaintiff is legally licensed by the State of New York to operate said vehicle. Plaintiff has a constitutional right to own and operate his legally registered vehicle without government harassment, threats of vehicle seizure and the continuous

numerous and burdensome issuance of perjurious violations without probable cause. A protected constitutional interest exists where the State recognizes the right to operate a vehicle by issuing an operator's license (Paul v Davis, 424 U.S. 693; Safeguard Mut. Ins. Co. v Miller, 477 F.Supp. 299). Simeone v. Lindsay, 65 Atl. 778, 779; Hannigan v. Wright, 63 Atl. 234, 236.

14. "The right of the citizen to drive on the public street with freedom from police interference, unless he is engaged in suspicious conduct associated in some manner with criminality is a fundamental constitutional right which must be protected by the courts." People v. Horton 14 Cal. App. 3rd 667 (1971). Berberian v. Lussier (1958) 139 A2d 869, 872, See also: Schecter v. Killingsworth, 380 P.2d 136, 140; 93 Ariz. 273 (1963). "The right to operate a motor vehicle [an automobile] upon the public streets and highways is not a mere privilege. It is a right of liberty, the enjoyment of which is protected by the guarantees of the federal and state constitutions'.". "The right of the citizen to travel upon the public highways and to transport his property thereon, either by carriage or by automobile, is not a mere privilege which a city may prohibit or permit at will, but a common law right which he has under the right to life, liberty, and the pursuit of happiness." Thompson v. Smith, 154 SE 579. "The right to travel is a part of the liberty of which the citizen cannot be deprived without due process of law under the Fifth Amendment." Kent v. Dulles, 357 US 116, 125.

15. Despite having no authority to issue vehicle registrations, license plates, and therefore vehicle class definitions, the City of New York (New York City Department of Transportation) defines a commercial vehicle by having three physical characteristics: " Pursuant to Section 4-01(b) of the New York City Traffic Rules, a commercial vehicle is defined as the following:

For the purposes of parking, standing and stopping rules, a vehicle shall not be

deemed a commercial vehicle or a truck unless:

- it bears commercial plates, and
- it is permanently altered by having all seats and seat fittings, except the front seats, removed to facilitate the transportation of property, except that for vehicles designed with a passenger cab and a cargo area separated by a partition, the seating capacity within the cab shall not be considered in determining whether the vehicle is properly altered; and
- it displays the registrant's name and address permanently affixed in characters at least three inches high on both sides of the vehicle, with such display being in a color contrasting with that of the vehicle and placed approximately midway vertically on doors or side panels. "

NYC Traffic rule 4-01(b) requires that a vehicle bear commercial plates for it to be classified as a commercial vehicle. As such, under NYC rules and regulations the lack of commercial plates alone does not allow for the issuance of an improper registration - commercial vehicle NOPV.

16. Plaintiff's vehicle does not bear commercial plates and, does not have all rear seats removed - ie. it does have one permanently installed rear auto seat with safety belt bolted to the floor in the rear of the vehicle behind the driver's seat, and does not display any writing on any side of the vehicle.

17. Since approximately 2000 the City of New York their agencies and agents have committed perjury by fraudulently accusing plaintiff under color of law for parking a commercial vehicle in violation of NYC Traffic rules - violation Code 83 Traffic Rule 4-08 § (j)(1) for an improper registration for having no rear seats etc. Each " Notice of Parking Violation" summons states: " I affirm under the penalty of perjury (Penal Law 210.45) that i personally observed the offense charged above; if the operator was present, i wrote the operator's name above or marked the " ID Refused " box and personally served this Notice upon him/her. If NO name appears above and the ID Refused is not marked, I affixed this notice to the vehicle". Plaintiff has successfully defended and had dismissed all of approximately 50+ perjuriously issued improper registration commercial vehicle NOPV's.

18. Traffic Enforcement Agents ("TEA") in the City of New York perform their duties under color of law as from the New York City Police Department (" NYPD ").NYPD Traffic Enforcement agents are authorized to perform their duties by NYPD. NYPD is responsible for the screening, hiring,training, supervising, control, disciplining and firing of TEA's. Notice of Parking Violations issued by TEA's are sworn and alleged to be based on probable cause of and being witness and having observed violations of law, rules and regulations. An NOPV gives defendants' the authority to obtain a judgement that allows for the seizure of assets and vehicles of vehicle registrants and operators who violate laws, rules and regulations.

19. Since 2000 plaintiff has made many hundreds of complaints concerning the perjurious issuance of said NOPV's under color of law which include but is not limited to include: Mayor Bloomberg, Mayor Bill De Blasio, Public Advocate Bill De Blasio, Public Advocate Leticia James, NYC Dept. of Finance Chief Administrative Judges, NYC DOF Supervising Judge Alan Patricoff,  NYC Dept. of Finance Commissioners, NYC Dept. of Investigation, Commissioner of Internal Affairs Charles Campisi, NYC Dept. of Finance Chief  Judge Mary Gotsopoulis and Laura Held, NYC DOT Commissioner, NYPD Commissioner's Bratton and Kelly, and numerous NYPD officials and agents including Queens Traffic North Commander - Michael Sileo. No action has been taken to discipline, punish or terminate the employment of any City of New York agents for committing perjury by falsely

claiming to have observed plaintiff violating vehicle registration rule and regulations. Instead said agencies and agents have obstructed investigations, libel slandered and defamed plaintiff, destroyed ticket quota evidence and refused to do any competent thorough independent investigation. Defendants' and defendants' agents' conduct, actions, and inactions regarding the issuance of perjurious NOPV's and failure to take appropriate actions to train, control, supervise and discipline the NOPV issuing agents constitutes at the very least deliberate indifference. Said conduct actions and inactions by City of New York agencies and agents is evidence of a ticket quota policy and practice and racketeering.

20. On one occasion on April 27, 2004, Bruno Iciano NYC DOT agent who issued 2 perjurious NOPV's falsely claiming that Plaintiff had an improper registration - commercial vehicle for no rear seats. Plaintiff caught Bruno Iciano in the street on film moments after the 2nd NOPV was issued. Plaintiff advised Iciano on film that a rear auto seat was present and demanded that he stay on the scene and observe the seat for which he refused. Iciano fled the scene when told police were being called and them committed another crime by falsely identifying himself as "LuLu". Video tapes were sent to NYC DOI Commissioner- Rose Gill Hearn and Internal Affairs - Charles Campisi. All City agents who were provided with the video and complaint refused to take any action against Bruno Iciano or to stop the perjurious issuance of NOPV's. Said video which was provided to Hon. Matsumoto in Plaintiff's September 21, 2015 letter on a DVD is also available to be viewed on youtube - https://www.youtube.com/watch?v=u2BiupBlEtI. Said conduct, actions and inactions by defendants' and their agents at the very least constitutes deliberate indifference and is evidence of a ticket quota policy and practice and racketeering etc.

21. Another Traffic Enforcement Agent named Janet Hayward issued three perjurious NOPV's against plaintiff falsely claiming the vehicle was a commercial vehicle. Hayward's Supervisor Ida Terry claimed she told Hayward to not issue any further improper registration summonses on plaintiff's van. Ida Terry was tape recorded (provided to Hon. Matsumoto) stating she advised Hayward that plaintiff's vehicle was a lawfully registered passenger vehicle and to not issue further NOPV's on plaintiff's van. Janet Hayward issued further NOPV's despite Terry's claim that Hayward was instructed not to do so. Said conduct, actions and inactions by defendants' and their agents, Ida Terry, and Hayward at the very least constitutes deliberate indifference (failure to screen, train, supervise, control, discipline and is evidence of a ticket quota policy and practice, and racketeering etc.

22. On another occasion, Supervising Administrative Law Judge Alan Patricoff the infamous husband of NYC Dept. of Finance Assistant Commissioner - Rochelle Patricoff was taped recorded [audio provided to Hon. Matsumosto] stating (after being shown evidence of plaintiff's properly registered passenger vehicle with rear auto seat) that he " i'm not looking" " i don't care " about photo evidence plaintiff

was trying to show Patricoff of the rear seat of the rear seat. Plaintiff
complained to Patricoff that his subordinate ALJ Levine was corrupt/impartial by
refusing to acknowledge recently filmed pictures of the rear auto seat, and biased by
plaintiff's complaints to ALJ Levine which caused her to issue a guilty verdict
against him, Patricoff first asked Plaintiff to show him the pictures in the
camera and then admitted he did not care and was not looking . Said encounter
was recorded and fowarded to Mayor Bloomberg and the NYC DOI Commissioner
Rose Gill Hearn etc. No action was taken and it was discovered that NYC DOI -
Vincent Green (who was supposed to be investigating plaintiff's complaints
ironically co-chaired a corruption task force with Alan Patiricoff's wife - Rochelle
Patricoff). It was later reported in newspapers that Alan Patricoff was investigated for
padding his time sheets to fraudulently increase his Administrative Law Judge fees.
Plaintiff, after paying the fine (as a prerequisite to filing an appeal) and a long and
expensive appeal process had Patricoff's subordinate's corrupt decision overturned in
plaintiff's favor. Said conduct, action and inactions by defendants' and their agents,
the Patricoffs, and others at the very least constitutes deliberate indifference and is
evidence of a ticket quota policy practice enterprise, and racketeering etc.

23. Despite Michael Sileo's  September 24, 2012 inspection of plaintiff's vehicle,
rear auto seat and statements that his subordinates would be trained and ordered
to not issue any further improper registration NOPV's to plaintiff, he wrote a letter
dated December 14, 2012. Sileo's letter dated December 14, 2012 to plaintiff
states"... "... we are in receipt of your complaint on September 23, 2012. In order to
do a complete investigation we require the following information: summons number,
incident location, date of incident, describe the aforementioned in greater
detail, what you feel should have been done...". Plaintiff had made complaints
to internal affairs against summons for 2 NOPV's prior to the Sept. 24,  2012
inspection. All the complaint information he requested already was provided to IAB
and again to Sileo on Sept. 24, 2012.

24. On October 21, 2013 Michael Sileo's subordinate Hossain.Islam stated in an
email with regards to improper registration - commercial vehicle NOPV's being
issued by NYPD traffic agents against plaintiff's van...: " ...All enforcement
personals were advised that not to write any summonses to the vehicle which is
properly registered...".

25. Defendant R. Simmons issued FOUR knowingly false and perjurious NOPV's
against plaintiff for having an improper registration - commercial vehicle - no rear
seats. On September 8, 2012 R. Simmons issued NOPV # 70913154443. On
September 22, 2012 R. Simmons issued NOPV #7192692657. On or about
September 24, 2012 Plaintiff brought his vehicle to " Queens Traffic North " to be
inspected by Defendant Michael Sileo and his subordinate Harjinder Singh. Both
Sileo and Singh observed the rear auto seat from the outside of the vehicle but

refused to enter the vehicle and inspect underneath the seat to determine how the seat was installed. Plaintiff was assured at the inspection that all traffic agents would be instructed that plaintiff's vehicle was a properly registered passenger vehicle and that no further NOPV's would be issued against plaintiff's vehicle. Plaintiff's request for a letter confirming the vehicle inspection, findings and actions were refused.

26. Despite Sileo and Singh's assurances that R. Simmons would be ordered to not issue further NOPV's , R. Simmons subsequently issued two more NOPV's for " NO Rear Seats " under the Color of Law. No law requires rear seats. NYS DMV Reg 106.3.d only requires one rear seat or set of seat fittings. NYC has 3 physical commercial vehicle definition characteristic requirements as stated above which are not present in Plaintiff's vehicle. Again on September 27, 2013 R. Simmons issued NOPV # 7128293164 and on March 1, 2014 R. Simmons issued NOPV #7154339731. All four NOPV's issued by R. Simmons were dismissed by an Administrative Law Judge on the merits based on photographic evidence of one permanently installed rear auto seat. R. Simmons committed perjury by falsely claiming under the Color of Law that plaintiff violated NYS /NYC vehicle registration laws, rules and regulations.

27. On March 1, 2014 TEA R. Simmons tax reg# 357687 issued his/her 4th perjurious NOPV # 7154339731 at 99th Street / 66th Avenue 11374 falsely claiming that plaintiff was in violation of NYC traffic rule 4-08(j)(1) for no rear seats. NYC Traffic rule 4-01(b) has 3 requirements none of which applies to Plaintiff's vehicle. Plaintiff has one permanently bolted rear sear behind the driver's seat. Michael Sileo has stated that R. Simmons was told in 2012 not to issue improper registration summonses on Plaintiff's vehicle. R. Simmons has issued 2 additional improper registration NOPV's after allegedly being ordered by Sileo not to do so. Said conduct is harassment and has caused plaintiff extreme emotion distress, is a waste of time and resources and a violation of plaintiff's constitutional rights, due process rights and evidence of a ticket quota policy and practice enterprise etc.

28. On March 17, 2014, NOPV # 7154339731 was dismissed. The decision and order by Administrative Law Judge Maria R Dospenza .. states - " respondent submits documentary evidence in support of claim that vehicle is properly equipped with permanent rear seat. dismissal warranted.".

29. Despite Plaintiff's March 6, 2014 NYPD Internal Affairs complaint log # 2014 - 8088 against R. Simmons for perjury and illegal ticket quotas, no disciplinary action has been taken against Simmons for her criminal acts of perjury and harassment.

30. As a result of Simmons' perjury, plaintiff was forced under threats of vehicle confiscation to appear in court and provide his driver's license, papers and effects and testify under oath before a judge. Failure to appear in court to answer the perjurious NOPV's, provide papers and testify would have resulted in plaintiff's asset / vehicle

confiscation/ and an infringement of plaintiff's constitutional right to travel. Said conduct actions and inactions by defendants is harassment, violated Plaintiff's 4th, 5th and 14th constitutional rights, is a malicious prosecution, abuse of process, evidence of deliberate indifference, ticket quotas and racketeering.

31. Defendants' further violate Plaintiff's 5th and 14th amendment right to due process by not permitting plaintiff to cross examine his accusers at the administrative law hearings which is held before an Administrative Law Judge. Due process requires that plaintiff have the opportunity to cross examine his witness accuser who claims under the penalty of perjury that plaintiff violated a New York City traffic rule/ regulation. City of New York traffic agents violate Penal Law 210.45 with impunity. Said policy and practice is part and parcel of the ticket quota policy/practice, racketeering conspiracy.

32. Defendants' 15 year continuous committing of perjury to falsely accuse plaintiff of violating NYC traffic rules and regulations without probable causes violations of plaintiff's 4th, 5th, 14th amendment rights and a denial of due process. Plaintiff has been forced under duress to appear in court before a judge, provide sworn testimony, provide a driver's license and other personal papers and effects in response to defendants' continuous threat of asset seizure and vehicle confiscation. Defendants' continued to violate plaintiff's due process rights despite having inspected the van, knowing it is compliance with the law after knowing all 50+ prior NOPV's were dismissed.

33. On August 26, 2014 at 9:14 am at 65-10 99th Street , TEA J.A. Hunt command t-401 tax reg # 357087 issued a perjurious NOPV # 8000828017 for an improper registration of plaintiff's passenger van vehicle lic. plate AME8106 for improper registration for " backseats faced wrong, no seat belt, not bolted, no rear seats" in violation of NYC traffic rule 4-08(j)(1). No law requires rear seats (only 1 seat or set of seat fittings is required). Hunte didn't have access to the vehicle to make any basis for a  claim of an observance of no seat bolts. Hunte also claimed under the penalty of perjury to have observed  no rear seats while at the same time claims that there are backseats faced the wrong way which even if present is not a violation of the law. There is also a seat belt on the rear auto seat which was clearly visible to Hunte. Hunte committed perjury in violation of NYS Penal Law 210.45 by not observing said violations before issuing said NOPV. Michael Sileo and NYPD internal affairs were sent dated pictures of the bolted rear seat via email and notified on the telephone on or about August 26, 2014 @ approx. 11:30am. Michael Sileo refused to withdraw the summons and refused to respond in writing with proof that said NOPV was withdrawn. On August 27, 2014 ALJ Steven Gaynor dismissed said bogus summons. Decision and Order dated August 27, 2014 was attached in an email to Michael Sileo. Said conduct actions and inactions by  City officials and defendants violated Plaintiff's 4th, 5th and 14th constitutional rights, is a malicious prosecution, abuse of

process, evidence of deliberate indifference, ticket quotas and racketeering.

34. It is a commonly known established fact that The City of New York, their agencies, and agents collude, conspire, coerce, extort and retaliate through their policy/ practice and engagement in an illegal ticket quota enterprise. Numerous NYPD officers have given sworn testimony as to its existence including but not limited to as reported by the NYC Police Benevolent Association - " Dont Blame The Cop Campaign ". The sole purpose of the " enterprise " is to loot revenue from the public. Other NYPD veteran police officers such as Adrian Schoolcraft - [source -
https://www.youtube.com/watch?v=rwAQX0SWlhY ]
and Adil Polanco - [source - https://www.youtube.com/watch?v=m3mmuZsHmv8 ],
and Robert Borelli - [https://www.youtube.com/watch?v=7Tg-oLKkLzE ] have been
fired and or retaliated against for tape recording evidence of ticket quotas,
whistleblowing and exposing this illegal enterprise's ticket quota racket. The NYPD
went so far as to involuntarily commit Schoolcraft to a mental institution in an
attempt to silence him. Many NYPD officers will be subpoenad to provide sworn
testimony and evidence of the illegal ticket quota enterprise and racketeering.
Discovery must be conducted for plaintiff to be able to properly and thoroughly
support his causes of actions (the above 3 youtube videos were provided to the Hon.
Matsumoto).

35. Another example of the illegal act's by the NYC Dept. of Finance's enterprise was the ignoring of plaintiff's written request for an in person appeal hearing for NOPV # 1310991844 in September 2011. In a desperate attempt to find plaintiff guilty after his whistleblowing complaints, on September 20, 2011, despite a written request for an in person appeal a panel of 2 corrupt judges ignored evidence and rubber-stamped a guilty verdict on plaintiff's appeal. Then on October 11, 2011 after complaints to Chief ALJ Mary Gotsopoulis, the Commissioner of the NYC Dept. of Investigation Rose Gill Hearn and NYC Dept. of Finance Commissioner David Franks, plaintiff was granted an in person appeal hearing. The mail in appeal decision of September 20, 20111 which found plaintiff guilty was made to mysteriously disappear. A new decision without explanation other than a pro forma statement that " we find error " and a decision was rendered in favor of the plaintiff on November 21, 2011. Said actions by defendants' were a denial of plaintiff's due process rights under the 5th and 14th amendments. A copy of said appeal decisions were previously provided to the Hon. Matsumoto.

36. Plaintiff was issued approximately 50+ improper registration - commercial vehicle related NOPV's. Evidence of 45 NOPV's were located in plaintiff's records. Plaintiff believes he cannot locate some NOPV records at this time to list. A FOIL request to NYPD for a complete list of all IAB complaints for improper registrations NOPV's was denied without any basis in fact or law. Regardless, all of said perjurious NOPV's issued against Plaintiff for improper registration - commercial vehicle no rear seats

were dismissed. 3 improper registration NOPV's were dismissed after stressful, time consuming and costly appeals. Said approximately 15 years of constitutional violation torts are relevant and permitted to be addressed by this court as to plaintiff's cause of actions as per the Continuous Tort Doctrine (Dana v Oak Park Marina (197, 4th Dept 230 AppDiv 2d 204; Drury v Tucker, 210 A.D.2d 891, (4th Dept. 1994) and are therefore not time-barred. A list of Notice of Parking Violations issued by agents of the City of New York against plaintiff for improper registration - commercial vehicle is as follows:,
12.19.99 # 341558774-5, 1.20.00 # 3421551996-0, 4.13.00 # 341556273-6, 11.22.00 # 345184452-7, 1.26.01 #349839288-8, 2.27.01 # 351258059-2 & # 351258060-9, 2.28.01 # 35190740-9 345190739-2 & #345190740-9, 5.01 # 354713187-0, 9.10.02 # #369133858-6, 10.22.02 #375447830-4, 5.2..03 #38042222254-7, 9.12.03 #383974449-0, 1.17.04 # 388220429-1, 3.23.04 # 390399728-6, 3.29.04 # 390824615-5, 4.15.04 # 391479253-0, 4.27.04 # 391227496-4, 7.23.04 # 101165340-0, 12.04 # 104867122-7, 2004 # 388220430-8, 6.29.05 # 108162680-0, 4.06 #110045542-5, 4.06 #1100445543-7, 6.08.06 # 110048991-5 & # 110048992-7, 2006 # 110504976-0, 2006 # 110504972-3, 2007 # 113083901-1, 1.26.11 #130167173-3, 1.26.11 #130167174-5, 3.21.11 # 130657724-0, 4.28.11 # 131099184-4, 4.28.11 # 131099183-2, 9.8.12 # 709131544-3, 9.22.12 # 719269265-7, 4.9.13 # 7143965479, 6.20.13 # 7099920938-3, 8.2.13 # 708996789-0, 9.7.13 # 778822130-2, 9.27.13 # 712829316-4, 3.1.14 # 715433973-1, 8.26.14 # 800082801-7 and 9.12.14 # 801275013-2.

37. In an attempt to obstruct an investigation into ticket quotas and the perjurious issuance of improper registration-commercial vehicle NOPV's, Queens Traffic North Commanding Officer Michael Sileo libeled, slandered and defamed plaintiff. Despite Sileo's alleged 2012 instructions to his subordinates not to issue improper registration - commercial vehicle NOPV's against plaintiff , his agents issued eight more. After years of no response to emails to Public Advocate Bill De Blasio and Leticia James Plaintiff made a in person appearance at the Public Advocate's office demanding that Public Advocate take action to stop the enterprise from engaging in the policy and practice of ticket quotas. In response to a Public Advocate letter Michael Sileo states in his August 15, 2014 response :
" I am writing in response to your letter of August 8 regarding the summonses issued to a van owned by Mr. Ralin. According to NewYork State law, a van of the sort owned by Mr. Ralin may be registered as a passenger vehicle if it has, among other things at least one seat or set of seat fittings installed behind the driver. As it is not always apparent to traffic enforcement agents standing outside a van that even though the seat is removed, the van was issued five summonses by members of the Queens North Traffic Enforcement unit for improper registration (that us, for having passenger plates on what seems to be a commercial vehicle.) In September of 2013, Mr. Ralin brought his van to this office, and i was able to confirm that Mr. Ralin's

van did indeed have seat fittings and that even if the seat were removed, it would be proper for Mr. Ralin's van to be registered as a passenger vehicle.".

38. Michael Sileo makes knowingly false statements in an August 15, 2014 letter in an attempt to blame the victim, justify his subordinates' perjury, protect the enterprise, obstruct an investigation and retaliate, demonize, and victimize the victim. First, plaintiff brought his vehicle to Queens Traffic North in September 2012 not September of 2013. At no time did Sileo or his subordinate Harjinder Singh enter plaintiff's vehicle to observe " seat fittings " which allow for the removal of the rear auto seat. Plaintiff's vehicle has only one rear auto seat permanently bolted to the floor. It cannot be removed unless 2 mechanics from inside and outside the vehicle remove 4 bolts and nuts. Michael Sileo's statements that plaintiff's vehicle has " seat fittings " and that plaintiff is responsible for removing the rear auto seat is a libelous, and defamatory lie. It is unknown exactly how many people other than Gina Bull and Leticia James that Sileo told knowingly false statements accusing the plaintiff of removing the seat and causing the issuance of the NOPV's.

39. It should also be noted when Sileo states in his August 15, 2014 letter: ... " on March 1, 2014 an agent assigned to this command issued a summons to Mr. Ralin's van for " improper registration". When Mr. Ralin informed me of this mistake, the agent who made the error and issued the summons was immediately re-instructed, and was specially and personally directed that she was never to issue an Improper registration summons to Mr. Ralin's van again.". The March 1, 2014 NOPV was the 4th summons issued by Defendant R. Simmons. The 3rd NOPV issued by R. Simmons was after Sileo stated he instructed Simmons and others not to ticket plaintiff's vehicle. Simmons issued 2 other perjurious NOPV's in 2012 prompting the inspection of plaintiff's vehicle by Sileo and Singh. Simmons committed perjury and allegedly disobeyed a direct order but still is  employed as a NYPD Traffic Agent. Sileo's characterization  of the above listed NOPV's as mistakes and errors is a lie and contrary to his own alleged instructions and  supervision of his subordinates. Sileo and Singh had refused plaintiff's requests for an official vehicle placard to stop the further issuance of said  NOPV's. Plaintiff's requests that photos be taken of any violation on plaintiff's vehicle and  to contact Sileo before issuing an improper registration NOPV have also been refused. Michael Sileo at the least is negligent in his screening, hiring, training and disciplining of his subordinates. Said conduct by City of New York officials and their agents is proof of deliberate indifference. Said conduct supports plaintiff's Monell Claim - (August 15, 2014 letter provided to Hon. Matsumoto).

40. Mr. Sileo's 8.15.14 written response regarding " rear seats " NOPV's addresses New York State vehicle regulations. However, the NOPV's were issued for a NYC violation. As   previously stated, NYC traffic rules and regulations  has 3 requirements for a vehicle to be defined as a commercial vehicle for an NOPV. While

it is required that a traffic agent have access to the vehicle and look under the rear seat to determine if the seat is bolted or connected to seat fittings, the other requirements do not require vehicle access to verify if a violation warranting the issuance of such an NOPV exists. According to NYC law a vehicle cannot be deemed a commercial vehicle if it does not bear commercial plates. In addition, a vehicle cannot be deemed a commercial vehicle if it does not have a commercial plate and commercial writing on the side of the door. As such, Sileo's statements to the Public Advocate concerning NYS DMV regulations which is not cited on the NOPV in his letter to the Public Advocate is an attempt to deceive and obstruct an investigation.

41. Michael Sileo's above mentioned statements that plaintiff removes the rear seat is libelous, and defamatory. Said statements accuses the plaintiff for being responsible for the issuance of Sileo's subordinates' issuance of improper registration NOPV's. Said knowingly false statements has damaged plaintiff's reputation in the community. Sileo's statements has effected the Public Advocate perception of plaintiff's character as it is stated that she will not further advocate on behalf of the plaintiff based on Sileo's August 15, 2014 written response. Due to the fact that photos of the bolted installation of the rear seat were fowarded to Gina Bull and Leticia James of the Public Advocate it is probable that the irrefutable evidence (that there are no seat fittings) is being ignored based on Sileo's lies. It should be noted that Sileo received photos of the rear seat bolts prior to the August 15, 2014 letter proving that he had prior evidence that the rear seat does not have seat fittings (enabling the seat's easy removal by button or latch). Mr. Sileo and his subordinates never gained access to plaintiff's vehicle, nor have they witnessed plaintiff remove the rear seat. Defendants have no basis to accuse Plaintiff of removing the seat by way of a seat fittings device or otherwise. It is also possible that the reason the Public Advocate did nothing concerning Sileo's false statements is to protect the enterprise's ticket quota racket. Discovery is needed to determine how many people were told said false and embarrassing statements, the extent of its damage, and why the public advocate did not advocate on behalf of plaintiff after evidence of Sieo's false statements were provided. Sileo's  statements also support plaintiff's claims of deliberate indifference, malice, lack of supervision, ticket quotas and racketeering.

42. On or about January 28, 2015 NYPD Traffic Investigator Jacqueline Guevara was asked to investigate complaints plaintiff made to NYPD Internal Affairs Bureau. Plaintiff complained to the City of New York, their agencies and agents approximately 50+ times that issued NOPV's were perjurious, harassment and the result of a policy and practice of ticket quotas. A 15 year period of complaints to " IAB " resulted in only one complaint  response to complaint # 14-08088 by referring said complaint to NYPD Traffic for investigation. Said referral was a conflict of interest. NYPD has refused to provide the final investigation report in violation of FOIL laws without any basis in fact or law. However, Investigator Jacqueline Guevara stated in an April 20, 2015 email that " On April 20, 2015 the

Traffic Enforcement District Communication Unit completed the investigation of your complaint IAB # 14-08088 in that your vehicle received summonses for violation code 83 "Improper Registration ", and that members of NYPD Traffic were not properly instructed by their supervisors on the issuance of summonses of code 83 " Improper Registration " . The investigation revealed that there was sufficient evidence to corroborate your claim therefore this investigation is closed as substantiated. ". City of Canton, Ohio v. Harris 489 U.S. 378 (1989). It should be noted that the subject of the investigative complaint is defendant R. Simmons who issued 2 perjurious NOPV's before supervisors' Sileo and Singh inspected the vehicle in September 2012 and assured plaintiff that Simmons (and all other traffic agents) were advised to not issue anymore improper registration NOPV's against plaintiff. However, Simmons issued 2 more perjurious improper registration NOPV's subsequent to being ordered not to do so. No disciplinary action was taken against Simmons for her refusal to follow alleged instructions / orders and the further criminal acts of perjury and harassment. Said conduct by City official and their agents is proof of deliberate indifference, failure to screen, supervise, train, discipline and punish which is a basis for a monell claim - Monell v. Department of Soc. Svcs., 436 U.S. 658 (1978). Defendants' deliberate indifference also is evidence of a ticket quota policy and practice and racketeering. Despite being provided this email which establishes that there is an investigation finding to support plaintiff's monell claims, the court has prejudiced plaintiff by denying plaintiff discovery/due process and allowing defendants to proceed with a motion to dismiss - (Guevara April 20, 2015 email attached and previously provided to the Hon. Matsumoto).

43. Plaintiff's passenger vehicle's permanently bolted rear seat was inspected and observed by defendants and defendants' agents and deemed in compliance with NYS and NYC vehicle registration laws on April 14, 2000, January 27, 2001, February 27, 2001, March 1, 2001, September 11, 2002, October 22, 2002, March 29, 2004, September 24, 2014 by defendant Michael Sileo and Harjinder Singh, May 18, 2015 by Investigator Jacqueline Guevara and Lieutenant C. Katasabanis and by a Sgt. Charles 112th Pct. - date unknown, and a Lieutenant Cino 112th Pct. - date unknown.

44. NYS Courts have allowed the recipient of " numerous burdensome " citations on vehicles which were issued without any basis in fact or law, and who had proceedings terminated in their favor recover damages for harassment, malicious prosecution and abuse of process etc. under 42 U.S.C. § 1983 as in Manti v New York City Transit Authority et al 121 Misc. 2d 824 (N.Y. Misc. 1983) 165 A.D. 2d 373; 568 NYS 2d 16 (1st Dept 1991). Administrative proceedings conducted in this matter contained sufficient attributes of judicial proceedings to satisfy the requirements for instituting a malicious prosecution claim (Groat v Town Bd., 73 AD 2d 426, appeal dismissed 50 NY2d 928; Glenn v State of New York 144 Misc 2d. In addition to the issuance of " numerous and burdensome " citations Manti is identical in by" forcing plaintiffs to make numerous court appearances " and by

" commencing frivolous litigation " (ie case at bar - court appearances based on perjurious NOPV's). The difference between Manti  and Ralin is that
Manti is a corporation with lawyers that had its business ruined and plaintiff is a pro se individual sole proprietor who had his life and finances ruined. Also it should be noted that Manti was found guilty of 15 of the 82 total citations issued with 41being dismissed. Ralin had received approximately 50 citations with all being dismissed. Manti's times period for the issuance of the citations was a six month period. Ralin has endured a 15 year period of time for citations being issued. While Manti had lawyers and numerous drivers available to respond and appear in court, plaintiff has to spend numerous and burdensome amounts of time responding to said harassment alone. Plaintiff can not engage in business when he is responding to city officials, preparing evidence and making court appearances. Said issuance of  numerous and burdensome perjurious NOPV's interfered and created extreme emotional distress while family members were ill and dying. Such precious  time cannot be recovered or compensated with money.

45. Also, as stated in " Manti " ... " Liability is predicated upon deprivations derived from a policy or custom of the municipality (supra). A true pattern of harassment by government officials may make out a section 1983 claim for violation of due process of law, where the municipal defendant's actions are illegal,[***8] or place a discriminitory burden on a constitutionally protected activity. (Chalfy v Turkoff, 804 F2d 20; Batista v Rodriguez, 702 F2d 393; Espinola Way Corp. v Meyerson, 690 F2d 827, cert denied 460 U.S. 1039; see, Black Jack Distribs.v Beame, 433 F supp 1297). A complaint wil survive dismissal " unless it appears beyond [*379] doubt that the plaintiff can can prove no set of facts in support of his [section 1983] claim which would entitle him to releif (Coney v Gibson, 355 U.S. 41, 45-46, cited in Batista v Rodriguez, supra, at 397).

46. " The allegation of a repeated pattern of harassment demonstrated a cognizable constitutional injury.". Manti v New York City Transit Authority et al 121 Misc. 2d 824 (N.Y. Misc. 1983) 165 A.D. 2d 373; 568 NYS 2d 16 (1st Dept 1991).

47. Defendants' and defendants' agents have responded with malicious intent to plaintiff's official complaints. Defendants' and defendants agents have targeted plaintiff's vehicle with up to 4 NOPV's (R. Simmons). Defendants' and defendants's agents have threatened plaintiff  and his process server with arrest (other previous threats of arrest). Defendants and defendants agents have defamed plaintiff accusing him of removing the rear seat fittings that do not exist. Defendants have encouraged the harassment  of plaintiff by refusing to discipline or punish subordinates. Defendants and their agents have ignored  plaintiff's complaints / "grievances" (failing to take action on almost 50 internal affair complaints for 15 years). Defendants' continuous refusal to address plaintiff's requests for redress of grievances and retaliation in response his complaints violated his constitutional rights

under the 1st amendment.

48. Defendants' and defendants' agents aforementioned conduct, actions, and inactions spanning 15 years which violated plaintiff's due process rights, rights under the 5th 14th, 4th and 1st amendments to the constitution under Color of Law, taken in its entirety is " extreme and outrageous " and does " shock the conscience".

49. Defendants, have with "deliberate indifference" refused / failed to screen, train, supervise, control , discipline, and punish Police Officers, Traffic Enforcement Agents and Parking Control Specialists, including the defendants in this case, for the continuous perjurious issuance NOPV's. Said above mentioned conduct, actions, and inactions by defendants' caused individual defendants' and their agents to continue to engage in violations of plaintiff's constitutional rights, due process, illegal acts, perjury, ticket quotas and racketeering. Defendants' and defendants' agents' deliberate indifference in their failure to screen train supervise and discipline their subordinates allows plaintiff to proceed with a Monell Claim.

50. Defendants acting under the color of law deprived the plaintiff of his rights, privileges and immunities under the laws of the Constitution of the United States, under the 5th amendment, 14th amendment, 4th amendment,1st amendment and is an abuse of process,harassment, negligence, violates plaintiff's right to liberty and pursuit of happiness, right to travel, due process etc. - 42 U.S.C. § 1983, 18 U.S.C. § 245, 18 U.S.C. § 242.

51. Defendants' above mentioned actions have deprived plaintiff's of rights secured by the United States Constitution, in violation of 42 U.S.C. § 1983, 18 U.S.C. § 1961-68 for violations under "RICO "- Racketeering, and 18 U.S.C. § 1951 for violations under the Hobbs Act.

52. On June 22, 2015 plaintiff filed a NYPD Freedom of Information Act Request for evidence and documents related to ticket quotas, NOPV's issued against plaintiff, complaints made by plaintiff against NYPD agents for the perjurious issuance of NOPV's against plaintiff, and NYPD Internal affair complaints and investigation reports related to complaints made by plaintiff concerning improper registration complaints. On July 2, 2015 NYPD under Color of Law and without any basis of fact or law denied plaintiff's legitimate lawful FOIL requests. On July 8, 2015 Plaintiff filed an appeal for NYPD's denial to produce lawfully requested documents. On. September 4, 2015 Jonathan David denied plaintiff's FOIL appeal (different reason than original foil request denial) stating " the appeal is denied because disclosure of the requested records to just one party would interfere with the ordinary course of court-supervised discovery and deprive other parties of their right to a fair trial or impartial adjudication in pending civil litigation,...". Plaintiff has no objection to his foil requested documents being provided to all defendants. The only one prejudiced and deprived rights to a fair and impartial trial is

plaintiff by destruction of ticket quota evidence and refusal by NYPD to provide said FOIL requested investigation findings report by Jacqueline Guevara which is needed to support plaintiff's monell claims. NYPD's refusal to provide plaintiff said ticket quota evidence obstructs justice and prevents plaintiff from prosecuting and litigating this ticket quota lawsuit. A full discovery of ticket quota evidence, improper registration complaints and complaint investigation reports must be held so plaintiff can accurately set forth cause of actions related to ticket quotas, racketeering and plaintiff's deliberate indifference to train, supervise and discipline ticket agents and in support of Monell Claims.

53. Plaintiff hereby requests that evidence in support of his cause of actions, monell claims, and relief requested and as a request for discovery all other ticket quota lawsuit evidence against defendants including but not limited to evidence submitted in a class action lawsuit " case 1:10cv-04228 rws " and " 1:2010cv6005 " be deemed as submitted.

54. Plaintiff had provided 127 exhibits on a DVD to the Hon. Matusmoto with a September 21, 2015 letter proving an illegal ticket quota policy and practice that violated plaintiff's constitutional rights and racketeering laws etc. Plaintiff will again submit that DVD of 127 exhibits with this 2nd amended complaint. There are many news reports and youtube reports proving the existence of the policy and practice of illegal ticket quotas by NYPD police officers and traffic agents. The City of New York, their agencies and agents have engaged in a racketeering enterprise coercing the commission of perjury to extort revenue from innocent non violating citizens and businesses. Said summonses and actions which are evidence of the illegal ticket quota enterprise include but are not limited to parking tickets, seat belt tickets, window tints, stop and frisk, speeding, cell phone use, towing, quality of life etc. Some of the evidence of the illegal ticket quota policy practice and enterprise provided is set forth below.

55. On July 8, 2015 New York Daily News reported online that NYPD and their attorneys were destroying ticket quota evidence - [source - http://nydn.us/1dGw7iE , http://www.nydailynews.com/new-york/exclusive-nypd-accused-destroying-summons-info-article-1.2282345 , http://www.rawstory.com/2015/07/nypd-and-nyc-city-attorneys-accused-of-destroying-proof-that-cops-are-writing-bogus-tickets-to-hit-quotas/]. Said destruction of ticket quota evidence is an obstruction of justice. The destruction of ticket quota evidence would prevent plaintiff from litigating his case and result in a denial of due process. Said conduct would cause prejudice and be grounds for a summary judgement. Plaintiff has been prejudiced by the court's failure to safeguard and prevent, plaintiff's ticket quota evidence which has reportedly being destroyed by NYPD .

56. New York Post article dated 6/20/2005 - " Cop Tix Quota Bared " reported a NYPD "memo " requiring " 33 speeding and 35 parking tickets each quarter to keep a good rating ". The article reported by TheNewpaper.com further reports: " the evidence presented under oath in this arbitration proves once again what police officers have long

lived with: There are established quotas and if you don't meet them you will be punished, said Patrolman Benevolent Association President Patrick Lynch.". - [ source - http://www.thenewspaper.com/news/04/474.asp ].

57. Thenewpaper.com further reports  on 1/21/06 " After a New York City arbitrator confirmed the existence of a ticket quota for the New York Police Department (NYPD) in a ruling Thursday, the city's mayor hit the airwaves yesterday to counter the claim that NYPD officers must issue a fixed number of parking tickets and moving violation citations. The Office of Collective Bargaining was persuaded by the evidence that showed officers in Brooklyn's 75th Precinct were required to issue four parking tickets, three moving violation citations, three "quality-of-life" summonses, make one arrest and two stop-and-frisks each month. Arbitrator Bonnie Siber Weinstock ruled that the NYPD maintained an illegal "summons quota for traffic violations in the precinct and by penalizing officers for failing to meet the stated number of traffic citations." She ordered the city to cease and desist from the practice.". - [ source - http://www.thenewspaper.com/news/09/914.asp ].

58. On November 16, 2013 The Daily News reported " Traffic- enforcement agents sue NYPD, City over towing quotas". The article further states: " A police source estimated that more than 750 cars are towed in the city every day. Towing operations are projected to bring in $22.6 million each year, according to budget documents."..."Four agents and their union hit the city and the NYPD — which oversees the workers — with a lawsuit Thursday for issuing blistering punishments if they didn't haul away three or four vehicles per shift. They claim their bosses would deny them overtime, shifts and meal breaks, and threaten poor evaluations and termination, according to papers filed in Manhattan Supreme Court.". -  [ source http://www.nydailynews.com/new-york/nypd-traffic-enforcement-agents-sue-high-tow-quotas-article-1.1519014 ].

59. Its been reported that the threats and coercion to meet ticket quotas are so severe that ticket agents have ticketed dead people [source - https://www.cardealexpert.com/fyi/nypd-ticket-quota/ ]. The article states: "An officer of the New York Police Department has been fired for writing tickets and summons to dead people, which he claims was due to a ticket quota that had been enacted.". " A 17-year veteran of the New York Police Department has been fired and sentenced to 150 hours of community service, according to the New York Post, for allegedly issuing traffic tickets and court summons to motorists who were dead.". ..... " Former officer Paul Pizzuto was found out in July of last year to be issuing summons, though never appearing in court to testify. It was noticed that he was writing an increased number of summons, based on information from previous summons he'd written, but that they were written in such a way that no one would have to pay any fines. Some of the summons were for people who were deceased."...." It's also said, according to reports in the Village Voice and ABC7, a New York ABC affiliate, that officers are being pressured by Internal Affairs to write tickets that stick. It is alleged officers are docked three days vacation pay, worth $900, if a traffic ticket is tossed in

court. They are also being <u>pressured to write more tickets</u>.". The article further reports: " Previous allegations of an NYPD ticket quota have been made. In Sept. 2010, the New York Times received an audio tape, taken in April of that year at the 81st Precinct, wherein <u>Captain Alex Perez</u> admonishes commanders that each "shift" had to write at least 20 summons per week and went on to say how many of what offense. He also warned that officers that didn't meet quotas would be switched to graveyard shifts and if necessary, "I don't have a problem firing people.". " Pizzuto is suing the city for wrongful termination, claiming that his superiors had raised a ticket quota and the 125 to 150 summons he normally issued in a month weren't sufficient, which led to the ticket scam. His superiors assert that he had issued the increased summons to work overtime, in order to quell financial problems. Pizzuto also claims he was entitled to a hearing before being fired, though his superiors assert his was an "oath of office" violation and thus wasn't eligible for one.". - [ source - https://www.cardealexpert.com/fyi/nypd-ticket-quota/ ]

60. On May 12, 2012 the Nycresistance reported on youtube showcasing ABC news reports and daily news reports of illegal NYPD ticket quotas against NYC motorists to issue a specific number of tickets within a month and a week. The NYC Police benevolent association claims financial retaliation against city agents if they fail to meet supervisors' ticket quotas - [ source - https://www.youtube.com/watch?v=FM75fC4SL8A ].

61. The Daily News and other news online publications have reported on July 8, 2015 that NYPD and their Attorneys have destroyed ticket quota evidence. The report states: " Police Lt. Stevelle Brown, who is alleged to have implemented a quota in Queens' 105th Precinct, has destroyed text messages in which he denied a cop time off for failing to meet goals for traffic summonses, Sutton charges.She also points to an exchange from an officer identified only as Sgt. Carty, who sternly admonished a cop for failing to issue enough seatbelt summonses."We missed seat belt number by 30 last week unacceptable. if need be u guys will go with me 2 traffic stat 2 explain why u missed," the text reads. Lastly, Sutton has introduced emails from Capt. Andrew Benjamin, who laments the lack of arrests among his top overtime earners in the Bronx Task Force division."This has to stop it is ridiculous to have 50 + hours with only one arrest," Benjamin wrote." . " Sutton said lawyers obtained the three exchanges through whistleblowers or by other means. The city has been unable to obtain its own copies of the messages. That's proof, Sutton writes, that the communications have been improperly destroyed.". " "The (evidence) production confirms what plaintiffs feared but defendants have repeatedly denied: Defendants have destroyed evidence that is unquestionably relevant to this matter."To make matters worse, the NYPD has an on-the-books policy of shredding reams of documents potentially relevant to the case, Sutton's 15-page letter charges." . " "Defendants have shredded, and are continuing to shred, hard-copy documents" from CompStat meetings where crime statistics are analyzed by NYPD brass, court documents claim, citing testimony from a lieutenant who managed the CompStat unit of the Office of the Chief of Department. Monthly activity reports in which supervisors provide written feedback on individual

officers' "enforcement activity" are also being destroyed, Sutton alleges as if that's not enough, city lawyers didn't advise the NYPD to preserve communications related to summonses until 2013 — three years after the suit was filed, Sutton says."Our justice system depends on the exchange of relevant evidence," Sutton told the Daily News in a statement.A spokeswoman for the city Law Department declined to comment. " . Ticket quota photo and email evidence is also included in the online Daily News Story - [ source - http://www.nydailynews.com/new-york/exclusive-nypd-accused-destroying-summons-info-article-1.2282345] . Plaintiff hereby requests that all evidence in the ticket quota lawsuit mentioned in this NY Daily News article be submitted into evidence and part of the record in Plaintiff's lawsuit in support of Plaintiff's cause of actions including but not limited to ticket quotas, injunctions and racketeering etc.

62. On May 15, 2003 The Patrolmen's Benevolent Association of The City of New York Incorporated issued a press release titled " EVIDENCE OF TICKET QUOTAS AND " DONT BLAME THE COP " CAMPAIGN. PBA President Pat Lynch states: " ... we are sharing hard evidence that our police officers are being pressured to write high-priced summonses at the risk of reassignment or other punitive action"... " This type of evidence is very difficult to acquire because most supervisors will not put it in writing, but instead threaten officers verbally.". The press release further states on page 2 : " a hand written note from a lieutenant in the 50th Precinct to a sergeant clearly shows that failure to write adequate numbers of summonses will result in a change of hours or assignment. The note states: I'm recommending to the C.O. that (officer's name) be reassigned off late tours. I'm dissatisfied with his enforcement activity again.". Regarding a different police officer, the note says: " He only wrote 16 summonses for the entire month and if they were written on O.T. his job on the 1st platoon is also in trouble.". Two internal NYPD reports - one from a borough commander the other from a precinct commander - demonstarate the dissatisfaction with officers writing tickets for broken equipment such as broken stoplights or head light because they do not generate revenue if the violator proves that he or she had the problem repaired." . " One report states that a chief ... maintains that equipment violations (defective lights, taillights) are not "good" summonses and must be reduced to less than 10% of all total movers.". "The other report explains that supervisors will have to explain the issuance of broken equipment summonses.". The above referenced " Dont Blame the Cop" press release is evidence of a long term pattern of a policy and practice by supervisors and government officials. The policy and practice of ticket quotas is illegal, is extortion, and evidence of a racketeering enterprise.

63. Plaintiff is also in posession of true copies of 2 NYPD memos from The Patrolman's Benevolent Association which state : "Chief Scagnelli further stated: " In the future, If an Executive Officer or Commanding Officer stands at the podium and has an unacceptable equipment violation ratio, I am going to assume that either (a) the CO or Xo has ignored my direction (b) CO or XO has not gottten the word out to the troops on equipment violations (c) COor XO has a managemnent problem in thst he cannot communicate to

his troops an order (d) there is a morale problem in the respective command. " I pity the CO or XO who claims he has a morale problem."

64. It was recently reported that the City of New York paid plaintiff's witness Adrian Schoolcraft $600,000.00 to settle his ticket quota related lawsuit - [ source :http://countercurrentnews.com/2015/10/he-exposed-nypd-corruption-so-the-police-had-him-locked-in-a-mental-institution/# ]. Mr. Schoolcraft who was involuntarily commited to a mental institution by defendants for whistleblowing about ticket quotas was bribed to silence information about Defendants' ticket quota enterprise. Mr. Schoolcraft states in his Federal Complaint " 1:2010cv6005 " before Judge Robert Sweet ( Schoolcraft v City of ¶ #80 states that an Arbitrator ruled that the City of New York and NYPD (C.O. Michael Marino ) " ..." violated New York State Labor Law § 215-a by establishing and maintaining a summons quota....". Plaintiff hereby restates Adrian Schoolcraft's Federal Complaint in its entirety as evidence and as witnesses of illegal ticket quota policy and practice / racketeering enterprise.

65. OMITTED - LEFT BLANK

66. OMITTED - LEFT BLANK

67. There is further evidence that illegal ticket quota policy and practice comes from the City of New York's highest office. Despite Mayor Bloomberg's " performance goals " semantic rhetoric, the Mayor wrote a letter to then Governor Pataki in which he states: " Bloomberg wrote: "For an employee whose function it is to issue parking tickets, a measurement clearly relevant to job performance is the number of summonses issued over the course of a reasonable period of time." - [source -http://gothamist.com/2010/09/30bloomberg_quotas_for_tickets_are_ne.php].

68. On or about July 30, 2014 Chief ALJ Judge Mary Gotsopoulis had armed guards threaten plaintiff with violence and arrest for complaining about a clerk at 66 John Street and for not responding to  plaintiff's grievance letters concerning the continuous issuance of perjurious improper registration NOPV's. Said conduct was done under color of law and in violation of Plaintiff's 1st Amendment right  to petition government for redress of grievances.  Plaintiff's 1st amendment right to make a complaint to government without fear of punishment or reprisals  was violated. As stated throughout the complaint, plaintiff has been retaliated against by defendants and their agents for his continuous complaints over 15 years. Said retaliation has consisted of defendants' actions, inactions, continued issuance of perjurious NOPV's threatening vehicles confiscation, defamatory, slander, libel, and threats etc.

69. Plaintiff due process rights were violated by defendants. Defendants' did not allow plaintiff an impartial process. As previous stated Judges' who have a financial interest in the collection of fines for the NYC Department of Finance ignored evidence which was the basis for reversal of decisions in favor of Plaintiff on appeal. Defendants' denied

Plaintiff due process when an in personal appeal request was ignored, a decision was rendered against Plaintiff, and after complaints and an in person appearance was conducted another decision was rendered in favor of Plaintiff (while the previous decision was made to illegally and mysteriously disappear). Plaintiff's due process rights were further violated due to defendants' denying Plaintiff the ability to confront and cross-examine the issuers of the perjurious NOPV's. The continuous 15 year issuance of knowingly perjurious NOPV's under threat of vehicle seizure and unnecessary court appearances is a violation of plaintiff's constitutional due process rights.

70. Defendants' malevolent retaliation and denial of due process also occured on May 21, 2015 when an NYPD (Sileo subordinate) Leutenant Egan threatened plaintiff and his process server with arrest. Egan refused to accept legal service of a summons and complaint under color of law and when asked to identify himself threatened Plaintiff and his process server with arrest. NYPD attorney Laura Holt stated on the phone that someone at Queens Trafffic North stated that the reason NYPD did not accept process service is because the process server did not identify the defendants and refused to show identification. NYPD's statements are proved false by a tape recorded conversation where Egan states he will only accept subpoenas and will not accept a summons and complaint. After being forced to obtain a 2nd process server, Supervisor Holman and a desk officer made fraudulent, slanderous and defamatory statements against plaintiff to the 2nd process server - Gerard Amyzial. Holman and her assistant fraudulently stated that the reason why they refused to accept process service on May 21, 2015 was because "they didnt tell us what it was for " , and " did not want to provide their information" . In retaliation, Holman and the desk officer further stated to the 2nd process server on May 26, 2015 that plaintiff and his (1st) process server was   " rude " , " not nice ". Plaintiff is in possession of Amyzial's tape recording of the false, retaliatory, slanderous and defamatory statements made by Micheal Sileo's subordinates which embarrassed plaintiff (tape recordings and videos previously provided to the Hon. Matsumoto).

71. Defendants' issuance of perjurious NOPV's is not limited to improper registartion - commercial vehicle summonses. On June 29, 2015 plaintiff was issued another perjurious NOPV #7677584718 for a mutilated inspection sticker. Said inspection sticker was not mutilated and as evidenced by photos and was clearly legible. Said NOPV for mutilated inspection sticker was dismissed by ALJ Andrea Gelb on July 2, 2018. Said perjurious NOPV is a result  of the City of New York and their agencies and agents policy and practice of ticket quotas.  Plaintiff also had a bogus parking ticket dismissed in June 2015 because defendants' could not provide evidence that a sign existed. Said conduct at the very least is a result of Defendants' deliberate indifference , failure to train, supervise and discipline their subordinate traffic agents. Said issuance of perjurious NOPV's has caused another unnecessary court appearance which for the reasons previously stated violates plaintiff's 4th, 5th, and 14th amendment rights and rights to due process, a result of ticket quotas and is racketeering.

72. Based on Defendants' and Defendants' agents' aforementioned conduct actions, inactions, facts and evidence, Plaintiff has established a prima facie case under 42 U.S.C. § 1983, in that their actions occurred "under color of law" and that the actions are a deprivation of a constitutional right or a federal statutory right.

73. On a matter unrelated to improper registration NOPV's, plaintiff filed a notice of claim seeking damages and court orders concerning the City of New York's failure to maintain road and sidewalk infrastructure. Said neglect has become a danger to the health and safety of pedestrians and motorists. Said damages to New York City roadways cause unnecessary damage to vehicles using NYC roadways. The City of New York through the New York City Department of Transportation, other agencies and agents are negligent and or deliberate in causing hazards to property and life by their willfull neglect to repair the New York City road and sidewalk infrastructure. Roads and sidewalks throughout the five boros of manhattan, queens, brooklyn, bronx, and staten island have been neglected for many years. Sporadic pothole fills do not adequately repair the rough, cracked, pitted and potholed roads. Potholes and cracked and damaged streets are a danger to drivers, cyclists and pedestrians health and safety. Said damaged roads causes drivers to lose control of their vehicles. There appears to be no effort by the City of New York to survey, document, map and repair said hazardous conditions which cause millions of dollars in damages to vehicles, injuries to pedestrians and probably even deaths. Some example of the road infrastructure neglect by the City of New York are stated as follows on their website - include but are not limited to: " Potholes - Circular-shaped shallow holes where the pavement has worn away. Cave-ins - Irregular-shaped deep holes where the street has collapsed. Utility damage - Street surfaces opened by utility companies and not restored to their original condition, such as asphalt piled too high or too low or a repaired patch that has developed a pothole or cave-in. Manhole covers and other street hardware defects - Missing, damaged, raised, or noisy street hardware, as well as asphalt or concrete defects around them. The City also accepts requests to resurface streets that are rough, cracked, or pitted beyond repair." The cause of the infrastructure collapse / neglect has been reported on CBS news on April 24, 2014 : " Councilman Dan Garodnick (D-Manhattan), is challenging de Blasio's decision to cut  the city's road resurfacing budget from $244 million to $127 million." - source  [ http://newyork.cbslocal.com/2014/04/24/nyc-lawmaker-takes-de-blasio-to-task-over-slashed-road-repair-funds/ ]. Despite plaintiff;'s official complaints of dangerous road conditions for over a year, the City of New York has refused to make necessay repairs. Plaintiff seeks an order directing the City of New York to repave dangerous  roads that are beyond pothole patch  repair solutions. Plaintiff seeks an order denying the City of New York Federal funding for roads if they refuse to apply those federal funds to properly repair NYC roads and streets.

74. Defendants' violated plaintiff's right to due process under the 5th and 14th amendment to the United States Constitution. Plaintiff's due process rights were

violated by his inability to cross-examine his accuser who committed perjury by knowingly making false fact and law claims without probable cause alleging violations of improper registration - commercial vehicle rules and regulations. " Confrontation and Cross-Examination. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." Where the "evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealously," the individual's right to show that it is untrue depends on the rights of confrontation and cross-examination. "This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny." - source - http://law.justia.com/constitution/us/amendment-14/36-procedural-due-process-civil.html

75. Plaintiff in good faith within the spirit and letter of the law argues that the egregious number of perjurious NOPV's issued by agent who knew or should have known plaintiff's vehicle was in compliance but forced plaintiff to repeatedly appear in court based on perjurious sworn statement without probable cause that threatens asset and vehicle seizure approximately 50 times over 15 years is in and of itself is a violation of plaintiff's constitutional due process rights.

76. Further evidence of defendants' denial of plaintiff's due process rights are based on a lack of impartial tribunal. Supervising Judge Alan Patricoff's statement that he " does not care " about pictures which prove as fact and that his subordinate Judge Levine (guilty decision on NOPV # 3903997286) is corrupt and ignoring evidence (based on prejudice due to plaintiff's stated complaints to her) of a rear seat is one example. Not only was NOPV#3903997286 by TEA S. Mccain overturned on appeal but another improper registration NOPV # 3914792530 by S. Mccain was dismissed on the merits. Another example is the appeal on NOPV # 131099184 where 2 appeal judges found plaintiff guilty. Subsequent to complaints that plaintiff's NOPV # 31099184 in person appeal request was illegally ignored, a second new 3 judge appeal panel found plaintiff not guilty on the merits despite a previous decision of guilty (the first appeal decision mysteriously and illegally disappeared). Another example of lack of impartiality and a corrupt NYC Dept. of Finance tribunal racket is ALJ Bradlee Biller who found plaintiff guilty on NOPV #1100489927 (summons issued at 1:00pm on June 8, 2006) where on June 8, 2006 in the same afternoon Biller stated in his decision " The photographs , and prior decisions, and statement of correction dated in 20002 do not (!!!!) persuasively establish that the required rear seat and fittings were removed from the vehicle at the time of the summons". Photos taken on the same day were provided to Biller in court within 4 hours of the issuance of the NOPV. Also it should be noted that on June 29, 2005 at 11:00pm plaintiff received NOPV # 1081626800 for improper registration. On June 30, 2005 ALJ Bradlee Biller states in another decision (on