UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ORIGINAL

Case# 1:15-CV-2978          2016 JUL -5  PM 3: 04

-------------------------------------------------------x

Brad Ralin                                          (KAM) (ST)

                              Plaintiff

                 - Against -

                                                    **3rd AMENDED COMPLAINT**
The City of New York,                               PLAINTIFF DEMANDS
Michael Sileo, Officially and Individually,         TRIAL BY JURY
J.A. Hunte, Officially and Individually
Rosemary Simmons, Officially and Individually
John and Jane Doe, Officially and Individually
                              Defendant(s)

-------------------------------------------------------x

## PLAINTIFF'S COMPLAINT

NOW COMES the Pro Se Plaintiff, Brad Ralin, on information, belief and established
facts, and for his causes of action and relief sought against all named and unnamed
Defendants states the following:

### STATEMENT OF THE CASE

1. The City of New York, their agencies and agents : The New York City
   Department of Finance,The New York City Police Department, The New York City
   Department of Transportation, their Police Officers, Traffic Enforcement Agents,
   Parking Control Specialists,NYC DOF PVB ALJ's and other unknown agents and
   agencies have embarked on a long term pattern of harassment against Brad Ralin by
   committing perjury and falsely accusing plaintiff without probable cause, under color
   of law for violating NYC DOT Traffic Rule § 4-08(j)(1) for an improper
   registration - commercial vehicle for having: no rear seatS (plural), seat faced
   backwards, seat not bolted, no seatbelt etc.

2. Plaintiff is licensed via a New York State Driver's License by the State of New York to
   operate his modified passenger van. Plaintiff's van is a properly registered
   passenger van. Plaintiff uses and has used his properly registered van for personal
   travel and in the ordinary course of his sole proprietorship DJ business to travel
   and transport DJ equipment (see Cranis and Kayak DJ contracts - (Ex#77,#78, #10b).

3. For approximately 15 years the City of New York. and their agents have committed
   perjury under the color of law fraudulently claiming without probable cause that
   plaintiff has an improperly registered commercial vehicle. Plaintiff's Ford E150

1

passenger vehicle (VIN# 1FTEE14Y9PHA79791) is a modified van that is a properly registered passenger van as defined under New York State Department of Motor Vehicles Rule and Regulation §106.3.d (Ex# 10a) which allows for a modified commercial van to be registered in the passenger class if it has" at least **one seat** or set of **seat fittings** that is installed behind the driver ". Plaintiff's photos, videos, NYC DOF PVB decisions, and NYPD vehicle inspections, and correspondence all prove that plaintiff has a " permanently bolted rear auto seat and rear side window ". NYS DMV §106.3.d cannot be used as the basis for a commercial vehicle definition for parked vehicles under NYC DOT Traffic Rule §4-08(j)(1) - (Ex#11b, #11c) violations in the City of New York because seat bolts under a seat are not visible from outside a locked parked vehicle. Another reason why §106.3.d is cannot be used for parking violation purposes is because a vehicle with all rear seats removed and has no visible rear seat can still be defined as a passenger vehicle if there are " seat fittings " present. Accordingly, the only applicable and correct law and rule of New York for defining a parked commercial vehicle violation §4-08(j)(1) in the City of New York is NYC DOT Traffic Rule §4-01(b). NYC DOT Traffic Rule §4-01(b) defines a commercial as a vehicle which " bears commercial plates ". (Ex#11a).

4. The NYS Department of Motor Vehicles is the only governmental agency that has the authority to issue vehicle registrations and license plates.The NYS DMV does not have a commercial vehicle definition for parked locked vehicles. NYC DOT traffic rule §4-01(b) definition for parked locked vehicles is a vehicle which bears commercial plates (which is visible from outside a locked parked vehicle). Since the City of New York does not issue commercial vehicle registrations it has no authority to issue parking violations under the NYS DMV 106.3.d definition criteria because it is physically impossible to observe rear seat bolts from outside a parked locked vehicle. To determine compliance under §106.3.d, access inside the rear of the vehicle and under the rear seat (of a parked locked vehicle) is required to physically observe whether a rear seat is affixed by rear seat bolts located under a seat (or if a set of seat fittings is present). - (Ex #22b,#14b)

5. Through fraud and concealment (Ex#14b) in violation of the Due Process Clause defendants have refused to enforce and adjudicate NYC DOT traffic rule §4-08(j)(1) improper registration commercial vehicle parking violations (Ex#5a,#5l, #3a-#24d etc.) based on the only NYC commercial vehicle definition for a parked vehicle. NYC DOT traffic rule §4-01(b) defines a parked (and other than parked) commercial vehicle in the City of New York as one which bears commercial plates. Plaintiff's modified van is a properly registered passenger vehicle bearing passenger plates.

6. Defendants adjudication of plaintiff's NYC DOT traffic rule §4-08(j)(1) improper registration commercial vehicle notice of parking violations was arbitrary, capricious and an abuse of discretion. Defendants violated the Due Process Clause, 5th and 14th amendments in adjudicating said nopvs by changing the wording of

2

NYC DOT §4-08(j)(1) on the decisions and orders issued to plaintiff from the correct " in accordance with the laws and rules of New York" to the incorrect " in accordance with the laws and rules of the "State" of New York" (Ex#5l,#4c,#3b,#6b,#7e,#8b,#9b, #12m,#13b,#14b) . Defendants did not only rewrite the laws and rules when adjudicating §4-08(j)(1) nopvs, but illegally suppressed and ignored the correct NYC DOT traffic rule §4-01(b) commercial vehicle definition for a parked vehicle on the books when adjudicating said §4-08(j)(1) violations. NYC DOT Traffic Rule §4-01(b) unlike NYS DMV 106.3.d is easy and objective to define a parked commercial vehicle because no access inside a parked vehicle is needed to observance a commercial plate bolted to the outside bumper.

7. Defendants arbitrary and capricious enforcement and adjudication of NYC DOT Traffic Rule §4-08(j)(1) improper registration commercial vehicle nopvs violated and interfered with plaintiff's free use of his vehicle, constitutional right to travel, and interfered with the use of his vehicle in the ordinary course of his sole proprietor DJ business etc. Defendants numerous baseless and unnecessary vehicle inspections (Ex#22b, ¶63,#14d,#14b,#23a-d etc) harassed plaintiff and interfered with his constitutional right to travel and use of his vehicle for business purposes. Defendants' numerous and burdensome issuance of perjurious nopvs without probable cause has caused plaintiff to make unnecessary court appearances and vehicle inspections  which required large amounts of administrative time and resources which interfered with plaintiff's personal and business use of his vehicle.

8. Plaintiff has made approximately15 years of complaints to City of New York officials regarding perjury, harassment and ticket quotas as related to all of the approximately 50+ dismissed improper registration - commercial vehicle Notice of Parking Violations (NOPV's). No action was taken to effectively stop the continuous issuance of the perjurious nopvs, or to train, supervise, punish or terminate the employment of the City of New York agents and officials responsible for the continuous issuance of said perjurious nopvs for approximately 15 years. Despite knowing plaintiff's vehicle was in compliance with §4-08(j)(1) and being ordered to cease and desist the further issuance of perjurious nopvs, defendants continued to commit perjury and extortion crimes by falsely claiming without probable cause that plaintiff's vehicle was not in compliance under NYC DOT traffic rule §4-08(j)(1) " in accordance with all laws and rules of the " State " of New York ".

9. Defendants issuance, enforcement and adjudication of approximately 50+  perjurious improper registration commercial vehicle registration nopvs over approximately 15 years were not mere annoyances. All §4-08(j)(1) improper registration commercial vehicle nopvs issued by defendants and their agents were perjurious and had no basis in the intended purpose of NYC DOT traffic rules: for traffic safety and traffic flow. Defendants (collateral) objective of the issuance of all of said improper registration nopv's by defendants and their agents was to meet ticket quotas / extort assets.

Defendants issuance of said perjurious nopvs without probable cause by definition were crimes of perjury, extortion, violations of the " Due Process Clause " and the constitutional right to travel, and other Constitutional, Federal, State laws and rights.

10. Defendants' and defendants' agents' conduct, actions, and inactions under "color of law " has violated plaintiff's constitutional rights including but not limited to his 5th, 14th, 4th and and 1st amendments of the Constitution of the United States, Due Process Clause, right to impartial tribunal, right to travel and conduct business without governmental interference, harassment, abuse of process and malicious prosecution, State pendent claims, Monell Claims, negligence, willful misconduct etc. Defendants actions are color of law violations under 42 USC §1983, 18 USC § 241, 18 USC § 242, 18 USC § 245 etc.

11. The City of New York, their agencies and agents have conspired and engaged in an illegal ticket quota enterprise. The illegal ticket quota policy, practice and enterprise uses threats, extortion, coercion,  perjury and asset / property confiscation to illegally loot revenues from the public. Defendants' and defendants' agents' conduct, (actions and inactions) and ticket quota policy and practice have violated racketeering laws (RICCO). In January 2006 defendants were first found by an arbitrator to have engaged in an illegal ticket quota policy and practice. More recently in 2010, numerous NYPD agents have come foward with tape recordings and documents in lawsuits claiming coercement and retaliation for not participating in the ticket quota enterprise extortion racket. - (Ex#1a-1h,#2a-2e,#33-75).

12. Defendants' issuance and enforcement of ALL NYC DOT traffic rule  §4-08(j)(1) improper registration commercial vehicle nopvs, which suppressed and ignored the NYC DOT traffic rule §4-01(b) definition of a commercial vehicle was a crimes of perjury, illegal, arbitrary, capricious, an abuse of  discretion, extortion, willful misconduct, gross negligence, an abuse of process, evidence of ticket quotas and a violation of the Due Process Clause etc. The adjudication of all of plaintiff's NYC DOT traffic rule § 4-08(j)(1) improper registration commercial vehicle nopvs by defendants which suppressed and ignored the NYC DOT traffic rule §4-01(b) definition of a parked commercial vehicle and which stated " in accordance with the laws and rules of the " State " of NewYork was illegal, corrupt, arbitrary, capricious, an abuse of discretion, gross negligence, willful misconduct, an abuse of process, evidence of ticket quotas and a violation of the Due Process Clause etc.

13. The facts set forth allow plaintiff to plead Monell Claims and obtain relief for defendants' failure to screen, train, supervise, control, discipline, for defendants' officials' policy and practice of illegal ticket quotas, racketeering, and violation plaintiff's constitutional rights, Due Process Clause Violations, Federal laws and State pendent claims (etc.).

## JURISDICTION AND VENUE

14. The following jurisdictional and venue claims merit this 3rd Amended Complaint to be afforded judicial review on behalf of plaintiff.

15. Jurisdiction is based upon:

   a) The acts of the defendants occurred in the Eastern District of New York and venue is based on 28 U.S.C. § 1391(b).
   b) The jurisdiction of this Court for Malicious Prosecution, as a State Pendent Claim is invoked pursuant to 28 U.S.C § 1367.
   c) The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §1983 for Color of Law violations.
   d) The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §1983 for violations under the Due Process Clause.
   e) The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983 for Malicious Abuse of Process.
   f) The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983 Harassment.
   g) The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983 Gross Negligence.
   h) The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983 Willful Misconduct.
   i) The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983 Intentional Infliction of Emotional Distress.
   j) The jurisdiction of this Court is invoked pursuant to the 1st Amendment to the of the Constitution of the United States.
   k) The jurisdiction of this Court is invoked pursuant to the 14th Amendment to the Constitution of the United States.
   l) The jurisdiction of this Court is invoked pursuant to the 5th Amendment to the Constitution of the United States.
   m) The jurisdiction of this Court is invoked pursuant to the 4th Amendment to the Constitution of the United States.
   n) The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1988 for Costs, Fees and Attorneys Fees.
   o) The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1961-68 for violations under "RICO "- Racketeering.
   p) The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 1951 for violations under the Hobbs Act.
   q) The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

r) The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343.

s) The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 242.

t) The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 245.

u) The jurisdiction of this Court is invoked pursuant to 18 U.S.C. § 241.

## PARTIES

16. Pro Se Plaintiff, Brad Ralin - 65-09 99th Street Flushing, New York 11374 is a resident of Queens in the State of New York.

17. a) Defendant, The City of New York c/o NYC Law Department Corporation Council 100 Church Street New York, N.Y. 10007 is a Municipal Corporation existing under the laws of the State of New York and employs all Defendants.

b) Defendant, Michael Sileo - NYPD Commanding Officer - of unknown address c/o New York City Police Department Queens North Enforcement 135-20 32nd Avenue Flushing, New York 11354 is, and at all times relevant to this action was, a Commanding Officer - Manager of the New York City Police Department and acted under the color of city and state law. Michael Sileo is a resident of unknown / New York State. Michael Sileo is being sued in both his official and individual capacity.

c) Defendant, J.A. Hunte - tax registry # 357087 of unknown address c/o The New York City Police Department / Brooklyn North Command 25 Chapel Street Brooklyn, New York 11201 (previously New York City Police Department / Queens North Enforcement 135-20 32nd Avenue, Flushing, New York 11354) is, and at all times relevant to this action was, a Traffic Enforcement Agent of the New York City Police Department and acted under the color of city and state law. J.A. Hunte is a resident of unknown / New York State. J.A. Hunte is being sued in both his/her official and individual capacity.

d) Defendant, Rosemary Simmons - tax registry 357687 of unknown address c/o The New York City Police Department / Queens North Enforcement 135-20 32nd Avenue, Flushing, New York 11354 is, and at all times relevant to this action was, a Traffic Enforcement Agent of The New York City Police Department and acted under the color of city and state law. R. Simmons is a resident of unknown / New York State. R. Simmons is being sued in both her official and individual capacity.

e) John and Jane Doe of unknown address c/o NYC Law Department Corporation Council 100 Church Street 1st Floor New York, N.Y. 10007 are

agents of the City of New York. John and Jane Doe are residents of unknown, New York State.  John and Jane Doe are both being sued in both his / her official and individual capacities.

## SUMMARY OF FACTS

18. Plaintiff is the legal owner of a New York State registered 1993 Ford Econoline E150 Van. Plaintiff's van is a properly registered " passenger " van in accordance with NYS Department of Motor Vehicle regulation - 106.3.d - by having " a) one rear window on the driver's side and b) one seat permanently installed behind the driver. ". - (Ex#10a,#10b)

19. Plaintiff's 1993 Ford E150 Van is a properly registered passenger  plated vehicle in compliance under NYC DOT Traffic Rule §4-01(b) (commercial vehicle definition for a parked an non parked vehicle) as it does not bear commercial plates.

20. Plaintiff is legally licensed by the State of New York to operate said vehicle for his personal use and in the ordinary course of his DJ business - (Ex#77,#78). Plaintiff has a constitutional right to own and operate his legally registered vehicle without government harassment, threats of vehicle seizure and the continuous numerous and burdensome issuance of perjurious violations without probable cause. " A protected constitutional interest exists where the State recognizes the right to operate a vehicle by issuing an operator's license " (Paul v Davis, 424 U.S. 693;  Safeguard Mut. Ins. Co. v Miller, 477 F.Supp. 299). Simeone v. Lindsay, 65 Atl. 778, 779; Hannigan v. Wright, 63 Atl. 234, 236.

21. " **The right of the citizen to drive on the public street with freedom from police interference, unless he is engaged in suspicious conduct associated in some manner with criminality is a fundamental constitutional right which must be protected by the courts.**" People v. Horton 14 Cal. App. 3rd 667 (1971). Berberian v. Lussier (1958) 139 A2d 869, 872, See also: Schecter v. Killingsworth, 380 P.2d 136, 140; 93 Ariz. 273 (1963). "The right to operate a motor vehicle [an automobile] upon the public streets and highways is not a mere privilege. It is a right of liberty, the enjoyment of which is protected by the guarantees of the federal and state constitutions'.". "The right of the citizen to travel upon the public highways and to transport his property thereon, either by carriage or by automobile, is not a mere privilege which a city may prohibit or permit at will, but a **common law right which he has under the right to life, liberty, and the pursuit of happiness**." Thompson v. Smith, 154 SE 579. "The right to travel is a part of the liberty of which the citizen cannot be deprived without due process of law under the Fifth Amendment." Kent v. Dulles, 357 US 116, 125.

7

22. Despite having no legal authority to issue vehicle registrations and license plates, the City of New York's agency the New York City Department of Transportation define a commercial vehicle by having three physical characteristics: " Pursuant to Section 4-01(b) of the New York City Traffic Rules, a commercial vehicle is defined as the following:

> For the purposes of **parking**, standing and stopping rules, a vehicle shall not be
>
> deemed a commercial vehicle or a truck unless:

- **it bears commercial plates, and**
- it is permanently altered by having all seats and seat fittings, except the front seats, removed to facilitate the transportation of property, except that for vehicles designed with a passenger cab and a cargo area separated by a partition, the seating capacity within the cab shall not be considered in determining whether the vehicle is properly altered; **and**
- it displays the registrant's name and address permanently affixed in characters at least three inches high on both sides of the vehicle, with such display being in a color contrasting with that of the vehicle and placed approximately midway vertically on doors or side panels. "

NYC Traffic rule 4-01(b) requires that a vehicle bear commercial plates for it to be classified as a commercial vehicle. As such, under NYC DOT traffic rules the lack of commercial plates (ie presence of a passenger plate) alone precludes the issuance of a §4-08(j)(1) improper registration - commercial vehicle nopvs on a passenger plated vehicle. - (Ex#11a).

23. Plaintiff's vehicle does not bear commercial plates and, does not have all rear seats removed - ie. it does have one permanently installed rear auto seat with safety belt bolted to the floor in the rear of the vehicle behind the driver's seat, and does not display any writing on any side of the vehicle. (Ex#5j,#15a,#22b,#3a-#24d)

24. Since approximately 2000 the City of New York their agencies and agents have committed perjury by fraudulently accusing plaintiff under color of law for parking a commercial vehicle in violation of NYC DOT Traffic rules § 4-08(j)(1) for an improper registration for having no rear seats etc. Each " Notice of Parking Violation" summons states: " I affirm under the penalty of perjury (Penal Law 210.45) that i personally observed the offense charged above; if the operator was present, i wrote the operator's name above or marked the " ID Refused " box and personally served this Notice upon him/her. If NO name appears above and the ID Refused is not marked, I affixed this notice to the vehicle". The issuance of said nopvs was without probable cause and not based on the intended NYC DOT purpose of traffic safety or traffic flow. Plaintiff has successfully defended and had dismissed all of

approximately 50+ perjuriously issued improper registration commercial vehicle nopvs. (#5a,#4a,#3a,#6a,#7a,#8a,#3a-#24d).

25. Traffic Enforcement Agents ("TEA") in the City of New York perform their duties under color of law under the authority the New York City Police Department (" NYPD "). NYPD Traffic Enforcement agents are authorized to perform their duties by NYPD. NYPD is responsible for the screening, hiring,training, supervising, control, disciplining and firing of TEA's. Notice of Parking Violations issued by TEA's are sworn to be based on probable cause, being witness, and having observed violations of laws, rules and regulations. An nopv gives defendants' the authority to obtain a judgement that allows for the seizure of assets and vehicles of vehicle registrants and operators who violate laws, rules and regulations.

26. Since 2000 plaintiff has made many hundreds of complaints concerning the perjurious issuance of said nopvs under color of law which include but is not limited to include: Mayor Bloomberg, Mayor Bill De Blasio, Public Advocate Bill De Blasio, Public Advocate Leticia James, NYC Dept. of Finance Chief Administrative Judges, NYC DOF Supervising Judge Alan Patricoff, NYC Dept. of Finance Commissioners, NYC Dept. of Investigation (Ex#15e-#15g), Commissioner of Internal Affairs   Charles Campisi, NYC Dept. of Finance Chief Judge Mary Gotsopoulis and Laura Held, NYC DOT Commissioner, NYPD Commissioner's Bratton and Kelly, and numerous NYPD officials and agents including Queens Traffic North Commander - Michael Sileo (Ex#14a-#14m etc). No action has been taken to discipline, punish or terminate the employment of any City of New York agent(s) for committing perjury by falsely claiming to have observed plaintiff violating vehicle registration rule and regulations. Instead, said agencies and agents have obstructed investigations, libel, slandered and  defamed plaintiff (Ex#14b,#30a-#30c), destroyed ticket quota evidence (Ex#1g,#1b,#51 etc) , and refused to do any competent thorough independent investigation (Ex# 22a ,#22b etc) of plaintiff's grievances. Defendants' and defendants' agents' willful misconduct, actions, and inactions regarding the issuance of perjurious nopvs and failure to take appropriate actions to train, control, supervise and discipline the nopv issuing agents constitutes at the very least deliberate indifference,willful misconduct and gross negligence etc. Said conduct, actions and inactions by City of New York agencies and agents is evidence of a ticket quota policy and practice, and racketeering.

27. Plaintiff was issued approximately 50+ improper registration - commercial vehicle related nopvs. A FOIL request to NYPD for a complete list of all IAB complaints for improper registrations NOPV's was denied without any basis in fact or law. Regardless, all of said perjurious NOPV's issued against Plaintiff for improper registration - commercial vehicle under §4-08(j)(1) were dismissed. 3 improper registration nopvs were dismissed after stressful, time consuming and costly appeals. Said approximately 15 years of constitutional violation and torts are relevant

and permitted to be addressed by this court as to plaintiff's cause of actions as per the
Continuous Tort Doctrine and are not time-barred. (Dana v Oak Park Marina (197,
4th Dept 230 AppDiv 2d 204; Drury v Tucker, 210 A.D.2d 891, (4th Dept. 1994) and
are therefore not time-barred. A partial list of Notice of Parking Violations issued by
agents of the City of New York against plaintiff for improper registration -
commercial vehicle is as follows:,
12.19.99 # 341558774-5, 1.20.00 # 3421551996-0, 4.13.00 # 341556273-6, 11.22.00
# 345184452-7, 1.26.01 #349839288-8, 2.27.01 # 351258059-2 & # 351258060-9,
2.28.01 # 35190740-9 345190739-2 & #345190740-9, 5.01 # 354713187-0,
9.10.02 # #369133858-6, 10.22.02 #375447830-4, 5.2..03 #38042222254-7,
9.12.03 #383974449-0, 1.17.04 # 388220429-1, 3.23.04 # 390399728-6,
3.29.04 # 390824615-5, 4.15.04 # 391479253-0, 4.27.04 # 391227496-4,
7.23.04 # 101165340-0, 12.04 # 104867122-7, 2004 # 388220430-8,
6.29.05 # 108162680-0, 4.06 #110045542-5, 4.06 #1100445543-7,
6.08.06 # 110048991-5 & # 110048992-7, 2006 # 110504976-0,
2006 # 110504972-3, 2007 # 113083901-1, 1.26.11 #130167173-3,
1.26.11 #130167174-5, 3.21.11 # 130657724-0, 4.28.11 # 131099184-4,
4.28.11 # 131099183-2, 9.8.12 # 709131544-3, 9.22.12 # 719269265-7,
4.9.13 # 7143965479, 6.20.13 # 7099920938-3, 8.2.13 # 708996789-0,
9.7.13 # 778822130-2, 9.27.13 # 712829316-4, 3.1.14 # 715433973-1,
8.26.14 # 800082801-7 and 9.12.14 # 801275013-2.

28. On one occasion on April 27, 2004, NYC DOT agent Bruno Iciano issued 1 of 2
perjurious nopvs falsely claiming that plaintiff had an improper registration -
commercial vehicle for no rear seats. Plaintiff caught Bruno Iciano on the street on
film moments after the 2nd NOPV was issued. Plaintiff advised Iciano on film that a
rear auto seat was present and demanded that he stay on the scene and observe the
seat for which he refused. Iciano fled the scene when told police were being called
and then committed another crime by falsely identifying himself as "LuLu". Video
tapes were sent to NYC DOI Commissioner- Rose Gill Hearn and Internal Affairs -
Charles Campisi. All City agents who were provided with the video and complaint
refused to take any action against Bruno Iciano or to stop the further perjurious
issuance of §4-08(j)(1) nopvs. Said video is also available to be viewed on youtube -
https://www.youtube.com/watch?v=u2BiupBIEtI. Said conduct, actions and inactions
by defendants' and their agents at the very least constitutes perjury, willful
misconduct, deliberate indifference, and is evidence of a ticket quota policy and
practice, and racketeering etc. (Ex#15a-h)

29. Another Traffic Enforcement Agent named Janet Hayward issued three perjurious
nopvs against plaintiff falsely claiming the vehicle was a commercial vehicle
due to a " gate divider ". Said nopvs were dismissed as a gate divider is not a
violation / definition of a commercial vehicle. Hayward's Supervisor Ida Terry
claimed she told Hayward to not issue any further improper registration summonses

on plaintiff's van. On or about December 7, 2004 Ida Terry was <u>tape recorded</u> stating she " allegedly " advised Hayward and all other TEA agents that plaintiff's vehicle was a lawfully registered passenger vehicle  and to not issue further nopvs on plaintiff's van. Janet Hayward issued further nopvs despite Terry's claim that Hayward was instructed not to do so. Said conduct, actions and inactions by defendants' and their agents, Ida Terry, and Hayward at the very least constitutes willful misconduct, deliberate indifference (failure to: screen, train, supervise, control, discipline, terminate employment) and is evidence of a ticket quota policy and practice, and racketeering etc. - (Ex#19a,#19b,#19c,#19d,#23c,#19f,#19e).

30. On another occasion, Supervising Administrative Law Judge Alan Patricoff the infamous husband of NYC Dept. of Finance Assistant Commissioner - Rochelle Patricoff was taped recorded stating (after being shown evidence of plaintiff's properly registered passenger vehicle with rear auto seat) that he " i'm not looking" ... " i don't care " about photo evidence plaintiff was trying to show Patricoff of the vehicle's rear auto seat . Plaintiff complained to Patricoff that his subordinate ALJ Levine was corrupt/unimpartial by refusing to acknowledge recently filmed pictures of the rear auto seat, and biased by plaintiff's complaints and statements of a lawsuit to ALJ Levine which caused her to issue a guilty verdict against him. Patricoff first asked Plaintiff to show him the pictures in the camera and claiming concern and then admitted he did not care and was not looking . Said encounter was recorded and fowarded to Mayor Bloomberg and the NYC DOI Commissioner Rose Gill Hearn etc. No action was taken and it was discovered that NYC DOI - Vincent Green (who was supposed to be investigating plaintiff's complaints against Patricoff ironically co-chaired a Corruption Task Force with Alan Patiricoff's wife - Rochelle Patricoff). It was later reported in newspapers that Alan Patricoff  the highest paid ALJ was investigated for padding his time sheets to fraudulently increase his Administrative Law Judge fees. Plaintiff, after paying the fine (as a prerequisite to filing an appeal) and a long and expensive appeal process had Patricoff's subordinate's corrupt decision overturned in plaintiff's favor. Said conduct, action and inactions by defendants' and their agents, the Patricoffs, and others at the very least constitutes deliberate indifference willful misconduct and is evidence of a ticket quota policy practice, Due Process Clause Violations, a ticket quota enterprise, and racketeering etc. - (Ex#24a,#24b,#16a-#16j)

31. Despite Michael Sileo's  September 24, 2012 inspection of plaintiff's vehicle's rear auto seat and statements that his subordinates would be trained and ordered to not issue any further improper registration nopvs to plaintiff, Sileo wrote a letter dated December 4, 2012. Sileo's letter dated December 4, 2012 to plaintiff states"... "... we are in receipt of your complaint on September 23, 2012. In order to do a complete investigation we require the following information: summons number, incident location, date of incident, describe the aforementioned in greater detail, what you feel should have been done...". Plaintiff had made complaints

11

to internal affairs against Simmons for 2 nopvs prior to the Sept. 24, 2012 inspection. All the complaint information he requested already was provided (to IAB ) to Sileo on or about September 24, 2012. - (Ex#14m,#14d,#14e etc)

32. On October 21, 2013 Michael Sileo's subordinate Hossain.Islam stated in an email with regards to improper registration - commercial vehicle nopvs being issued by NYPD traffic agents against plaintiff's van...: " ...All enforcement personals were advised that not to write any summonses to the vehicle which is properly registered.". - (Ex#14k)

33. Defendant R. Simmons issued FOUR knowingly false and perjurious nopvs against plaintiff for having an improper registration - commercial vehicle - no rear seats, seat not bolted to the floor, no seat belt etc.. On September 8, 2012 R. Simmons issued NOPV # 70913154443. On September 22, 2012 R. Simmons issued NOPV #7192692657. On or about September 24, 2012 Plaintiff brought his vehicle to " Queens Traffic North " to be inspected by Defendant Michael Sileo and his subordinate Harjinder Singh. Both Sileo and Singh observed the rear auto seat from the outside of the vehicle but refused to enter the vehicle and inspect underneath the seat to determine how the seat was installed. Plaintiff was assured at the inspection that all traffic agents would be instructed that plaintiff's vehicle was a properly registered passenger vehicle and that no further nopvs would be issued against plaintiff's vehicle. Plaintiff's request for a letter confirming the vehicle inspection, findings and actions were refused.

34. Despite Sileo and Singh's assurances that R. Simmons would be ordered to not issue further NOPV's , R. Simmons subsequently issued two more perjurious nopvs for " NO Rear SeatS " under the Color of Law. No law requires rear seats. NYS DMV Reg 106.3.d only requires one rear seat or set of seat fittings. NYC has 3 physical commercial vehicle definition characteristic requirements for a parked vehicle as stated above of which none are present in Plaintiff's vehicle. Again on September 27, 2013 R. Simmons issued perjurious nopv #7128293164 which stated " seat not bolted to the floor, no seat belt, no rear seatS ". On October 1, 2013, ALJ Thomas Adinolfi dismissed said nopv with the decision and order stating: " Respondent has been charged with violating Traffic Rule 4-08(j)(1) by standing or parking a vehicle bearing New York license plate or plates without properly registering it in accordance with the laws and rules of the **State** of New York.". Respondent testifies that there is a rear seat permanently affixed in the vehicle, and displays a video showing the seat and the vehicle in support. This is a persuasive defense. Respondent has submitted credible testimony and evidence in support of this claim. Summons dismissed.". Said enforcement and adjudication of NYC DOT Traffic Rule §4-08(j)(1) improper registration commercial vehicle nopvs which suppressed and ignored the NYC DOT Traffic Rule §4-01(b) commercial vehicle definition for a parked vehicle which requires a commercial plate was a crime of perjury, arbitrary, capricious, an abuse of

discretion, willful misconduct, a violation of the Due Process Clause, and evidence of illegal ticket quota policy and practice etc. - (Ex#4c,#4a-#4i).

35. On March 1, 2014 R. Simmons issued her 4th perjurious nopv #7154339731, NYC DOT traffic rule §4-08(j)(1) improper registration which fraudulently claimed " No Rear SeatS ". No Rear Seats is not a definition of an improper registration / commercial vehicle in the City or State of New York. On March 17, 2014 ALJ Maria Dispenza issued a decision and order which stated: " Respondent has been charged with violating Traffic Rule 4-08(j)(1) by standing or **parking** a vehicle bearing New York license plate or plates without properly registering it in accordance with the laws and rules of the **State** of New York.". " Respondent submits documentary evidence in support of claim that the vehicle was properly equipped with permanent rear seat. Dismissal warranted. A parked commercial vehicle must bear a commercial plate to be defined as a commercial vehicle according to NYC DOT traffic rule §4-01(b). Defendants' issuance and enforcement of ALL NYC DOT traffic rule §4-08(j)(1) improper registration commercial vehicle nopvs, which suppressed and ignored the NYC DOT traffic rule §4-01(b) definition of a commercial vehicle was a crime of perjury, illegal, arbitrary, capricious, an abuse of discretion, extortion, willful misconduct, gross negligence, an abuse of process, evidence of ticket quotas and a violation of the Due Process Clause etc. The adjudication of all of plaintiff's NYC DOT traffic rule § 4-08(j)(1) improper registration commercial vehicle nopvs by defendants which suppressed and ignored the NYC DOT traffic rule §4-01(b) definition of a parked commercial vehicle and which stated " in accordance with the laws and rules of the " State " of NewYork was illegal, arbitrary, capricious, an abuse of discretion, gross negligence, willful misconduct, an abuse of process, evidence of ticket quotas and a violation of the Due Process Clause etc. NYC DOT traffic rule §4-08(j)(1) states " in accordance with the laws and rules of New York" not " laws and rules of the State of New York ". The only commercial vehicle definition for a parked vehicle in the City of New York is NYC DOT §4-01(b) which requires that a vehicle bear a commercial plate to be defined as a commercial vehicle. - (Ex#3a-#3j).

36. Defendant Simmons perjurious issuance of 4 nopvs against plaintiff were not for the intended purpose of NYC DOT Traffic rules, traffic safety or traffic flow. Simmons collateral objectives were retaliation for plaintiff's prior complaints and to meet a ticket quota / raise revenue. Simmons willful misconduct was not punished by her supervisor defendant Commanding Officer Michael Sileo. Instead Sileo lied to the Public Advocate (in an August 15, 2014 letter) who was investigating his actions and fraudulently accused plaintiff of: removing the rear auto seat (which plaintiff never did) and plaintiff's vehicle having " seat fittings " as an excuse for his agents perjury (which also do not exist). A video taped vehicle inspection investigation by NYPD C. Katstabanis and Jacqueline Guevara on March 18, 2015 proved that there are no seat

fittings and only 1 permanently installed rear seat. The video also proved that despite Sileo's false explanation of the applicable commercial vehicle definition being NYS DMV §106.3.d that in fact NYC DOT traffic rule § 4-01(b) defines a parked commercial vehicle in the City of New York as bearing commercial plates. Plaintiff's properly registered passenger van clearly does not bear a commercial plate. Sileo further contradicts his lies to the Public Advocate when he stated in an October 25, 2013 letter that plaintiff's van has " rear seatS " (plural) while also stating plaintiff's vehicle is in compliance. All four nopvs issued by R. Simmons were dismissed by an Administrative Law Judge based on photographic evidence of one permanently installed rear auto seat. R. Simmons committed perjury by falsely claiming under the Color of Law that plaintiff violated vehicle registration laws and rules for " no rear seats " and " seat not bolted " which is an oxymoron. The NYC DOF PBV Administrative Law judges violated the due process clause by stating in the decision that the §4-08(j)(1) violations were adjudicated based " in accordance with all laws and rules of the State of New York " which is not the NYC DOT code. The NYC DOT Traffic rule § 4-08(j)(1) states " in accordance with laws and rules of New York.". The only commercial vehicle definition for a parked vehicle is NYC DOT traffic rule §4-01(b) which only requires that a vehicle bear a commercial plate to be defined as commercial vehicle. § 4-01(b) was suppressed and ignored. NYC DOF PVB ALJ's violated the Due Process Clause by arbitrarily and capriciously with an abuse of discretion adjudicated NYC DOT § 4-08(j)(1) improper registration commercial vehicle nopvs based on NYS DMV § 106.3.d which is illegal to use for defining a a parked locked commercial vehicle as access is required inside the vehicle to observe seat bolts under the seat. Also, the presence of " seat fitting " with no rear seat visible/present also disallows §106.3.d to be used in the enforcement and adjudication of § 4-08(j)(1) improper registration commercial vehicle nopvs. Said enforcement of NYC DOT Traffic Rule §4-08(j)(1) improper registration commercial vehicle nopvs which ignored the NYC DOT Traffic Rule §4-01(b) commercial vehicle definition which requires a commercial plate was a crime of perjury, arbitrary, capricious, an abuse of discretion, willful misconduct and a violation of the Due Process Clause etc. - (Ex# 14b,#22b,#3a-#3j,#4a-#4i,#6a-#6c, #7a-#7e).

37. On March 1, 2014 TEA R. Simmons tax reg# 357687 issued her 4th perjurious NOPV # 7154339731 at 99th Street / 66th Avenue 11374 falsely claiming that plaintiff was in violation of NYC traffic rule 4-08(j)(1) for no rear seats. NYC Traffic rule 4-01(b) has 3 requirements none of which applies to plaintiff's vehicle. Plaintiff has one permanently bolted rear sear behind the driver's seat and the vehicle bears a passenger plate. Michael Sileo has stated that R. Simmons was told the law in September 2012 and told to not to issue improper registration summonses on plaintiff's properly registered vehicle. R. Simmons has issued 2 additional improper registration NOPV's after allegedly being ordered by Sileo not to do so. Said conduct is harassment and has caused plaintiff extreme emotion distress, is a

waste of time and resources and a violation of plaintiff's constitutional rights, the Due Process Clause, and evidence of a ticket quota policy and practice enterprise etc. Defendants' issuance and enforcement of ALL NYC DOT traffic rule §4-08(j)(1) improper registration commercial vehicle nopvs, which suppressed and ignored the NYC DOT traffic rule §4-01(b) definition of a commercial vehicle was a crime of perjury, illegal, arbitrary, capricious, an abuse of discretion, extortion, willful misconduct, an abuse of process, evidence of ticket quotas and a violation of the Due Process Clause etc. The adjudication of all of plaintiff's NYC DOT traffic rule § 4-08(j)(1) improper registration commercial vehicle nopvs by defendants and their agents which suppressed and ignored the NYC DOT traffic rule §4-01(b) definition of a parked commercial vehicle which stated " in accordance with the laws and rules of the " State " of NewYork was illegal, arbitrary, capricious, an abuse of discretion, willful misconduct, an abuse of process, evidence of ticket quotas and a violation of the Due Process Clause etc. - (Ex #3a-#3j).

38. On March 17, 2014, NOPV # 7154339731 was dismissed. The decision and order by Administrative Law Judge Maria R Dospenza .. states -...In accordance with the laws and rules of the **State** of New York".... " respondent submits documentary evidence in support of claim that vehicle is properly equipped with permanent rear seat. dismissal warranted.". Said decision based on " on in accordance with all laws and rules of the **State** of New York " which mistated the the actual NYC DOT Traffic Rule §4-08(j)(1) law and rule " in accordance with the laws and rules of New York ", and ignored the applicable NYC DOT traffic rule § 4-01(b) commercial vehicle definition was arbitrary, capricious, an abuse of discretion and a violation of the Due Process Clause etc. - (Ex #3b)

39. Despite Plaintiff's March 6, 2014  NYPD Internal Affairs complaint log # 2014 - 8088 against  R. Simmons for perjury and illegal ticket quotas, no disciplinary action has been taken against Simmons for her criminal acts of perjury, harassment and ticket quotas etc.

40. As a result of Simmons' and other TEA's crimes of perjury, plaintiff was forced under threat of  vehicle confiscation to appear in court and provide his driver's license, papers and effects and testify under oath before a judge. Failure to appear in court to answer the perjurious nopvs, provide papers and testify would have resulted in plaintiff's asset / vehicle confiscation/ and further infringement of plaintiff's constitutional right to travel and property rights. Said conduct, actions and inactions by defendants is harassment, violated Plaintiff's 4th, 5th and 14th constitutional rights, Due Process Clause violations, is willful misconduct, is malicious prosecution, abuse of process, evidence of deliberate indifference, ticket quotas and racketeering etc.

15

41. Defendants' further violated Plaintiff's 5th and 14th amendment Due Process Clause rights by not permitting plaintiff to cross examine his accusers at the administrative law hearings which is held before an Administrative Law Judge. Due process requires that plaintiff have the opportunity to cross examine his witness accuser who claims under the penalty of perjury that plaintiff violated a New York City traffic rule/ regulation. City of New York traffic agents violate Penal Law 210.45 with impunity. Said policy and practice is part and parcel of the ticket quota policy/practice, racketeering conspiracy. NYC Charter Chapter 45 § 1046 which exempts the NYC Parking Violation Bureau from right to subpoena, cross-examine witnesses etc. is a violation of the Due Process Clause and Equal Protection Clause. - (Ex #26)

42. Defendants' 15 year continuous committing of perjury to falsely accuse plaintiff of violating NYC DOT traffic rules and regulations without probable cause, are violations of plaintiff's 4th, 5th, 14th amendment rights and violations of the Due Process Clause etc. Plaintiff has been forced under duress to appear in court before a judge, provide sworn testimony, provide a driver's license and other personal papers and effects in response to defendants' continuous threat of asset seizure and vehicle confiscation. Defendants' continued to violate plaintiff's due process rights despite having inspected the van, knowing it is compliance with the law by having all 50+ prior nopvs were dismissed.

43. On August 26, 2014 at 9:14 am at 65-10 99th Street , TEA J.A. Hunt issued a perjurious nopv # 8000828017 without probable cause against plaintiff for violating NYC DOT Traffic Rule §4-08(j)(1) improper registration commercial vehicle of plaintiff's properly registered and passenger plated van - vehicle lic. plate AME8106 for " **backseats faced wrong, no seat belt, not bolted, no rear seats**". No law requires rear seats (only 1 seat or set of seat fittings is required). Hunte did not observe backseatS faced wrong as there is only 1 backseat present. The direction of a rear seat is not a stated commercial vehicle definition requirement by any law or rule of the State of New York or The City of New York. Hunte didn't have access inside the parked locked vehicle to make any basis for a sworn claim of an observance of no seat bolts. Access inside the rear of the vehicle is required to crawl under the rear seat to observe the bolts which permanently affixes the rear seat the floor of the vehicle. Hunte also claimed under the penalty of perjury to have observed no rear seats while at the same time claims that there are backseats present facing the wrong way which is impossible. Even if a rear seat is present and facing the wrong way it is not a violation of any law and rule. There is also a seat belt with a bright orange button on the rear auto seat which was clearly visible to Hunte when she swore under the penalty of perjury that there was no seat belts. Hunte committed perjury in violation of NYS Penal Law 210.45 by not observing said violations before issuing said NOPV. Michael Sileo and NYPD internal affairs were sent dated pictures of the bolted rear seat via email and notified on the telephone on or about August 26, 2014 @ approx. 11:30am. Michael Sileo refused to withdraw the summons and

refused to respond in writing with proof that said NOPV was withdrawn. On August 27, 2014 ALJ Steven Gaynor dismissed said bogus summons. Decision and Order dated August 27, 2014 was attached in an email to Michael Sileo. (Ex#14b,#22b, #5a - # 5n). It should be noted that Hunte issued said nopv less than 2 weeks after Sileo stated to the Public Advocate he advised his subordinates of the law and to not issue nopvs on plaintiff's properly registered passenger vehicle (Ex #14b).

44. On August 26, 2014 NYC DOF PVB ALJ Steven Gaynor violated plaintiff's rights under the Due Process Clause when he issued a decision and order designed to protect defendants in the further support of the crime of perjury and the illegal ticket quota enterprise. ALJ Steven Gaynor's decision and order states: " Respondent has been charged with violating Traffic Rule 4-08(j)(1) by standing or parking a vehicle bearing New York license plate or plates without properly registering it in accordance with the laws and rules of the **State** of New York"."....". Upon application of the respondent the summons is dismissed because it does not comply with the vehicle and traffic law law §238. Dismissal is not on the merits of the case presented. It cannot be told from the face of the summons whether the violation was for no rear seats or back seats faced wrong. As a result, the summons must be dismissed. ". ALJ Gaynor's decision is a Due Process Clause violation for many reasons. First, NYC DOT § 4-08(j)(1) does not state " laws and rules of the State of New York". NYC DOT §4-08(j)(1) states "... in accordance with the laws and rules of New York.". NYC DOT traffic rule § 4-01(b) the relevant City of New York definition of a parked commercial vehicle states a commercial vehicle can only be defined as a commercial vehicle if it bears commercial plates. Plaintiff's vehicle bears passenger plates and as such the applicable NYC DOT commercial vehicle definition should have been used as a basis to adjudicate  and dismiss said perjurious improper registration commercial vehicle nopv. Back seats faced wrong is not a commercial vehicle definition under any State of New York or City of New York law or rule. No rear seatS is not a commercial vehicle definition under any law or rule. Plaintiff never made any application as the ALJ states. The rewriting of §4-08(j)(1) by ALJ Gaynor which suppressed and precluded the NYC DOT §4-01(b) as a basis for adjudicating a §4-08(j)(1) improper registration nopv due to a  lack of a commercial plate was arbitrary, capricious, an abuse of discretion and a violation of plaintiff's Due Process Clause rights. Said actions by defendants and their agents is an abuse of process, a malicious prosecution, willful misconduct, gross negligence, a violation of plaintiff's constitutional rights, a violation of the Due process Clause etc. J.A. Hunte's perjurious issuance of said nopv is a crime of perjury, an abuse of process, willful misconduct, evidence of ticket quotas(etc.) due to the fact that Michael Sileo alleges to have told Hunte that plaintiff's vehicle was in compliance and that she was ordered to cease and desist the further issuance of improper registration commercial vehicle nopvs. - (Ex #5l,#11b,#11c,#10a,#5a-#5n,#14b).

17

45. Despite defendant Sileo's numerous claims to have instructed his subordinates not to issue nopvs on plaintiff's properly registered vehicle, on September 12, 2014 TEA Gita Paul issued a perjurious nopv # 801275013-2 with intent to do harm without: probable cause, excuse or justification. Said nopv which perjuriously claimed " no rear seats " was dismissed by ALJ Gerald Guttman (who contrary to Defendant Sileo's knowingly false 8.15.14 claims to the Public Advocate and and a 3.18.15 vehicle inspection/investigation of Sileo's statements by Lt. C. Katsabanis who observed a permanently bolted rear auto seat) stated in the decision: " Testimony and video pictures and photos are convincing that vehicle had a permanent rear seat in the vehicle when summons was issued warranting dismissal ". The decision and order by ALJ Gerald Guttman which stated " The respondent has been charged with violating Traffic Rule 4-08(j)(1) by standing or parking a vehicle bearing a New York license plate or plates without properly registering it in accordance with the laws and rules of the **State** of New York.". NYC DOT Traffic Rule §4-08(j)(1) does not state : " in accordance with the laws and rules of the State of New York.". §4-08(j)(1) states : "in accordance with the laws and rules of New York.". The only commercial vehicle rule definition for a parked vehicle in the City of New York is NYC DOT §4-01(b) which requires that a vehicle bear commercial plates for a vehicle to be defined as a commercial vehicle. The City of New York and its agents suppression and ignoring of the § 4-01(b) in the enforcement and adjudication of §4-08(j)(1) improper registration commercial vehicle nopvs is arbitrary, capricious, an abuse of discretion and a violation of the Due Process Clause. - (Ex #8a - 8d).

46. Despite being ordered to not issue nopvs against plaintiff's properly registered passenger vehicle, on 4.9.13 @ 8:54am, V.H. Barnette issued nopv# 7143965479 perjuriously claiming improper registration commercial vehicle - no rear seats. There is no law which requires rear SEATS plural. On 5.1.13 nopv # 7143965479 was dismissed by ALJ Margaret Malone who stated: " The respondent has been charged with violating Traffic Rule 4-08(j)(1) by standing or parking a vehicle bearing a New York license plate or plates without properly registering it in accordance with the laws and rules of the **State** New York. Respondent testifies that the vehicle has a permanently installed rear seat and therefore has a proper passenger registration. Two videos are showing the vehicle with a rear seat installed and showing an earlier incident for the same violations showing the rear seat installed. Several photos are also provided from earlier incidents when respondent was issued same summons, to show that the vehicle has always had a rear seat installed. the evidence is persuasive to warrant dismissal. Dismiss.". Plaintiff faxed Sileo and Singh an April 25, 2013 letter on 4.26.13. (# 14d, #14e). Plaintiff states in the 4.26.13 letter that his vehicle is in compliance with the NYC DOT §4-01(b) commercial vehicle definition. Plaintiff advised Sileo and Singh of Barnette's perjurious nopv and of their 9.24.12 vehicle inspection and assurances that were made that there would be no further issuances of improper registration commercial vehicle registration nopvs. Said parties were also put on notice of a  complaint (log # 13-15344) to Internal Affairs. A

video (#13d) taken on 4.9.13 at 11:08am (2 hours after Barnette issued the nopv) shows the rear seat, seatbelt, bolts, passenger vehicle license plate, and a sign on the dashboard window stating there is a passenger vehicle with a rear auto seat. For the above mentioned reasons, Barnette had no probable cause to issue said nopv. Therefore, the issuance of said nopv by Barnette was a crime of perjury. Defendants and their agents violated the Due Process Clause by arbitrarily, capriciously with an abuse of discretion by refusing to enforce NYC DOT Traffic Rule §4-08(j)(1) with the only commercial vehicle definition for a parked vehicle in the City of New York. NYC DOT traffic rule § 4-01(b) requires that a PARKED vehicle bear a commercial plate for it to be defined as a commercial vehicle. Barnette's issuance of said nopv was not for the intended purpose of NYC DOT traffic safety or traffic flow. Barnette issuance of said improper registration commercial vehicle nopv was a crime of perjury, extortion, and the result of defendants ticket quota policy and practice - (Ex #13a-#13e,#11a#11c).

47. Despite being told by Sileo and Singh on or about September 24, 2012 that plaintiff's vehicle was a properly registered passenger van and to not issue improper registrations nopv's on plaintiff's properly registered vehicle, On 8.2.13 @ 1:14 pm E Rheams issued a perjurious nopv # 7089967890 without probable cause falsely accusing plaintiff under oath for having a commercial vehicle that is improperly registered due to: passenger plates on a commercial vehicle - no rear seats (#12a). Nopv # 7089967890 was dismissed on 8.29.13 by ALJ Damian Laugher who stated in his decision and order: " The respondent has been charged with violating Traffic Rule 4-08(j)(1) by standing or parking a vehicle bearing a New York license plate or plates without properly registering it in accordance with the laws and rules of the **State** of New York. Respondent testifies that there is a rear seat and permanent fittings in the vehicle and presents a photograph of the same. This is a persuasive defense. Dismissed." (#12m). Plaintiff found nopv # 7089967890 on his vehicle on 8.4.13. On 8.4.13 plaintiff filmed his vehicle's rear auto seat, safetybelt, rear seat bolts, passenger license plate etc. (#12b). Dated photographs also show the same rear seat permanently bolted to the floor behind the driver and a dashboard sign in the window advising vehicle is a passenger vehicle with a rear seat (#12c, #12d, #12e,#12f,#12g,#12h, #12i, #12j, #12l). Based on the above mentioned facts and evidence Rheams issued said perjurious nopv - no rear seats without probable cause. Defendants and their agents' enforcement and adjudication of NYC DOT § 4-08(j)(1) improper registration commercial vehicle nopv violates the Due Process Clause by arbitrarily, capriciously and with an abuse of discretion ignoring and suppressing NYC DOT §4-01(b) which is the only commercial vehicle definition for a parked vehicle in the City and State of New York. ALJ Laugher's rewriting of the NYC DOT Traffic Rule §4-08(j)(1) to read " The respondent has been charged with violating Traffic Rule 4-08(j)(1) by standing or parking a vehicle bearing a New York license plate or plates without properly registering it in accordance with the laws and rules of the State of New

York " is illegal and a violation of the Due Process Clause. NYC DOT §4-08(j)(1) states " ... parking a vehicle bearing a New York license plate or plates without properly registering it in accordance with the laws and rules of New York.", not the State of New York. - (Ex #12a - #12m,#11a,#11c).

48. Despite being told by Sileo and Singh on or about September 24, 2012 that plaintiff's vehicle was a properly registered passenger van and to not issue improper registration commercial vehicle nopv's on plaintiff's vehicle, on June 20, 2013 @ 7:07am G Ramsarran issued nopv# 7099209383 perjuriously claiming that plaintiff's properly registered passenger van had an improper registrations and was in violation of the laws and and rules of New York - " no rear seats " (#17a).On July 17, 2013 ALJ Jeremy Deutsch dismissed nopv 70992099209383 stating in his decision and order that: " The respondent has been charged with violating Traffic Rule 4-08(j)(1) by standing or parking a vehicle bearing a New York license plate or plates without properly registering it in accordance with the laws and rules of the **State** of New York. Respondent claims that the vehicle was properly equipped at the time the summons was issued. Respondent's claim is supported by persuasive testimony and documentary evidence. contemporaneous photos." (#17b). The decision also had the same Due Process Clause violation because the decision states " laws and rules of the State of New York when the actual NYC DOT traffic rule violation§ 4-08(j)(1) reads " laws and rules of New York ". Dated photo on June 21, 2013 shows the rear auto seat (#17c). For the above mentioned reasons Ramsarran issued nopv # 70992099209383 without probable cause having observed no violation. As such Ramsarran issuance of said nopv was a crime of perjury. Defendants and their agents violated the Due Process Clause by arbitrarily, capriciously and with an abuse of discretion refusing to enforce and adjudicate the NYC traffic rule violation with the NYC traffic rule definition of a parked commercial vehicle which only requires a commercial plate which plaintiff does not have. Said enforcement and adjudication was a corrupt abuse of discretion and violation of plaintiff's due process rights. (Ex #17a-#17c,#11a,#11c)

49. Another example perjury and Due Process Clause violations is P.O. Jacoby. ALJ Bradlee Biller found plaintiff guilty on NOPV #1100489927 (P.O. Jacoby summons issued at 1:00am on June 8, 2006) for improper registration commercial vehicle no rear seats / pass comp divider/commercial vehicle/ pass plates code 83 - 4-08(j)(1). Jacoby also issued nopv# 1100489915 Code 78 - §4-08(k)(6) night time parking of a commercial vehicle summons AT 1:00AM falsely claiming: pass plates / no rear seats/ comm vehicle (#18a). Jacoby committed perjury. A gate divider is not an observed violation (#19b,#19c, #19f). According to NYC DOT traffic rule §4-01(b) a parked vehicle that does not bear a commercial plate cannot be defined as a commercial vehicle. Plaintiff's van is a properly registered passenger van bearing a passenger plate. A permanently bolted rear auto seat was present when Jacoby issued the nopv for no rear seats (#18c,#18d,#18e,#18l, #18m,#18c,#18d). Plaintiff was at

Jacoby's precinct regularly complaining and having the vehicle inspected by his Captain since 2000 (#28a,#23d). Biller dismissed the night time parking vehicle stating: " The respondent has been charged with violating Traffic Rule 4-08(k)(6) by parking a commercial vehicle on a residential zoned street between the hours of 9pm and 5am. The cited regulation was not in effect at the time the summons was issued. The summons indicates vehicle is a passenger  vehicle. The regulation only applies to commercial vehicles.". Bradlee Biller's 2 decisions are mind-boggling! The §4-08(k) (6) nopv was issued at 1:00am which was between the hours of 9pm and 5am. Biller also states:" the summons indicates the vehicle is a passenger vehicle. This regulation only applies to commercial vehicles " (#18b) However, the nopv #1100489915 states : " no rear seats commercial vehicle passenger plates .". (#18a). On June 8, 2006 in the same afternoon Biller stated in his decision and order : "  The respondent has been charged with violating Traffic Rule 4-08(j)(1) by standing or parking a vehicle bearing a New York license plate or plates without properly registering it in accordance with the laws and rules of the **State** of New York. The photographs , and prior decisions, and statement of correction dated in 20002 do not persuasively establish that the required rear seat and fittings were removed from the vehicle at the time of the summons.witness statement from 2004 not persuasive." (#18b). What Biller has stated is the rear seat was present (there are no "seat fittings"). Photos taken on the same day were provided to Biller in court within 4 hours of the issuance of the nopvs. Plaintiff was forced to pay the $65.00 fine (#18f,#18i). The 3 judge appeal panel reversed the decision in favor of plaintiff and stated in their decision " Respondent was also prepared to discuss alleged misconduct by hearing officers and other city officials, but these subjects were found to be beyond the purview of this panel.". (#18g,#18h). Also it should be noted that on June 29, 2005 at 11:00pm plaintiff received NOPV # 1081626800 for improper registration. On June 30, 2005 ALJ Bradlee Biller states in another decision (nopv # 1081626800) on June 30, 2005 where he finds plaintiff not guilty : " The respondent has been charged with violating Traffic Rule 4-08(j)(1) by standing or parking a vehicle bearing a New York license plate or plates without properly registering it in accordance with the laws and rules of the **State** of New York. respondent claims that the vehicle was properly equipped at the time the summons was issued, respondent's claim is supported by persuasive documentary evidence, testimony, photos etc." (#18n). Complaints by plaintiff against Bradlee Biller were never responded to (1st amendment violation - redress of grievances). The clear pattern of conduct by various judges and the administrative law judge reform report (#25) suggests that NYC DOF Administrative Law Judges are complicit in the ticket quota revenue raising enterprise. P.O. Jacoby and Bradlee Biller violated the Due Process Clause by arbitrarily and capriciously refusing to enforce and adjudicate the NYC traffic rule violation with the NYC traffic rule definition of a commercial vehicle which only requires a commercial plate which plaintiff does not have. Said acts was an abuse of discretion. Biller also adjudicated the summons based on the laws and rules of the State of New York which is a Due Process Clause violation. §4-08(j)(1) states: " laws and rules of New York" not " laws

21

and rules of the State of New York". Biller abused his discretion by not adjudicating a §4-08(j)(1) nopv with the NYC DOT Traffic Rule §4-01(b) commercial vehicle definition which requires a commercial plate as a definition of a commercial vehicle. Defendants and their agents enforcement and adjudication of said nopvs was arbitrary and capricious, and in violation of the laws and rules of New York, violation of the Due Process Clause and forced a time consuming and expensive appeal (#18b, #18a - 18n,#11a#11c)).

50. On April 28, 2011, P.O. Spanos issued a perjurious nopv # 131099184 falsely claiming improper registration - no back seats (#20a). On 8.08.11 ALJ Talbert S Weeks found plaintiff guilty stating : " The respondent has been charged with violating Traffic Rule 4-08(j)(1) by standing or parking a vehicle bearing a New York license plate or plates without properly registering it in accordance with the laws and rules of the **State** of New York. Respondent unpersuasively claims that the summons should be dismissed because the vehicle is properly equipped with a rear seat as required for passenger vehicles. Respondent submits video evidence to support his claim. The evidence submitted however is inconclusive to support respondent's claim since it fails to identify the vehicle as the one summonsed"....[ (#20j screenshot of license plate in video) ,(#15a - video can also be viewed on youtube by searching "bruno iciano april 2004",#20h,#20i)]..." In addition, even if one were to conclude that the vehicle was the one summonsed, the " rear " seat shown in the van does not appear to be permanently bolted to the floor as required. Summons is sustained. Respondent claims that vehicle was properly equipped at the time the summons was issued. Respondent's claim is not supported by persuasive evidence.Respondent submitted a photo that is inconclusive because it fails to identify the vehicle summons is sustained"(#20b). The video and photos including a screenshot on the video of the license plate, seat and seat bolts was persuasive enough for an appeal panel to overturn this corrupt judge's decision (#20j,#15a,#20h,#20h,#20i). Plaintiff was railroaded by a hearing by mail kangaroo court 2 ALJ appeal panel despite a request for an in person hearing (#20e,#20d). The corrupt appeal decision in violation of due process which found plaintiff guilty (#20c) mysteriously disappeared and a 3 ALJ in person hearing appeal panel issued a decision finding plaintiff not guilty (#20f) and stated: " Upon review of the entire record before us, we find error. The decision is reversed and prior payment will be returned". For the above mentioned reasons P.O. Spanos issued said nopv without probable cause and committed perjury. Plaintiff's due process rights were also violated by a hearing by mail appeals panel decision despite a request for an in person hearing.The subsequent cover up was corrupt. On June 8, 2011 plaintiff received a letter from the NYC DOF (#20g) threatening to suspend plaintiff's registration and prevent registration renewals. Said acts by Spanos and Talbert Weeks was abuse of discretion. Weeks also adjudicated the summons based on the laws and rules of the " State " of New York which is a due process violation. §4-08(j)(1) states " laws and rules of New York" not " laws and rules of the State of New York". Week's abuse of discretion in not using §4-01(b) to

adjudicate the nopv which requires a commercial plate as a definition of a commercial was arbitrary and capricious, a due process violation and forced a time consuming and expensive appeal - (Ex #20a-#20j,#11a,#11c).

51. On March 23, 2004 @ 8:49am S. Mccain issued a perjurious nopv# 3903997286 without probable cause falsely claiming plaintiff's vehicle was in violation of § 4-08(j)(1) for " no rear seats ". Plaintiff photographed the rear auto seat which was permanently bolted to the floor behind the driver's seat on 3.23.04 at 2:47pm (#16h) and rear license plate (#16g). On March 23, 2004 plaintiff was found guilty by ALJ Levine (#16b). On October 8, 2004 an appeal panel reversed ALJ Levine's decision (#16c,#16d). Respondent's extorted a $105.00 fine from plaintiff based on Mccain's crime of perjury. Defendants' were forced to refund plaintiff's $105.00 cash property (#16i,#16j). ALJ Levine adjudicated the NYC DOT §4-08(j)(1) improper registration commercial vehicle nopv by suppressing and ignoring the NYC DOT §4-01(b) commercial vehicle definition which requires a commercial plate to define a parked commercial vehicle. ALJ Levine's actions were corrupt, arbitrary, capricious, and an abuse of discretion in not using NYC DOT traffic rule §4-01(b) commercial vehicle definition which only requires a commercial plate as a definition of a commercial vehicle. Defendant and their agents actions violated the Due Process Clause and forced plaintiff to litigate a time consuming and expensive appeal. (Ex #24a-#24d)

52. On April 15, 2004 S. Mccain again targeted plaintiff's vehicle without probable cause issuing nopv# 3914793530 perjuriously claiming improper registration commercial vehicle  - no rear seats (#16e). On April 16, 2004 nopv # 391792530 was dismissed : "improper registration. no rear seats. Respondent's video presented and photos support his claim that vehicle contains a rear seat. As such, respondent has met his burden to refute the charge." (#16f). It should be noted that complaints were made against Mccain for targeting plaintiff with perjurious nopv's. Plaintiff was never contacted by anyone regarding his complaints against Mccain. For the above mentioned reasons Mccain's 2 nopv's were issued without probable cause and were perjurious. Again, a passenger plated vehicle cannot be defined as a commercial vehicle under § 4-01(b). The enforcement and adjudication of nopv# 3914793530 was arbitrary and capricious and an abuse of discretion in violation of the Due Process Clause.

53. The intended purpose of NYC DOT Traffic rules are for traffic flow and traffic related safety. Defendants have perverted the " laws and rules of New York " §4-08(j) (1) and arbitrarily and capriciously enforced and adjudicated ignoring the NYC DOT §4-01(b) commercial vehicle definition which simply requires a commercial plate. Said arbitrary and capricious enforcement and adjudication of NYC DOT §4-08(j)(1) notice of parking violations was a corrupt practice which promoted perjury to obtain guilty verdicts to accomplish ticket quota revenue goals. Defendants coerced their

23

agents to meet ticket quotas revenue goals. Said coercion resulted in agents fabricating facts laws and rules without probable cause. Said acts were crimes of perjury. Defendants actions were an intentional malicious abuse of process (not errors) without justification or excuse. Defendants ticket quota enterprise violates RICCO and the Hobbs act.The 15 year nightmare of federal, state and constitutional violations that plaintiff has endured is shocking to the conscience and should not be tolerated in a civil society. (Ex#1a-#1h,#2a-2e,#33-#76)

54. It is a commonly known established fact that The City of New York, their agencies, and agents collude, conspire, coerce, extort and retaliate through their policy/ practice and engagement in an illegal ticket quota enterprise. Numerous NYPD officers have given sworn testimony as to its existence including but not limited to as reported by the NYC Police Benevolent Association - " Don't Blame The Cop Campaign ". The sole purpose of the " enterprise " is to loot revenue from the public. Other NYPD veteran police officers such as Adrian Schoolcraft - [source - https://www.youtube.com/watch?v=rwAQX0SWIhY ] and Adil Polanco - [source - https://www.youtube.com/watch?v=m3mmuZsHmv8 ], and Robert Borelli - [https://www.youtube.com/watch?v=7Tg-oLKkLzE ] have been fired and or retaliated against for tape recording evidence of ticket quotas, whistleblowing and exposing this illegal enterprise's ticket quota racket. The NYPD went so far as to involuntarily commit Schoolcraft to a mental institution in an attempt to silence him. Many NYPD officers will be subpoenad to provide sworn testimony and evidence of the illegal ticket quota enterprise and racketeering. Discovery must be conducted for plaintiff to be able to properly and thoroughly support his causes of actions. - (Ex #40a-#40c,#1a-1h,#2a-#2e,#2b).

55. Another example of the illegal act's by the NYC Dept. of Finance's enterprise was the ignoring of plaintiff's written request for an in person appeal hearing for NOPV # 1310991844 in September 2011. In a desperate attempt to find plaintiff guilty after his whistleblowing complaints, on September 20, 2011, despite a written request for an in person appeal, a panel of 2 corrupt judges ignored evidence and rubber-stamped a guilty verdict on plaintiff's appeal. Then on October 11, 2011 after complaints to Chief ALJ Mary Gotsopoulis, the Commissioner of the NYC Dept. of Investigation Rose Gill Hearn and NYC Dept. of Finance Commissioner David Franks, plaintiff was granted an in person appeal hearing. The mail in appeal decision of September 20, 20111 which found plaintiff guilty was made to mysteriously disappear. A new decision without explanation other than a pro forma statement that " we find error " was rendered in favor of the plaintiff on November 21, 2011. Said actions by defendants' were a denial of plaintiff's rights under the 5th and 14th amendments - Due Process Clause. (Ex #20e,#20c - #20g).

56. In an attempt to obstruct an investigation into ticket quotas and the perjurious issuance of improper registration-commercial vehicle NOPV's, Queens Traffic North Commanding Officer Michael Sileo libeled, slandered and defamed plaintiff. Despite Sileo's alleged 2012 instructions to his subordinates not to issue improper registration - commercial vehicle NOPV's against plaintiff, his agents issued eight more. After years of no response to emails to Public Advocate Bill De Blasio and Leticia James Plaintiff made an in person appearance at the Public Advocate's office demanding that Public Advocate take action to stop the enterprise from engaging in the policy and practice of ticket quotas. In response to a Public Advocate letter Michael Sileo states in his August 15, 2014 response :
" I am writing in response to your letter of August 8 regarding the summonses issued to a van owned by Mr. Ralin. According to New York State law, a van of the sort owned by Mr. Ralin may be registered as a passenger vehicle if it has, among other things at least one seat or set of seat fittings installed behind the driver. As it is not always apparent to traffic enforcement agents standing outside a van that even though the seat is removed, the van was issued five summonses by members of the Queens North Traffic Enforcement unit for improper registration (that us, for having passenger plates on what seems to be a commercial vehicle.) In September of 2013, Mr. Ralin brought his van to this office, and i was able to confirm that Mr. Ralin's van did indeed have seat fittings and that even if the seat were removed, it would be proper for Mr. Ralin's van to be registered as a passenger vehicle.".
(Ex#14a,#14b,#22b).

57. Michael Sileo makes knowingly false statements in an August 15, 2014 letter in an attempt to blame the victim, justify his subordinates' perjury, protect the enterprise, obstruct an investigation and retaliate, demonize, and victimize the victim. First, plaintiff brought his vehicle to Queens Traffic North in September 2012 not September of 2013. At no time did Sileo or his subordinate Harjinder Singh enter plaintiff's vehicle to observe " seat fittings " which allow for the removal of the rear auto seat. Plaintiff's vehicle has only one rear auto seat permanently bolted to the floor. It cannot be removed unless 2 mechanics from inside and outside the vehicle remove 4 bolts and nuts. Michael Sileo's statements that plaintiff's vehicle has " seat fittings " and that plaintiff is responsible for removing the rear auto seat is a libelous, and defamatory lie. It is unknown exactly how many people other than Gina Bull and Leticia James that Sileo told knowingly false statements accusing the plaintiff of removing the seat and causing the issuance of the nopvs. - (Ex#14b,#22b,#14L)

58. It should also be noted Sileo states in his August 15, 2014 letter: ... " on March 1, 2014 an agent assigned to this command issued a summons to Mr. Ralin's van for " improper registration". When Mr. Ralin informed me of this mistake, the agent who made the error and issued the summons was immediately re-instructed, and was specially and personally directed that she was never to issue an Improper registration

summons to Mr. Ralin's van again.". The March 1, 2014 NOPV was the 4th summons issued by Defendant R. Simmons. The 3rd NOPV issued by R. Simmons was after Sileo stated he instructed Simmons and others not to ticket plaintiff's vehicle. Simmons issued 2 other perjurious nopvs in 2012 prompting the inspection of plaintiff's vehicle by Sileo and Singh. Simmons committed perjury and allegedly disobeyed a direct order but still is employed as a NYPD Traffic Agent. Sileo's characterization of the above listed NOPV's as mistakes and errors is a lie and contrary to his own alleged instructions and supervision of his subordinates. Sileo and Singh had refused plaintiff's requests for an official vehicle placard to stop the further issuance of said NOPV's. Plaintiff's requests that photos be taken of any violation on plaintiff's vehicle and to contact Sileo before issuing an improper registration nopv have also been refused. Michael Sileo at the least is negligent in his screening, hiring, training and disciplining of his subordinates. Said conduct by City of New York officials and their agents is proof of deliberate indifference, willful misconduct etc. Said conduct supports plaintiff's Monell Claims.

59. Mr. Sileo's 8.15.14 written response regarding " rear seats " nopv addresses New York State vehicle regulations §106.3.d. However, the nopvs were issued for a NYC DOT traffic rule violation for a parked commercial vehicle. As previously stated, NYC traffic rule §4-01(b) has 3 requirements for a parked (and non parked) vehicle to be defined as a commercial vehicle for an nopv. While it is required that a traffic agent have access to the vehicle and look under the rear seat to determine if the seat is bolted or connected to seat fittings, the other requirements do not require vehicle access to verify if a violation warranting the issuance of such an nopv exists. According to NYC DOT rules a vehicle cannot be deemed a commercial vehicle if it does not bear commercial plates. In addition, a vehicle cannot be deemed a commercial vehicle if it does not have a commercial plate and commercial writing on the side of the door. As such, Sileo's statements to the Public Advocate concerning NYS DMV regulations which is not " cited " on the nopv in his letter to the Public Advocate is an attempt to conceal/deceive §4-01(b) and obstruct an investigation.

60. Michael Sileo's above mentioned statements that plaintiff removes the "rear seat" is a libelous and defamatory fraud. Said statements accuses the plaintiff for being responsible for Michael Sileo's subordinates' issuance of improper registration nopvs. Said knowingly false statements has damaged plaintiff's reputation in the community. Sileo's statements has effected the Public Advocate perception of plaintiff's character as it is stated that she will not further advocate on behalf of the plaintiff based on Sileo's August 15, 2014 written response. Due to the fact that photos of the bolted installation of the rear seat were fowarded to Gina Bull and Leticia James of the Public Advocate it is probable that the irrefutable evidence (that there are no seat fittings) is being ignored based on Sileo's lies. It should be noted that Sileo received photos of the rear seat bolts prior to the August 15, 2014 letter proving that he had prior evidence that the rear seat does not have seat fittings (enabling the

seat's easy removal by button or latch). Mr. Sileo and his subordinates never gained access into plaintiff's vehicle, nor have they witnessed plaintiff remove the rear seat. Defendants have no basis to accuse plaintiff of removing the seat by way of a seat fittings device or otherwise. It is also possible that the reason the Public Advocate did nothing concerning Sileo's false statements is to protect the enterprise's ticket quota racket. In a prior October 25, 2013 letter from Sileo to plaintiff, Sileo contradicts his subsequent lie of " one rear auto seat " by fraudulently claiming plaintiff vehicle is properly equipped with " rear seats". - (Ex #14L) Discovery is needed to determine how many people were told said false and embarrassing statements, the extent of its damage, and why the public advocate did not advocate on behalf of plaintiff after evidence of Sileo's false statements were provided. Sileo's statements also support plaintiff's claims of deliberate indifference, malice, lack of supervision, willful misconduct, gross negligence, ticket quotas and racketeering etc.

61. Despite Sileo and Singh's vehicle inspection on September 24, 2012 where said parties determined after observing the permanently affixes rear auto seat that plaintiff's vehicle was a properly registered passenger vehicle, Singh in an effort to harass plaintiff requested to inspect plaintiff's vehicle again. On or about March 17, 2014 Singh stated on a recorded telephone conversation that plaintiff's vehicle needs to be inspected again to observe the rear seat falsely claiming it can or is being removed. Sing requests another vehicle inspection despite being provided pictures of the seat, pictures of the seat bolts, and dismissed decisions that indicated plaintiff's vehicle had a permanently installed rear seat. Most importantly, Singh knew or should have known that NYC DOT traffic rule §4-01(b) does not require an inspection of a passenger plated vehicle. Under §4-01(b) a passenger plated vehicle parked in NYC cannot be deemed a commercial vehicle based on the non presence of a rear seat if the vehicle does not bear a commercial plate. (Ex #3i,#11a,#11c,#14d,#14e)

62. On or about January 28, 2015 NYPD Traffic Investigator Jacqueline Guevara was asked to investigate complaints plaintiff made to NYPD Internal Affairs Bureau. Plaintiff complained to the City of New York, their agencies and agents approximately 50+ times that issued nopvs were perjurious, harassment and the result of a policy and practice of ticket quotas. A 15 year period of complaints to " IAB " resulted in only one complaint response to complaint # 14-08088 by referring said complaint to NYPD Traffic for investigation. Said referral was a conflict of interest. NYPD has refused to provide the final investigation report in violation of FOIL laws without any basis in fact or law. However, Investigator Jacqueline Guevara stated in an April 20, 2015 email that " On April 20, 2015 the Traffic Enforcement District Communication Unit completed the investigation of your complaint IAB # 14-08088 in that your vehicle received summonses for violation code 83 "Improper Registration " , and that members of NYPD Traffic were not properly instructed by their supervisors on the issuance of summonses of code 83 " Improper Registration " . The investigation revealed that there was sufficient

evidence to corroborate your claim therefore this investigation is closed as substantiated. ". City of Canton, Ohio v. Harris 489 U.S. 378 (1989). It should be noted that one subject of the investigative complaint is defendant R. Simmons who issued 2 perjurious nopvs before supervisors' Sileo and Singh inspected the vehicle in September 2012 and assured plaintiff that Simmons (and all other traffic agents) were advised to not issue anymore improper registration nopvs against plaintiff. However, Simmons issued 2 more perjurious improper registration nopvs subsequent to being ordered not to do so. No disciplinary action was taken against Simmons for her refusal to follow alleged instructions / orders and the further criminal acts of perjury and harassment. Said conduct by City officials and their agents is proof of deliberate indifference,willful misconduct, failure to screen, supervise, train, discipline and punish which is a basis for a monell claim - Monell v. Department of Soc. Svcs., 436 U.S. 658 (1978). Defendants' deliberate indifference also is evidence of a ticket quota policy and practice and racketeering. - . (Ex #22a-#22d)

63. Plaintiff's passenger vehicle's permanently bolted rear seat was inspected and observed by defendants and defendants' agents and deemed in compliance with NYS and NYC vehicle registration laws on April 14, 2000, January 27, 2001, February 27, 2001, March 1, 2001, September 11, 2002, October 22, 2002, March 29, 2004, September 24, 2014 by defendant Michael Sileo and Harjinder Singh, May 18, 2015 by Investigator Jacqueline Guevara and Lieutenant C. Katasabanis and by a Sgt. Charles 112th Pct. - date unknown, and a Lieutenant Cino 112th Pct. - date unknown. It should be emphasized that the only applicable commercial vehicle definition for a parked and locked vehicle is the City of New York is NYC DOT Traffic Rule §4-01(b) which defines a commercial vehicle by bearing a commercial plate. As such, all vehicle inspections were unnecessary because defendants knew plaintiff's vehicle bears passenger plates. Said vehicle inspections were unnecessary without probable cause and interfered with plaintiff's right to travel freely and use of his vehicle in the ordinary course of his DJ business. (Ex#22b,#28a-#28f,#23a-#23d).

64. NYS Courts have allowed the recipient of " numerous burdensome " citations on vehicles which were issued without any basis in fact or law, and who had proceedings terminated in their favor recover damages for harassment, malicious prosecution and abuse of process etc. under 42 U.S.C. § 1983 as in Manti v New York City Transit Authority et al 121 Misc. 2d 824 (N.Y. Misc. 1983) 165 A.D. 2d 373; 568 NYS 2d 16 (1st Dept 1991). Administrative proceedings conducted in this matter contained sufficient attributes of judicial proceedings to satisfy the requirements for instituting a malicious prosecution claim (Groat v Town Bd., 73 AD 2d 426, appeal dismissed 50 NY2d 928; Glenn v State of New York 144 Misc 2d. In addition to the issuance of " numerous and burdensome " citations Manti is identical in by " forcing plaintiffs to make numerous court appearances " and by " commencing frivolous litigation " (ie NYC DOF PVB court appearances based on

perjurious nopvs). Manti and Ralin are similar in most respects. Manti (is a corporation with lawyers that) had its ability to engage in business interfered with without probable cause based on illegal economic competition motives. Ralin is a pro se individual sole proprietor who had his personal life and business / interfered with due to defendants illegal crimes of perjury and a ticket quota / financial motive. In Manti the government interfered with Manti's use of his vans by baseless stops and court appearances to respond to baseless nopvs. In Ralin, the government interfered with Ralin's personal and business use of his vehicle for his DJ business with baseless vehicle inspections, perjurious nopvs and frivolous NYC DOF PVB court appearances that violated the Due Process Clause etc. Also, it should be noted that Manti was found guilty of 15 of the 82 total citations issued with 41 being dismissed. Ralin has received approximately 50 citations with all being dismissed. Manti's times period for the issuance of the citations was a six month period. Ralin has endured a 15 year period of time for citations being issued. While Manti had lawyers and numerous drivers available to respond and appear in court, plaintiff has to spend numerous and burdensome amounts of time responding to said harassment alone. Plaintiff can not engage in business or use his vehicle for business purposes when he is responding to city officials, preparing evidence and making court appearances etc. Said issuance of numerous and burdensome perjurious nopvs interfered and created extreme emotional distress while family members were ill and dying. Such precious time cannot be recovered or compensated with money. Defendants numerous and burdensome issuance of perjurious notice of parking violations, vehicle inspections and court appearances interfered with plaintiff's business use of his vehicle, business, and right to travel freely without government interference etc.

65. Also, as stated in " Manti " ... " Liability is predicated upon deprivations derived from a policy or custom of the municipality (supra). **A true pattern of harassment by government officials may make out a section 1983 claim for violation of due process of law, where the municipal defendant's actions are illegal,[\*\*\*8] or place a discriminitory burden on a constitutionally protected activity.** (Chalfy v Turkoff, 804 F2d 20; Batista v Rodriguez, 702 F2d 393; Espinola Way Corp. v Meyerson, 690 F2d 827, cert denied 460 U.S. 1039; see, Black Jack Distribs.v Beame, 433 F supp 1297). A complaint wil survive dismissal " unless it appears beyond [\*379] doubt that the plaintiff can can prove no set of facts in support of his [section 1983] claim which would entitle him to releif (Coney v Gibson, 355 U.S. 41, 45-46, cited in Batista v Rodriguez, supra, at 397).

66. " The allegation of a repeated pattern of harassment demonstrated a cognizable constitutional injury.". Manti v New York City Transit Authority et al 121 Misc. 2d 824 (N.Y. Misc. 1983) 165 A.D. 2d 373; 568 NYS 2d 16 (1st Dept 1991).

67. Defendants' and defendants' agents have responded with malicious intent to plaintiff's official complaints. Defendants' and defendants agents have targeted plaintiff's vehicle with up to 4 nopvs by one agent (R. Simmons). Defendants' and defendants's agents have threatened plaintiff and his process server with arrest (other previous threats of arrest). Defendants and defendants agents have defamed plaintiff accusing him of removing the rear seat and having seat fittings that do not exist. Defendants have encouraged the harassment of plaintiff by refusing to discipline or punish subordinates' willful misconduct. Defendants and their agents have ignored plaintiff's complaints / "grievances" (failing to take action on almost 50 internal affair complaints for 15 years). Defendants' continuous refusal to address plaintiff's requests for redress of grievances and retaliation in response his complaints violated his constitutional rights under the 1st amendment.

68. Defendants' and defendants' agents aforementioned conduct, actions, and inactions spanning 15 years which violated plaintiff's due process rights, rights under the 5th 14th, 4th and 1st amendments to the constitution, and other federal and State claims etc, taken in its entirety is " extreme and outrageous " and does " shock the conscience".

69. Defendants, have with "deliberate indifference" refused / failed to screen, train, supervise, control , discipline, and fire Police Officers, Traffic Enforcement Agents and Parking Control Specialists, including the defendants in this case, for the continuous perjurious issuance of nopvs. Said above mentioned conduct, actions, and inactions by defendants' caused individual defendants' and their agents to continue to engage in violations of: plaintiff's constitutional rights, Due Process Clause, illegal acts, perjury, extortion, ticket quotas and racketeering. Defendants' and defendants' agents' deliberate indifference in their failure to screen train supervise and discipline their subordinates allows plaintiff to proceed with Monell Claims.

70. Defendants acting under the color of law violated and deprived the plaintiff of his rights, privileges and immunities under the laws of the Constitution of the United States, under the 5th amendment, 14th amendment, 4th amendment,1st amendment and is an abuse of process, harassment, negligence, violates plaintiff's property rights, right to liberty and pursuit of happiness, right to travel, Due Process Clause etc. - 42 U.S.C. § 1983, 18 U.S.C. § 245, 18 U.S.C. § 242, 18 U.S.C. §241.

71. Defendants' above mentioned actions have deprived plaintiff's of rights secured by the United States Constitution, in violation of 42 U.S.C. § 1983, 18 U.S.C. § 1961-68 for violations under "RICO "- Racketeering, and 18 U.S.C. § 1951 for violations under the Hobbs Act etc.

72. On June 22, 2015 plaintiff filed a NYPD Freedom of Information Act Request for evidence and documents related to ticket quotas, nopvs issued against plaintiff, complaints made by plaintiff against NYPD agents for the perjurious issuance of nopvs against plaintiff, NYPD Internal affair complaints and investigation reports related to complaints made by plaintiff concerning improper registration complaints. On July 2, 2015 NYPD under Color of Law and without any basis of fact or law denied plaintiff's legitimate lawful FOIL requests. On July 8, 2015 Plaintiff filed an appeal for NYPD's denial to produce lawfully requested documents. On. September 4, 2015 Jonathan David denied plaintiff's FOIL appeal (different reason than original foil request denial) stating " the appeal is denied because disclosure of the requested records to just one party would interfere with the ordinary course of court-supervised discovery and deprive other parties of their right to a fair trial or impartial adjudication in pending civil litigation,...". Plaintiff has no objection to his foil requested documents being provided to all defendants. The only one prejudiced and deprived rights to a fair and impartial trial is plaintiff by destruction of ticket quota evidence and refusal by NYPD to provide said FOIL requested investigation findings report by Jacqueline Guevara which is needed to support plaintiff's monell claims. NYPD's refusal to provide plaintiff said ticket quota evidence obstructs justice and prevents plaintiff from prosecuting and litigating this ticket quota lawsuit. A full discovery of ticket quota evidence, improper registration complaints and complaint investigation reports must be held so plaintiff can accurately set forth cause of actions related to ticket quotas, racketeering and plaintiff's deliberate indifference to train, supervise and discipline ticket agents and in support of Monell Claims.

73. Plaintiff hereby requests that evidence in support of his cause of actions, monell claims, and relief requested and as a request for discovery all other ticket quota lawsuit evidence against defendants including but not limited to evidence submitted in a class action lawsuit " case 1:10cv-04228 rws " and " 1:2010cv6005 " be deemed as submitted into evidence / part of plaintiff's complaint pleadings. - - (Ex #32a-#32e). - (Ex #1a - #1h,#2a - #2e etc).

74. Plaintiff is providing 240 exhibits on a DVD with this 3rd amended complaint in support of all causes of action and relief requested. There are many news reports and youtube videos proving the existence of the policy and practice of illegal ticket quotas by NYPD police officers and traffic agents. The City of New York, their agencies and agents have engaged in a racketeering enterprise coercing the commission of perjury to extort revenue from innocent non violating citizens and businesses. Said summonses and actions which are evidence of the illegal ticket quota enterprise include but are not limited to parking tickets, seat belt tickets, window tints, stop and frisk, speeding, cell phone use, towing, quality of life etc. Some of the evidence of the illegal ticket quota policy practice and enterprise provided is set forth below.

75. On July 6, 2015 New York Daily News reported online that NYPD and their attorneys were destroying ticket quota evidence - [source - http://nydn.us/1dGw7iE , http://www.nydailynews.com/new-york/exclusive-nypd-accused-destroying-summons-info-article-1.2282345 , http://www.rawstory.com/2015/07/nypd-and-nyc-city-attorneys-accused-of-destroying-proof-that-cops-are-writing-bogus-tickets-to-hit-quotas/]. Said destruction of ticket quota evidence is an obstruction of justice. The destruction of ticket quota evidence would prevent plaintiff from litigating his case and result in a denial of due process. Said conduct would cause prejudice and be grounds for a summary judgement. Plaintiff has been prejudiced by the court's failure to safeguard and prevent, plaintiff's ticket quota evidence which has reportedly being destroyed by NYPD . (Ex #1b).

76. New York Post article dated 6/20/2005 - " Cop Tix Quota Bared " reported a NYPD "memo " requiring " 33 speeding and 35 parking tickets each quarter to keep a good rating ". The article reported by TheNewpaper.com further reports: " the evidence presented under oath in this arbitration proves once again what police officers have long lived with: There are established quotas and if you don't meet them you will be punished, said Patrolman Benevolent Association President Patrick Lynch.". - [ source - http://www.thenewspaper.com/news/04/474.asp]. (Ex # 73)

77. Thenewpaper.com further reports  on 1/21/06 " After a New York City arbitrator confirmed the existence of a ticket quota for the New York Police Department (NYPD) in a ruling Thursday, the city's mayor hit the airwaves yesterday to counter the claim that NYPD officers must issue a fixed number of parking tickets and moving violation citations. The Office of Collective Bargaining was persuaded by the evidence that showed officers in Brooklyn's 75th Precinct were required to issue four parking tickets, three moving violation citations, three "quality-of-life" summonses, make one arrest and two stop-and-frisks each month. Arbitrator Bonnie Siber Weinstock ruled that the NYPD maintained an illegal "summons quota for traffic violations in the precinct and by penalizing officers for failing to meet the stated number of traffic citations." She ordered the city to cease and desist from the practice.". - [ source - http://www.thenewspaper.com/news/09/914.asp ]. (Ex #34).

78. On November 16, 2013 The Daily News reported " Traffic- enforcement agents sue NYPD, City over towing quotas". The article further states: " A police source estimated that more than 750 cars are towed in the city every day. Towing operations are projected to bring in $22.6 million each year, according to budget documents."..."Four agents and their union hit the city and the NYPD — which oversees the workers — with a lawsuit Thursday for issuing blistering punishments if they didn't haul away three or four vehicles per shift. They claim their bosses would deny them overtime, shifts and meal breaks, and threaten poor evaluations and termination, according to papers filed in Manhattan Supreme Court.". - [ source

http://www.nydailynews.com/new-york/nypd-traffic-enforcement-agents-sue-high-tow-quotas-article-1.1519014 ]. (Ex #49).

79. Its been reported that the threats and coercion to meet ticket quotas are so severe that ticket agents have ticketed dead people [source - https://www.cardealexpert.com/fyi/nypd-ticket-quota/ ]. The article states: "An officer of the New York Police Department has been fired for writing tickets and summons to dead people, which he claims was due to a ticket quota that had been enacted.". " A 17-year veteran of the New York Police Department has been fired and sentenced to 150 hours of community service, according to the New York Post, for allegedly issuing traffic tickets and court summons to motorists who were dead.". ..... " Former officer Paul Pizzuto was found out in July of last year to be issuing summons, though never appearing in court to testify. It was noticed that he was writing an increased number of summons, based on information from previous summons he'd written, but that they were written in such a way that no one would have to pay any fines. Some of the summons were for people who were deceased."...." It's also said, according to reports in the Village Voice and ABC7, a New York ABC affiliate, that officers are being pressured by Internal Affairs to write tickets that stick. It is alleged officers are docked three days vacation pay, worth $900, if a traffic ticket is tossed in court. They are also being pressured to write more tickets.". The article further reports: " Previous allegations of an NYPD ticket quota have been made. In Sept. 2010, the New York Times received an audio tape, taken in April of that year at the 81st Precint, wherein Captain Alex Perez admonishes commanders that each "shift" had to write at least 20 summons per week and went on to say how many of what offense. He also warned that officers that didn't meet quotas would be switched to graveyard shifts and if necessary, "I don't have a problem firing people.". " Pizzuto is suing the city for wrongful termination, claiming that his superiors had raised a ticket quota and the 125 to 150 summons he normally issued in a month weren't sufficient, which led to the ticket scam. His superiors assert that he had issued the increased summons to work overtime, in order to quell financial problems. Pizzuto also claims he was entitled to a hearing before being fired, though his superiors assert his was an "oath of office" violation and thus wasn't eligible for one.". - [ source - https://www.cardealexpert.com/fyi/nypd-ticket-quota/ ] (Ex #38).

80. On May 12, 2012 the Nycresistance reported on youtube showcasing ABC news reports and daily news reports of illegal NYPD ticket quotas against NYC motorists to issue a specific number of tickets within a month and a week. The NYC Police benevolent association claims financial retaliation against city agents if they fail to meet supervisors' ticket quotas - [ source - https://www.youtube.com/watch?v=FM75fC4SL8A ]. (Ex #37).

81. The Daily News and other news online publications have reported on July 8, 2015 that NYPD and their Attorneys have destroyed ticket quota evidence. The report

states: " Police Lt. Stevelle Brown, who is alleged to have implemented a quota in Queens' 105th Precinct, has destroyed text messages in which he denied a cop time off for failing to meet goals for traffic summonses, Sutton charges.She also points to an exchange from an officer identified only as Sgt. Carty, who sternly admonished a cop for failing to issue enough seatbelt summonses."We missed seat belt number by 30 last week unacceptable. if need be u guys will go with me 2 traffic stat 2 explain why u missed," the text reads. Lastly, Sutton has introduced emails from Capt. Andrew Benjamin, who laments the lack of arrests among his top overtime earners in the Bronx Task Force division."This has to stop it is ridiculous to have 50 + hours with only one arrest," Benjamin wrote." . " Sutton said lawyers obtained the three exchanges through whistleblowers or by other means. The city has been unable to obtain its own copies of the messages. That's proof, Sutton writes, that the communications have been improperly destroyed.". " "The (evidence) production confirms what plaintiffs feared but defendants have repeatedly denied: Defendants have destroyed evidence that is unquestionably relevant to this matter."To make matters worse, the NYPD has an on-the-books policy of shredding reams of documents potentially relevant to the case, Sutton's 15-page letter charges." . " "Defendants have shredded, and are continuing to shred, hard-copy documents" from CompStat meetings where crime statistics are analyzed by NYPD brass, court documents claim, citing testimony from a lieutenant who managed the CompStat unit of the Office of the Chief of Department. Monthly activity reports in which supervisors provide written feedback on individual officers' "enforcement activity" are also being destroyed, Sutton alleges as if that's not enough, city lawyers didn't advise the NYPD to preserve communications related to summonses until 2013 — three years after the suit was filed, Sutton says."Our justice system depends on the exchange of relevant evidence," Sutton told the Daily News in a statement.A spokeswoman for the city Law Department declined to comment. " . Ticket quota photo and email evidence is also included in the online Daily News Story - [ source - http://www.nydailynews.com/new-york/exclusive-nypd-accused-destroying-summons-info-article-1.2282345] . Plaintiff hereby requests that all evidence in the ticket quota lawsuit mentioned in this NY Daily News article be submitted into evidence and part of the record in plaintiff's lawsuit in support of plaintiff's causes of action including but not limited to ticket quotas, injunctions and racketeering etc. (Ex #36, #1b - #1f,#1g)

82. On May 15, 2003 The Patrolmen's Benevolent Association of The City of New York Incorporated issued a press release titled " EVIDENCE OF TICKET QUOTAS AND " DONT BLAME THE COP " CAMPAIGN. PBA President Pat Lynch states: " ... we are sharing hard evidence that our police officers are being pressured to write high-priced summonses at the risk of reassignment or other punitive action"... " This type of evidence is very difficult to acquire because most supervisors will not put it in writing, but instead threaten officers verbally.". The press release further states on page 2 : " a hand written note from a lieutenant in the 50th Precinct to a sergeant

clearly shows that failure to write adequate numbers of summonses will result in a change of hours or assignment. The note states: I'm recommending to the C.O. that (officer's name) be reassigned off late tours. I'm dissatisfied with his enforcement activity again.". Regarding a different police officer, the note says: " He only wrote 16 summonses for the entire month and if they were written on O.T. his job on the 1st platoon is also in trouble.". Two internal NYPD reports - one from a borough commander the other from a precinct commander - demonstarate the dissatisfaction with officers writing tickets for broken equipment such as broken stoplights or head light because they do not generate revenue if the violator proves that he or she had the problem repaired." . " One report states that a chief ... maintains that equipment violations (defective lights, taillights) are not "good" summonses and must be reduced to less than 10% of all total movers.". "The other report explains that supervisors will have to explain the issuance of broken equipment summonses.". The above referenced " Dont Blame the Cop" press release is evidence of a long term pattern of a policy and practice by supervisors and government officials. The policy and practice of ticket quotas is illegal, is extortion, and evidence of a racketeering enterprise. (Ex #40a,#40b,#40c,#33,#43).

83. Plaintiff is also in possession of true copies of 2 NYPD memos from The Patrolman's Benevolent Association which state : "Chief Scagnelli further stated: " In the future, If an Executive Officer or Commanding Officer stands at the podium and has an unacceptable equipment violation ratio, I am going to assume that either (a) the CO or Xo has ignored my direction (b) CO or XO has not gotten the word out to the troops on equipment violations (c) CO or XO has a management problem in that he cannot communicate to his troops an order (d) there is a morale problem in the respective command. " I pity the CO or XO who claims he has a morale problem."

84. It was recently reported that the City of New York paid plaintiff's witness Adrian Schoolcraft $600,000.00 to settle his ticket quota related lawsuit - [ source :http:// countercurrentnews.com/2015/10/he-exposed-nypd-corruption-so-the-police-had-him-locked-in-a-mental-institution/# ]. Mr. Schoolcraft who was involuntarily commited to a mental institution by defendants for whistleblowing about ticket quotas was bribed to silence information about Defendants' ticket quota enterprise. Mr. Schoolcraft states in his Federal Complaint " 1:2010cv6005 " before Judge Robert Sweet ( Schoolcraft v City of ¶84 states that an Arbitrator ruled that the City of New York and NYPD (C.O. Michael Marino ) " ..." violated New York State Labor Law § 215-a by establishing and maintaining a summons quota....". Plaintiff hereby restates Adrian Schoolcraft's Federal Complaint in its entirety as evidence and as witnesses of illegal ticket quota policy and practice / racketeering enterprise. (Ex #2b,#2a-84).

85. There is further evidence that illegal ticket quota policy and practice comes from the City of New York's highest office. Despite Mayor Bloomberg's " performance goals " semantic propaganda, the Mayor wrote a letter to then Governor Pataki in which he

states: " Bloomberg wrote: "For an employee whose function it is to issue parking tickets, a measurement clearly relevant to job performance is the number of summonses issued over the course of a reasonable period of time." - [source -http://gothamist.com/2010/09/30bloomberg_quotas_for_tickets_are_ne.php]. (Ex #33).

86. Further evidence of ticket quotas is found in NYPD police officer Adrian Schoolcraft's 2nd amended Complaint - case #10CV6005 - dated August 10, 2010 (#2a). Plaintiff intends to subpoena Schoolcraft and all his ticket quota evidence at trial. As previously stated ticket quotas and the illegal revenue they generate for defendants is one cause of the 15 year issuance of perjurious nopv's all of which were dismissed against plaintiff. Mr. Schoolcraft states in his complaint "... In October 2006, directly coinciding with defendant Deputy Inspector Steven Mauriello's assignment to the 81st precinct, plaintiff and his fellow police officers started to receive explicit threats of tour transfers, undesirable assignments, poor performance evaluations and other adverse consequences for failure to meet their monthly arrest and summons quotas." (#2a-40). "These admonishments to adhere to monthly quotas were repeatedly emphasized by the defendant officers at the daily roll calls in the 81st precinct throughout plaintiff's employment."(#2a-41). "for example, on December 8, 2008, Defendant Mauriello berated his officers for not writing enough summonses per month: " I SEE EIGHT FUCKING SUMMONSES FOR A 20 DAY PERIOD OR A MONTH. IF YOU MESS UP, HOW THE HELL DO YOU WANT ME TO DO THE RIGHT THING BY YOU?"...(#2a-42). " Defendants' illegal quota policy was enforced not just by Mauriello, but by other high-ranking members of the 81st Precinct. For example, on January 28, 2009, Sergeant Raymond Stukes stated: I TOLD YOU GUYS LAST MONTH: THEY ARE LOOKING AT THESE NUMBERS, AND PEOPLE ARE GOING TO GET MOVED... THEY CAN MAKE YOUR JOB REAL UNCOMFORTABLE, AND WE ALL KNOW WHAT THAT MEANS.". (Ex #2a-44).

87. "Additionally, On October 18, 2009 another Sergeant made it explicitly clear to the subordinate officers that " AGAIN, ITS ALL ABOUT THE THE NUMBERS"... Officers Were Being Instructed to Make Arrests and Issue Summonses Without Probable Cause (#2a-46)... In fact defendants were so obsessed with making their " numbers" that they literally instructed officers to make arrests when there was no evidence of any criminal activity whatsoever." (#2a-47). "Thus, Police officers on the 81st precinct were being instructed to arrest and summons fully innocent people for crimes that never occurred for nothing more than standing on a street corner in their neighborhoods and then " articulate" or create a charge later."(#2a-50).

88. " NYPD Policy Making Officials Were the Driving Force behind This Quota and Policy - Defendants myopic obsession with quotas came straight from the highest ranking officials in the New York City Police Department. (#2a-51). "For Example, Chief of Transportation MICHAEL SCAGNELLI, a three star Chief, was quoted as

saying: HOW MANY SUPERSTARS AND HOW MANY LOSERS DO WE HAVE,
HOW MANY SUMMONSES DOES THE SQUAD WRITE. WE NEED MORE
ACTIVITY, IF YOUR PRODUCTIVITY FALLS BELOW PAR EITHER YOU OR
THE C.O. IS GOING TO HAVE TO ANSWER." (#2a-52). "Another high ranking
official at the 81st Precinct Lieutenant Delafuente, actually gave me specific numbers
that must be met by each officer. " [CAPTAIN STARSKY] WANTS AT LEAST 3
SEATBELT (SUMMONSES), 1 CELL PHONE (SUMMONS) AND 11 OTHER
SUMMONSES)." (#2a-53).

89. " The NYPD's Quota Policy: Struck Down as Illegal in January 2006...
In fact the NYPD has previously been found to be in violation of New York State
Labor Law § 215-a (#2d,#2a-84,#2a-77), which makes it illegal to issue poor
evaluations for an officer's failure to meet the requirement of for an established
summons quota. See in the Matter of P.B.A. and City of New York Case #
A-10699-04." (#2a-77)...." In the matter, P.O. Velez presented evidence that the then
Commanding Officer of the 75th precinct, CHIEF MICHAEL MARINO, a named
defendant in the instant matter, issued a directive that officers must meet " a quota of
10 (ten) summons per month" and " that the police officers in squad A-1 received
lower marks on their evaluations if the officers did not meet the minimum
requirement.". Id at 9" .(2a-79). Additionally CHIEF MICHAEL MARINO reduced
this directive to writing and distributed it to all of the supervisors in the 75th
Precinct. (Id)." (#2a-80). " As a result of CHIEF MARINO's directive, Sgt. Lurch
issued a memo to all officers in the 75th precinct " remind(ing) [officers] that a
FAILURE TO WRITE THE REQUIRED AMOUNT OF SUMMONSES AND
FAILURE TO MAKE THE REQUIRED NUMBER OF ARREST FOR EACH
RATING PERIOD WILL RESULT IN SUBSTANDARD PERFORMANCE
RATINGS." (Id at 10)." (#2a-82). " The aforementioned memo was entitled " Squad
Activity Expectations," and the word " activity in that memo was specifically
referring to the requisite number of summonses needed to meet the quota, which is
unequivocal evidence of the fact that P.O. SCHOOLCRAFT's own low evaluation in
the present matter based on his " poor activity" directly correlates to a failure to meet
an illegal summons/arrest quota." (#2a-83).

90. " While defendants denied the existence of any quota, the arbitrator emphatically
rejected defendants' claims: The arbitrator finds that C.O. Marino's writing and
Sergeant Lurch's memo could not have been clearer: " failure to write the required
amount of summonses .....will result in substandard performance ratings ..." Further,
the asterisk in the goal column makes it clear that [these] "goals" are monthly
quarterly and yearly. The Arbitrator was completely persuaded that the " goals"
column on the memo meets the definition in Labor Law Section 215-a for " quota" ...
[Thus], the New York PoliceDepartment violated New York State Labor Law 215-a
by establishing and maintaining a summons quota ... (Id at 11,27) (emphasis
added)."(#2a-84). "Notwithstanding this finding, the chief perpetrator of this

unlawful policy, MICHAEL MARINO, was subsequently promoted by the NYPD and is now the Deputy Chief of Patrol Borough Brooklyn North, in charge of supervising the entire Borough, which is is also where the 81st precinct is located.". (#2a-85).

91. P.O. Adhyl Polanco is another NYPD police officer who in addition to Adrian Schoolcraft tape recorded evidence of illegal ticket quotas and is a plaintiff in a class action lawsuit case # 10CV4228 dated August 31, 2010. In the complaint proof of the existence of the NYPD's Unlawful Quota Policy -" Proof of the existence of NYPD's illegal quota policy comes not from a single source, but rather from multiple varying sources. Specifically, the existence of such a policy may be inferred from, inter alia, the following evidence: (1) tape recordings of commanding officer's at the 41st Precinct; (2) tape recordings of the commanding officers at the 81st Precinct; (3) arbitrator's ruling dated January 14, 2006, which expressly found that the NYPD had an illegal quota policy which violated law § 215-a; (4) statistical evidence from the New York State Office of Court Administration (:" OCA") demonstrating that an overwhelming percentage of summonses filed on Court by the NYPD - over 50% - are ultimately dismissed..." (#1a-5). " P.O. Schoolcraft and P.O. Polanco have provided evidence of their own experiences, as well as tape-recordings of supervising officers from 81st and 41st Precincts continuously instructing and pressuring officers to meet quotas in order to meet quotas in order to secure their jobs and avoid punishment." (#1a-8). Evidence of The NYPD's Quota Policy from Tape Recordings at The 41st Precinct " The tape recordings made by P.O. Polanco explicitly refer to the NYPD's quota requirements. For example, in one such recording, a superior officer states as follows: " I SPOKE TO THE [COMMANDING OFFICER] FOR ABOUT AN HOUR AND HALF. THE ACTIVITY [IS] 20 AND 1 ... THE WANT 20 [SUMMONSES] AND 1[ARREST]. HOW? I DONT KNOW... ALRIGHT, SO IT'S 20 AND 1" (#1a-10). Similarly, another officer at the 41st Precinct was recorded as stating as follows: NEXT WEEK YOU COULD BE AT 25 (SUMMONSES) AND 1 (ARREST) AND GUESS WHAT? UNTIL YOU DECIDE TO QUIT THIS JOB AND BECOME A PIZZA HUT DELIVERY MAN, THIS IS WHAT YOU'RE GOING TO BE DOING UNTIL THEN."(#1a-11). Further, another supervisor was heard threatening: "THINGS ARE NOT GOING TO GET ANY BETTER, ITS GOING TO GET ALOT WORSE. IF YOU THINK 1 (ARREST) AND 20 (SUMMONSES) IS BREAKING YOUR BALLS, GUESS WHAT? YOU ARE GOING TO BE DOING? YOU'RE GOING TO BE DOING A LOT MORE. A LOT MORE THAN WHAT YOU THINK." (#1a-12). In fact, officers at the 41st Precinct were explicitly told that these quotas are "NON-NEGOTIABLE," and it is not sufficient excuse that an officer simply did not observe sufficient summons able and or criminal activity to fulfill said quota." (#1a-13). Specifically, DONALD MCHUGH, the Commanding Officer of the 41st Precinct, stated about the quotas: ITS REALLY NON-NEGOTIABLE, 'CAUSE IF YOU DONT DO IT NOW, IM GONNA HAVE YOU WORK WITHTHE BOSS

TO MAKE SURE IT HAPPENS." (1a-14).

92. Further evidence if illegal ticket quotas is found in the details of a lawsuit filed by 4 traffic enforcement agents over quotas - NY Daily News - November 16, 2013 (#49). On November 16, 2013 The Daily News reported " Traffic- enforcement agents sue NYPD, City over towing quotas". The article further states: " A police source estimated that more than 750 cars are towed in the city every day. Towing operations are projected to bring in $22.6 million each year, according to budget documents."..."Four agents and their union hit the city and the NYPD — which oversees the workers — with a lawsuit Thursday for issuing blistering punishments if they didn't haul away three or four vehicles per shift. They claim their bosses would deny them overtime, shifts and meal breaks, and threaten poor evaluations and termination, according to papers filed in Manhattan Supreme Court.". - [ source http://www.nydailynews.com/new-york/nypd- traffic-enforcement-agents-sue-high-tow-quotas-article-1.1519014 ]. Said 4 traffic enforcement agents will be witnesses at trial in support of ticket quotas, collateral objective and RICCO violations.

93. On July 6, 2015 The New York Daily News (#2) further reported evidence of illegal ticket quotas and the destruction of ticket quota evidence by defendants (#1b-#1g). The Daily News and other news online publications have reported on July 6, 2015 that NYPD and their attorneys have destroyed ticket quota evidence. The report states: " Police Lt. Stevelle Brown, who is alleged to have implemented a quota in Queens' 105th Precinct, has destroyed text messages in which he denied a cop time off for failing to meet goals for traffic summonses, Sutton charges.She also points to an exchange from an officer identified only as Sgt. Carty, who sternly admonished a cop for failing to issue enough seatbelt summonses."We missed seat belt number by 30 last week unacceptable. if need be u guys will go with me 2 traffic stat 2 explain why u missed," the text reads. Lastly, Sutton has introduced emails from Capt. Andrew Benjamin, who laments the lack of arrests among his top overtime earners in the Bronx Task Force division."This has to stop it is ridiculous to have 50 + hours with only one arrest," Benjamin wrote." . " Sutton said lawyers obtained the three exchanges through whistleblowers or by other means. The city has been unable to obtain its own copies of the messages. That's proof, Sutton writes, that the communications have been improperly destroyed.". " "The (evidence) production confirms what plaintiffs feared but defendants have repeatedly denied: Defendants have destroyed evidence that is unquestionably relevant to this matter."To make matters worse, the NYPD has an on-the-books policy of shredding reams of documents potentially relevant to the case, Sutton's 15-page letter charges." . " " Defendants have shredded, and are continuing to shred, hard-copy documents" from CompStat meetings where crime statistics are analyzed by NYPD brass, court documents claim, citing testimony from a lieutenant who managed the CompStat unit of the Office of the Chief of Department. Monthly activity reports in which supervisors provide written feedback on individual 20 officers' "enforcement

activity" are also being destroyed, Sutton alleges as if that's not enough, city lawyers didn't advise the NYPD to preserve communications related to summonses until 2013 three years after the suit was filed, Sutton says."Our justice system depends on the exchange of relevant evidence," Sutton told the Daily News in a statement.A spokeswoman for the city Law Department declined to comment. " . Ticket quota photo and email evidence is also included in the online Daily News Story - [source - http://www.nydailynews.com/new-york/exclusive-nypd-accused-destroying-summons-info-article-1.2282345] .

Sgt. Carty text message (#1d) ticket quota evidence which defendants refused to produce stated: " We missed seat belt number by 30 last week unacceptable. if need be u guys will go with me 2 traffic stat 2 explain why u missed it". A Sgt Monroe text message states: " 14 days on patrol..109 radio runs.. U need to do more 250..ok.. (#1c). Captain Benjamin states: "This has to stop it is ridiculous to have 50 + hours with only one arrest," email dated 8/5/2012 (#1e).

94. Its been reported that the threats and coercion to meet ticket quotas are so severe that ticket agents have ticketed dead people! (#38) [source - https://www.cardealexpert.com/fyi/ nypd-ticket-quota/ ]. The article states: "An officer of the New York Police Department has been fired for writing tickets and summons to dead people, which he claims was du to a ticket quota that had been enacted.". " A 17-year veteran of the New York Police Department has been fired and sentenced to 150 hours of community service, according to the New York Post, for allegedly issuing traffic tickets and court summons to motorists who were dead.". ..... " Former officer Paul Pizzuto was found out in July of last year to be issuing summons, though never appearing in court to testify. It was noticed that he was writing an increased number of summons, based on information from previous summons he'd written, but that they were written in such a way that no one would have to pay any fines. Some of the summons were for people who were deceased."...." It's also said, according to reports in the Village Voice and ABC7, a New York ABC affiliate, that officers are being pressured by Internal Affairs to write tickets that stick. It is alleged officers are docked three days vacation pay, worth $900, if a traffic ticket is tossed in court. They are also being pressured to write more tickets.". The article further reports: " Previous allegations of an NYPD ticket quota have been made. In Sept. 2010, the New York Times received an audio tape, taken in April of that year at the 81st Precinct, wherein Captain Alex Perez admonishes commanders that each "shift" had to write at least 20 summons per week and went on to say how many of what offense. He also warned that officers that didn't meet quotas would be switched to graveyard shifts and if necessary, "I don't have a problem firing people.". " Pizzuto is suing the city for wrongful termination, claiming that his superiors had raised a ticket quota and the 125 to 150 summons he normally issued in a month weren't sufficient, which led to the ticket scam. His superiors assert that he had issued the increased summons to work overtime, in order to quell financial problems. Pizzuto also claims he was entitled to a hearing before being fired, though his superiors assert his was an

40

"oath of office" violation and thus wasn't eligible for one.". - [ source - https://www.cardealexpert.com/fyi/nypd-ticket-quota/ ] .

95. The New York City Police Benevolent Association has reported evidence of illegal ticket quota policy and practice by the New York City Police Department (#40a,#40b,#40c) On May 15, 2003 The Patrolmen's Benevolent Association of The City of New York Incorporated issued a press release titled " EVIDENCE OF TICKET QUOTAS AND " DONT BLAME THE COP " CAMPAIGN. PBA President Pat Lynch states: " ... we are sharing hard evidence that our police officers are being pressured to write high-priced summonses at the risk of reassignment or other punitive action"... " This type of evidence is very difficult to acquire because most supervisors will not put it in writing, but instead threaten officers verbally.". The press release further states on page 2: " a hand written note from a lieutenant in the 50th Precinct to a sergeant clearly shows that failure to write adequate numbers of summonses will result in a change of hours or assignment. The note states: I'm recommending to the C.O. that (officer's name) be reassigned off late tours. I'm dissatisfied with his enforcement activity again.". Regarding a different police officer, the note says: " He only wrote 16 summonses for the entire month and if they were written on O.T. his job on the 1st platoon is also in trouble.". Two internal NYPD reports - one from a borough commander the other from a precinct commander - demonstrate the dissatisfaction with officers writing tickets for broken equipment such as broken stoplights or head light because they do not generate revenue if the violator proves that he or she had the problem repaired." . " One report states that a chief ... maintains that equipment violations (defective lights, taillights) are not "good" summonses and must be reduced to less than 10% of all total movers.". "The other report explains that supervisors will have to explain the issuance of broken equipment summonses.". In January 2006, based on sworn testimony outlined in the PBA - DON'T BLAME THE COP - press release, NYC arbitrator Bonnie Siber Weinstock ruled that the NYPD maintained an illegal "summons quota for traffic violations in the precinct and by penalizing officers for failing to meet the stated number of traffic citations." She ordered the city to cease and desist from the practice. The above referenced " Don't Blame the Cop" press release is evidence of a long term pattern of a policy and practice of illegal ticket quotas by supervisors and government officials. The policy and practice of ticket quotas is illegal, is extortion, and evidence of a racketeering enterprise. (Ex#40a-#40c)

96. On or about July 30, 2014 Chief ALJ Judge Mary Gotsopoulis had armed guards threaten plaintiff with violence and arrest for complaining about a clerk at 66 John Street and for not responding to plaintiff's grievance letters concerning the continuous issuance of perjurious improper registration NOPV's. Said conduct was done under color of law and in violation of Plaintiff's 1st Amendment right to petition government for redress of grievances. Plaintiff's 1st amendment right to make a complaint to government without fear of punishment or reprisals was

violated. As stated throughout the complaint, plaintiff has been retaliated against by defendants and their agents for his continuous complaints over 15 years. Said retaliation has consisted of defendants' actions, inactions, continued issuance of perjurious nopvs threatening vehicles confiscation, defamation, slander, libel, and threats etc.

97. Plaintiff's due process rights were also violated when defendants' did not allow plaintiff an impartial judicial process. As previous stated Judges' who have a financial interest in the collection of fines for the NYC Department of Finance ignored evidence and the NYC DOT commercial vehicle definition. Said unnecessary appeals reversed prior corrupt decisions in favor of plaintiff. Defendants' denied plaintiff due process when an in personal appeal request was ignored, a decision was rendered against Plaintiff, and after complaints and an in person appearance was conducted another decision was rendered in favor of Plaintiff (while the previous decision was made to illegally and mysteriously disappear). Plaintiff's due process rights were further violated due to defendants' denying Plaintiff the ability to confront and cross-examine the issuers of the perjurious nopvs. The continuous 15 year issuance of knowingly perjurious nopvs under threat of vehicle seizure, unnecessary vehicle inspections, court appearances violated plaintiff's constitutional, property rights and the Due Process Clause.

98. Defendants' malevolent retaliation and denial of due process also occured on May 21, 2015 when an NYPD (Sileo subordinate) Lieutenant Egan threatened plaintiff and his process server with arrest. Egan refused to accept legal service of a summons and complaint under color of law and when asked to identify himself threatened Plaintiff and his process server with arrest. NYPD attorney Laura Holt stated on the phone that someone at Queens Traffic North stated that the reason NYPD did not accept process service is because the process server did not identify the defendants and refused to show identification. NYPD's statements are proved false by a tape recorded conversation where Egan states he will only accept subpoenas and will not accept a summons and complaint. After being forced to obtain a 2nd process server, Supervisor Holman and a desk officer made fraudulent, slanderous and defamatory statements against plaintiff to the 2nd process server - Gerard Amyzial. Holman and her assistant fraudulently stated that the reason why they refused to accept process service on May 21, 2015 was because "they didnt tell us what it was for ", and " did not want to provide their information" . In retaliation, Holman and the desk officer further stated to the 2nd process server on May 26, 2015 that plaintiff and his (1st) process server was " rude ", " not nice ". Plaintiff is in possession of Amyzial's tape recording of the false, retaliatory, slanderous and defamatory statements made by Michael Sileo's subordinates which embarrassed plaintiff. - (Ex #30a,#30b,#30c).

99. Defendants' issuance of perjurious nopvs is not limited to improper registration - commercial vehicle summonses. On June 29, 2015 plaintiff was issued another

perjurious nopv #7677584718 for a mutilated inspection sticker. Said inspection sticker was not mutilated and as evidenced by photos and was clearly legible. Said NOPV for mutilated inspection sticker was dismissed by ALJ Andrea Gelb on July 2, 2015. Said perjurious nopv is a result of the City of New York and their agencies and agents policy and practice of ticket quotas. Plaintiff also had a bogus parking ticket dismissed in June 2015 because defendants' could not provide evidence that a sign existed. Said conduct at the very least is a result of defendants' negligence deliberate indifference , failure to train, supervise and discipline their subordinate traffic agents. Said issuance of perjurious nopvs has caused another unnecessary court appearance which for the reasons previously stated violates plaintiff's 4th, 5th, and 14th amendment rights, Due Process Clause violations, and is a result of defendants' ticket quota policy and practice / racketeering enterprise.

100. Based on defendants' and defendants' agents' aforementioned conduct actions, inactions, facts and evidence, Plaintiff has established a prima facie case under 42 U.S.C. § 1983, 18 U.S.C. §241, 18 U.S.C. §242, and 18 U.S.C. §245 in that their actions occurred "under color of law" and that the actions are a deprivation of a constitutional right or a federal statutory right.

101. Defendants' violated plaintiff's Due Process Clause rights under the 5th and 14th amendment to the United States Constitution. Plaintiff's due process rights were violated by his inability to cross-examine his accusers who committed perjury by knowingly making false fact and law claims without probable cause alleging violations of improper registration - commercial vehicle rules and regulations. " Confrontation and Cross-Examination. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." Where the "evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealously," the individual's right to show that it is untrue depends on the rights of confrontation and cross-examination. "This Court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases, . . . but also in all types of cases where administrative . . . actions were under scrutiny." - source - http://law.justia.com/constitution/us/amendment-14/36-procedural-due-process-civil.html

102. Plaintiff in good faith within the spirit and letter of the law argues that the egregious number of perjurious NOPV's issued by agent who knew or should have known plaintiff's vehicle was in compliance but forced plaintiff to repeatedly appear in court based on perjurious sworn statement without probable cause that threatens asset and vehicle seizure approximately 50 times over 15 years is in and of itself is willful misconduct and a violation of the Due Process Clause violation of plaintiff's constitutional due process rights.

103. Further evidence of defendants' denial of plaintiff's due process rights are based on a lack of impartial tribunal. Supervising Judge Alan Patricoff's statement that he " does not care " about pictures which prove as fact and that his subordinate Judge Levine (guilty decision on NOPV # 3903997286) is corrupt and ignoring evidence (based on prejudice due to plaintiff's stated complaints to her) of a rear seat is one example. Not only was NOPV#3903997286 by TEA S. Mccain overturned on appeal but another improper registration NOPV # 3914792530 by S. Mccain was dismissed on the merits. Another example is the appeal on NOPV # 131099184 where 2 appeal judges found plaintiff guilty. Subsequent to complaints that plaintiff's NOPV # 31099184 in person appeal request was illegally ignored, a second new 3 judge appeal panel found plaintiff not guilty on the merits despite a previous decision of guilty (the first appeal decision mysteriously and illegally disappeared). Another example of lack of impartiality and a corrupt NYC Dept. of Finance tribunal racket is ALJ Bradlee Biller who found plaintiff guilty on NOPV #1100489927 (summons issued at 1:00pm on June 8, 2006) where on June 8, 2006 in the same afternoon Biller stated in his decision " The photographs , and prior decisions, and statement of correction dated in 20002 do not (!!!!) persuasively establish that the required rear seat and fittings were removed from the vehicle at the time of the summons". Photos taken on the same day were provided to Biller in court within 4 hours of the issuance of the NOPV. Also it should be noted that on June 29, 2005 at 11:00pm plaintiff received NOPV # 1081626800 for improper registration. On June 30, 2005 ALJ Bradlee Biller states in another decision (on NOPV # 1081626800) on June 30, 2005 where he finds plaintiff not guilty : " respondent claims that the vehicle was properly equipped at the time the summons was issued, respondent's claim is supported by persuasive documentary evidence, testimony, photos etc.". Complaints by plaintiff against all of the above for said incidents were ignored. Plaintiff was forced to file 3 appeals on 3 separate NOPV's with all 3 being overturned in plaintiff's favor. The above stated incidents are just a few examples of the conduct, actions and inaction by participants in this racketeering enterprise that are extreme and outrageous, shocking to the conscience, should not be tolerated in a civilized society The above mentioned incidents is proof positive of plaintiff being denied due process for lack of impartial tribunal.

104. Further evidence of defendants' Due Process Clause violations, lack of impartial tribunals, racketeering and the " enterprise" is identified in an " Administrative Law Judge Reform Report:
" The September 11, 2010 New York Law Journal ran a letter captioned "Reform Needed at Parking Bureau." That letter cited the New York County Lawyers Association 2005 "Administrative Law Judge Reform Report" suggesting (at 8) New York City ALJs are conflicted between:

- Their duty to adjudicate disputes independently and in a fair and impartial manner; and,
- What they perceive as the requirement of loyalty to their employing agency.

The letter concluded "After NYCLA released its report, the city adopted rules of conduct for its administrative law judges, but those rules have had little effect at the Parking Violations Bureau, where leadership continued to conduct business as usual. **IF** that leadership would encourage administrative law judge independence and impartiality, and inform the law judges on the few recurring bureau adjudication issues that an average motorist sitting as an administrative law judge cannot be expected to resolve adequately with a copy of the New York City Traffic Rules, the bureau's administrative law judges can and will do a very good job.". [source - http:// newyorkparkingticket.com/reform-still-needed-at-parking-violations-bureau/]. (Ex. #25).

105. With regards to ticket quotas and unimpartiality of NYC DOF PVB ALJ's, the " ALJRR " further states: " The failure by the City to draw this distinction in the rules and regulations governing its ALJ's and Hearing Officers is significant because when an ALJ receives evidence from an agency as part of his/her rule-making function, impartiality is not assumed, while impartiality is essential to the adjudicatory process. In order to prevent the role played by the ALJ serving the rule-making function from undermining the independence of ALJ's performing the adjudicatory function, the State and Federal governments have distinguished these two roles. The City, however, has not. The failure to do so undermines the confidence of the Bar in the way the adjudicatory function is performed. Compounding this problem is the fact that the City, unlike the State, does not mandate that its ALJ's be independent of the agency they serve when performing the adjudicatory function. Specifically, 9 NYCRR § 4.131 bars a State agency from using an ALJ's rulings or decisions as criteria in making decisions concerning salary, promotion and benefits, working conditions, case assignments or opportunities. State agencies may not establish quotas for decisions, nor may the agencies direct the ALJ's to take a particular action in any given case. Furthermore, where an agency head does not adopt an ALJ's decision or recommendation, the agency head must give a written explanation for his/her failure to do so. Similar statutes, 5 U.S.C. §§ 554, 557, 3105 and 5372, have been adopted by the Federal government to insure the independence of its ALJ's. The City has not adopted similar safeguards." . (Ex #25).

106. Plaintiff's 4th and 5th, and 14th Amendment rights and property rights are further violated with the mere issuance of each perjurious nopv. In response to the issuance of perjurious nopvs issued without probable cause, plaintiff must appear in court, provide identification, produce private papers and effects, and provide sworn testimony before a judge. Should plaintiff exercise his right to remain silent, not produce identification, papers and effects, a judgment would be issued against him

45

and his vehicle could/would be seized for failure to pay a fine. Plaintiff is forced under duress to violate his constitutional rights or face asset seizures. Said continuous threats to seize plaintiff's vehicle infringe on his right to travel and engage in business as a sole proprietor. Plaintiff's forced appearance in Court violates his property rights and prevents his right to freely travel and conduct business and use his vehicle in the ordinary course of his DJ business. Plaintiff's constitutional rights were violated due to the fact that that defendants' have inspected his legally registered vehicle at least 11 times over since 2000, know he is in compliance with all registration laws rules and regulations, were told not to issue any further summonses and with deliberate indifference continued to issue perjurious nopvs. Said vehicle inspections of his rear seat were further baseless and unnecessary due to the fact that plaintiff's parked passenger plated vehicle could not be defined as a commercial vehicle under NYC DOT Traffic Rule §4-01(b) due to fact that it does not bear commercial plates. C. Katsabanis admits to his farce charade inspection of the rear seat on  when he admits a commercial plate is required to define a commercial vehicle. (Ex# 22b)

107. Defendants' and Defendants' agents aforementioned continuous pattern of tortious and constitutional violations are not time-barred and are relevant and permitted as per the Continuous Tort Doctrine - (Dana v Oak Park Marina (197, 4th Dept 230 AppDiv 2d 204; Drury v Tucker, 210 A.D.2d 891, (4th Dept. 1994).

## AS A FIRST CAUSE OF ACTION

42 U.S.C. § 1983 Intentional Infliction of Emotional Distress against all Defendants officially, individually, jointly and severally

108. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 235 with the same force and effect as if herein set forth.

109. Defendants' and defendants' agents' continuos willful misconduct, crimes of perjury, intentional, slander, defamation, libel, violations of the Due Process Clause, policy and practice of illegal ticket quotas, interference with right to travel freely and conduct business with his properly registered vehicle, actions and inactions etc. as previously stated has caused plaintiff extreme emotional distress over a 15 year period.

110. Defendants and defendants agents actions and inactions were ministerial acts. Ministerial acts—meaning conduct requiring adherence to a governing rule, with a compulsory result—may subject the municipal employer to liability for negligence (*Tango v Tulevech*, 61 N.Y.2d 34, 40-41).

111. Defendants ministerial acts include but are not limited to: crime of perjury by not observing a violation and falsifying facts claimed on a sworn legal notice of parking violation document Defendants were obligated to use the NYC DOT traffic rule commercial vehicle definition §4-01(b) - " bearing a commercial plate " in the enforcement and adjudication of NYC DOT §4-08(j)(1) was willful misconduct, arbitrary, capricious and an abuse of discretion. Despite being ordered in 2006 by an arbitrator to cease and desist the policy and practice of ticket quotas defendants continued the illegal practice. Defendants and their agents ministerial acts do not provide governmental immunity from liability for intentional infliction of emotional distress.

112. Defendants' and defendants' agents have willfully engaged in the aforementioned extreme and outrageous willful misconduct with malevolent intent causing severe emotional distress. (Ex #14b, #14L,#5a,#3a-#32e).

113. After a continuous 15 year period of addressing defendants' and their agents' actions , inactions, and illegal conduct it is reasonable and logical to conclude that there is a causal connection (and or a disregard of a substantial probability of causing) between defendants' and defendants' agents' extreme and outrageous conduct, actions and inactions and plaintiff's extreme, continuous, and severe emotional distress. An average member of the community upon learning of the facts alleged by plaintiff would exclaim "outrageous!" Viehweg, 732 S.W.2d at 213.

114. Defendants' and Defendants' agents' conduct, actions and inactions with regards to the perjurious issuance of nopvs and related ticket quota enterprise were so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society - Marmelstein v. Kehillat, 11 N.Y.3d 15 , 22-23 (2008).

115. It should also be noted that other lower state courts have sustained some emotional distress claims, against a motion to dismiss, that appear to allege conduct that is somewhat less than "utterly intolerable in a civilized society."  See Flatley v. Hartmann, 138 A.D.2d 345, 346, 525 N.Y.S.2d 637, 638 (2d Dep't 1988) ("hang-up" telephone calls).Halio v. Lurie, 15 A.D.2d 62, 67, 222 N.Y.S.2d 759, 764 (2d Dept. 1961) (taunting letter from former boyfriend, boasting of marriage);  Flamm v. Van Nierop, 56 Misc.2d 1059, 1061, 291 N.Y.S.2d 189, 191 (Westchester Cty.Sup.Ct.1968) (harassing plaintiff by driving too closely and making threatening looks).

116. Defendants' and Defendants's agents' conduct, actions, and inactions has caused Plaintiff continuous lack of sleep , disruption of daily activities, disruption of self employment / use of vehicle for business, disruption of right to

travel freely,  severe emotional distress, financial damages, pain, and suffering.

117. The City of New York has previously been been held liable under a 42 USC §1983 claim for intentional infliction of emotional distress - Bender v. City of New York 78 F.3d 787 (2d Cir. 1996).

118. Defendants and Defendants' agents conduct, actions and inactions violated  the constitutional rights of plaintiff under 42 U.S.C. § 1983  similar to - Manti v New York City Transit Authority et al 121 Misc. 2d 824 (N.Y.  Misc. 1983), 165 A.D. 2d 373; 568 NYS 2d 16 (1st Dept. 1991). Defendants and defendants agents conduct violated plaintiff's constitutional rights under the Due Process Clause etc.

119. By continuously issuing perjurious nopvs, not allowing plaintiff to cross-examine his accusers, lack of an impartial tribunal, inability to get redress of grievances, and all aforementioned acts, defendants deprived plaintiff of his rights under the Due Process Clause, guaranteed by the  14th, 5th, 4th, and 1st Amendments to the U.S. Constitution, in violation of 42 U.S.C. § 1983, 18 USC §241, 18 USC §242, 18 USC §245. The individual defendants acted under color of State law, in their individual and official capacities and within the scope of their employment as traffic enforcement agents / commanding officers / administrative law judges / public officials. Said defendants acted willfully, knowingly, and with the intent to deprive plaintiff of his constitutional rights.

AS A SECOND CAUSE OF ACTION:

42 U.S.C. § 1983 - Harassment against all Defendants officially, individually, jointly and severally

120. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 235  with the same force and effect as if herein set forth.

121. The New York State Supreme Court has held a municipality liable for harassment under 42 U.S.C. § 1983 for the " numerous and burdensome " issuance of citations - Manti v New York City Transit Authority et al 121 Misc. 2d 824 (N.Y.  Misc. 1983), 165 A.D. 2d 373; 568 NYS 2d 16 (1st Dept. 1991). Harassment against the City of New York and its agents is a legally recognized cause of action see: Manti v New York City Transit Authority et al 121 Misc. 2d 824 (N.Y.  Misc. 1983), 165 A.D. 2d 373; 568 NYS 2d 16 (1st Dept. 1991).

122. " A true pattern of harassment by government officials may make out a section 1983 claim for violation of due process of law, where the municipal defendant's actions are illegal, or place a discriminatory burden on a constitutionally protected activity (Chalfy v Turoff, 804 F.2d 20; Batista v Rodriguez, 702 F.2d 393; Espanola Way

48

Corp. v Meyerson, 690 F.2d 827, cert denied 460 U.S. 1039; see, Black Jack
Distribs. v Beame, 433 F.Supp. 1297). A complaint will survive dismissal "unless it
appears beyond [165 A.D.2d 379] doubt that the plaintiff can prove no set of facts in
support of his [section 1983] claim which would entitle him to relief" (Conley v
Gibson, 355 U.S. 41, 45-46, cited in Batista v Rodriguez, supra, at 397). Plaintiff has
proven through facts and evidence submitted above that defendants issued
knowingly false nopv's in violation of Penal Law 210.45 (¶17,) which states: " I
affirm under the penalty of perjury (Penal Law 210.45) that i personally observed
the offense charged above; if the operator was present, i wrote the operator's name
above or marked the" ID Refused " box and personally served this Notice upon him/
her. If NO name appears above and the ID Refused is not marked, I affixed this
notice to the vehicle". Plaintiff has also proven that one of the motives of the
issuance and refusal to stop the issuance of said nopv's is a well known illegal ticket
quota policy and practice enterprise (#2a-84)(#1a-7,8,9)(#33) which coerces and
corrupts traffic enforcement agents, police officers, Administrative Law Judges
(#25-Pg. 5) and other high level government officials. It was arbitrary, capricious,
illegal and an abuse of discretion for ALJ's to adjudicate and rewrite a NYC DOT
commercial vehicle parking violation from " all rules of New York " (#11b-pg.30) to
read " all rules of the State of New York" and then ignore the NYC commercial
vehicle definition under §4-01(b) by not dismissing the nopvs due the fact that
plaintiff's vehicle simply did not " bear a commercial plate". Instead, ALJ's focused
on a NYS DMV §106.3.d a non parking violation to determine whether or not the
traffic enforcement agents were credible in sworn allegations that they observed no
rear seat(s) Bolted which cannot be observed from outside a vehicle. To observe
bolted seats you gain vehicle access and you must crawl under the rear auto seat and
inspect to see if bolts are present. Defendant Sileo further stated according to NYS
DMV106.3.d, an agent can observe no rear seat(s) and the vehicle can be in
compliance due to the presence of seat fittings (#14b,#10a) which also cannot be
observed in a locked parked vehicle unless access is obtained to inspect. ALJ's
arbitrary and capricious abuse of discretion ignored §4-01(b) to obtain more guilty
verdicts resulting in the collection more fine revenues (#25-pg.5). Said due process
violations were also discriminatory as other motorists were permitted to have
commercial vehicle and other parking violations adjudicated by the appropriate
NYC DOT traffic rules without ALJ's rewriting/mis-citing the laws and rules of
New York. Plaintiff has set forth facts and evidence that his rights to due process,
travel and other constitutional rights were violated by defendants' 15 year
harassment campaign perjuriously claiming that he violated NYC DOT parking
rules (#11a,#11b,#11c,#22b). It is important to note that, evidence of illegal ticket
quotas (#43,1a,#1g,#2a) and the Administrative Law Judge Reform Report (25-pg. 5
- re: quotas ) were reported 10 years after Manti.

123. In response to the governments issuance of " numerous and burdensome "
baseless summonses against *Manti*, the Court found that: " ... plaintiff should not

be required to litigate and relitigate endless streams of tickets in the future if they are baseless and when the time consumed in receiving those tickets and successfully defending against them cannot remedy the loss...". Similarly, the evidence in Ralin irrefutably proves that the nopvs not only lacked probable cause but were crimes of perjury because it was impossible for the agents to observe rear seat bolts under the seat of the parked locked vehicle without access inside the vehicle. Similarly, the laws and rules of the City of New York - DOT §4-01(b) clearly prohibits a passenger plated vehicle from being defined as a commercial vehicle. The 15 year issuance of perjurious nopvs on sole proprietor Ralin had a greater impact on time and resource costs than it did on Manti and All Air (both of which were large corporations with a fleet of vehicles, attorneys, employees etc.). If you use one Ralin DJ contract (#77) as a math comparison, $800 / 5hrs = $160.00 per hour. The dollar cost if plaintiff lost $160 for one hour's work vs one $65 nopv shows that the " the time consumed in receiving those tickets and successfully defending against them cannot remedy the loss". The time involved with each summons is well in excess of 1 hour. Each ticket requires a trip to obtain a camera, photograph and videotape the vehicle's rear seat and bolts.The photos then have to be uploaded to a computer and printed. Telephone calls to NYPD and internal affairs to file a complaint can be very time consuming. Driving to numerous unnecessary inspections and having the vehicle inspected can take hours each. Daily, weekly or monthly correspondence emails certified letters postage fax costs trip to the post office are all very time consuming and costly. Unlike All Air, the costs associated with the numerous and burdensome issuance of perjurious nopvs was not a " mere annoyance" There were personal costs associated to the time expended and distractions of the numerous and burdensome summonses. Defendants perjurious nopvs took away precious time caring for my dying mother (the unnecessary vehicle inspection on 3.18.15 was 10 days after my mother's death). Said nopv's took away from time with my father and 2 dogs that were sick and dying from cancer. Plaintiff was unable to use his vehicle for personal use while having to successfully defend approx 50+ tickets over 15 years. Plaintiff at times did not have money to pay for food, gas and rent etc., while at the same time being forced to expend unnecessary time and resources to respond to defend against perjurious nopvs and illegal unnecessary vehicle inspections. As an example, plaintiff was unable to pay one $45 parking meter ticket for 2 years which turned into $118.45 fine payment (#76). The " numerous and burdensome" issuance of perjurious nopvs was not a mere annoyance, it ruined plaintiff's life.

124. Plaintiff like Manti, has a business property interest in his van as he uses it to travel and transport equipment to private events as evidenced by a " Kayak Software Corp " contract dated May 1, 2015 - Connecticut event - interstate commerce (Ex #77) and Cranis contract (Ex #78). While plaintiff uses his legally registered " passenger " van primarily for personal purposes, he also uses the van in the ordinary course of business in his DJ business. Plaintiff uses his van to travel to business network, meet clients, do walk-thru' of event spaces, to travel to attend

parties, travel to perform at venues that provide their own equipment, travel to buy dj equipment and supplies, and to travel to private events with dj equipment etc.

125. The Defendants' unrelenting 15 year issuances of false, fraudulent and perjurious Notice of Parking Violations which under Color of Law falsely accuses the plaintiff of violating NYC Traffic Rules for violation of NYC DOT Traffic Rule 4-08 § (j)(1) for an improper registration commercial vehicle for having: no rear seats, backseats faced wrong, seat not bolted, no seatbelt, etc is harassment and has resulted in extreme emotional distress.

126. "42 USC § 1983 enables an aggrieved individual to seek a civil remedy against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States * * * to the deprivation of any rights, privileges, or immunities secured by the Constitution". Governmental units such as the NYCTA are among those "persons" whose conduct is proscribed by statute. (Monell v New York City Dept. of Social Servs., 436 U.S. 658; Simpson v New York City Tr. Auth., 112 A.D. 2d 89, affd 66 N.Y.2d 1010.)

127. A protected constitutional interest exists where the State recognizes the right to operate a vehicle by issuing an operator's license (Paul v Davis, 424 U.S. 693; Safeguard Mut. Ins. Co. v Miller, 477 F.Supp. 299). Plaintiff's modified van is legally registered passenger by the New York State Department of Motor Vehicle. Plaintiff also has a valid driver's license issued by the NYS Dept of Motor Vehicles to operate his van. Plaintiff does use his van to travel for both personal purposes and in the ordinary course of his sole proprietor business (Ex #77, #78). Plaintiff was unable to use his van for personal and business purposes while responding to defendants' " numerous and burdensome " perjurious notice of parking violations for a commercial vehicle, nopv hearings, 11+ vehicle inspections, appeal preparations etc.

128. " Manti " also states government's actions which were identical to Ralin that were deemed harassment because: " ...The complaint alleged that defendant's".... " harassed plaintiffs by issuing numerous and burdensome citations without any basis in fact".... "by forcing plaintiffs to make numerous court appearances"..." by commencing frivolous litigation against them"....". The factual allegations support their claim that the NYCTA's conduct was"...."without due process of law"..." The allegation of a repeated pattern of harassment demonstrated a cognizable constitutional injury.". Manti v New York City Transit Authority et al 121 Misc. 2d 824 (N.Y. Misc. 1983) 165 A.D. 2d 373; 568 NYS 2d 16 (1st Dept 1991). Defendants arbitrary and capricious enforcement of a non parking NYS DMV registration rule §106.3.d with perjurious notice of parking violations NYC DOT §4-08(j)(1) which lacked probable cause violated plaintiff's due process rights. Just

like Manti, plaintiff was targeted by " traffic enforcement agents " with financial motives, interfered with the business use of his vehicle, issued knowingly false perjurious notice of parking violations - two, three, and even four times. However unlike Manti, In Ralin said agents targeted Ralin despite being ordered not to do so.

129. As in " In Chafly v Turoff, 804 F 2d, 20 (2d Cir. 1986), the Second Circuit held that [a] true pattern of harassment by government officials may make out a Section 1983 claim for violation of due process of law." "Generally defendants in [Chafly] cases either **acted illegally, or used their legal authority for purpose other than that for which it was intended**." Contractors Against Unfair Taxation Instituted on New Yorkers v. City of New York , 93 Civ. 4718(KMW),1994 U.S. LEXIS 11799, * (S.D.N.Y. AUG. 19, 1994) Ralin has provided facts and evidence to corroborate that the nopv's issued were not legal, were perjurious, not based in fact or law, were arbitrary, capricious and a violation of due process in their enforcement and adjudication of NYC DOT §4-08(j)(1). Defendants perjurious issuance, enforcement, and adjudication of improper registration commercial vehicle nopvs was without probable cause and not based on the intended purpose of NYC DOT traffic rule §4-08(j)(1) which is traffic safety and traffic flow. The issuance of said nopvs was for financial - ticket quota purposes. Defendants actions were not overzealous and strict adherence to procedures, their actions were " systematic and intentional harassment. Defendants actions van be characterized as " arbitrary and conscience shocking in the constitutional sense ".

130. The Defendants' perjuriously issued nopvs have caused plaintiff to continue to make approximately 50 or more unnecessary appearances in court despite the fact that city agents were instructed that plaintiff is in compliance with vehicle registration rules. The actions, inactions, and willful misconduct of the defendants have caused plaintiff to spend much of his time and resources to defend himself against each of these knowingly false accusations of violating vehicle and traffic rules and regulations.

131. The City of New York and their agents and agencies' 15 year refusal to follow the law, refusal to follow alleged direct orders to not issue improper registration nopvs against plaintiff, same agents targeting plaintiff's vehicle on numerous occasions, and the criminal act of issuing perjurious nopvs in violation of NYS Penal Law 210.45, and violations of New York Labor Law § 215 is extreme and outrageous and is beyond the bounds of decency that can be tolerated by a civilized community.

132. The effect of this long-term pattern of harassment by defendants' against plaintiff has caused plaintiff economic damages, emotional and physical distress, pain and suffering, The long-term pattern of harassment by the City of New York, their agents and agencies violated plaintiff's rights under: the 1st, 4th, 5th and 14th

Amendment rights, Due Process Clause rights, Color of Law - 42 USC §1983, 18 USC §241, 18 USC §242, and 18 USC §245.

133. Plaintiff has set forth the above mentioned facts and evidence which under New York State law constitutes harassment under NYS Penal Law § 240.26 - "...engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose.".

134. As in Manti, defendants interfered with plaintiff's business use of his properly registered passenger vehicle. As in Manti, the motive which caused the interference was financial and in the case of Ralin due to illegal ticket quotas and not based on any legitimate purpose of NYC DOT Traffic Rules, traffic safety or traffic flow.

135. The issuance of " numerous and burdensome " citations in Manti is identical to Ralin in by: " forcing plaintiffs to make numerous court appearances " and by " commencing frivolous litigation constituted the basis for a harassment lawsuit under § 1983 claim. "(ie case at bar - court appearances based on perjurious nopv's). The difference between Manti and Ralin is that Manti is a van fleet corporation with lawyers that had its employees harassed and business damaged. Plaintiff is a pro se individual sole proprietor who uses his van for business (Ex #77#78) who had his life and personal and business finances damaged by defendants " numerous and burdensome" summonses. Also it should be noted that Manti was found guilty of 15 of the 82 total citations issued with 41 being dismissed. Ralin had received approximately 50+ citations with all being dismissed (approx. 2 voided). Ralin did not have the financial resources and luxury of attorneys to spend the time to respond to the numerous and burdensome summonses. Manti's time period for the issuance of the citations was a six month period. Ralin by comparison has individually endured a 15 year period of time harassed by the issuance of knowingly false summonses. While Manti had lawyers and numerous employees available to respond and appear in court, plaintiff had to spend exorbitant amounts of time and limited resources responding to said harassment alone. Ralin cannot use his vehicle for business or personal travel while he is making court appearances, being coerced to make unnecessary vehicle inspections, working on successful appeals, corresponding and complaining to city officials, preparing evidence to successfully defend the same notice of parking violation over and over again. Said issuance of numerous and burdensome perjurious nopvs interfered with Ralin's personal life and sole proprietorship and created extreme emotional distress including while family members were ill and dying). Plaintiff was coerced to have his vehicle inspected 10 days after his mother died. Such precious time and resources cannot be recovered or compensated with money. Defendants wrongfully argue that only a corporation and not a sole proprietor has a right to not be harassed with the issuance of " numerous and burdensome " summonses. Like Manti , Ralin operated his vehicle with valid drivers license and legal registration. Ralin has the same right to

use a " VAN " in the ordinary legal course of business just as Manti has a right to use their fleet of vehicles legally according to their NYS issued license and registration. Individual sole proprietors have the same right to be free from harassment by a municipality as corporations do. Plaintiff, an individual sole proprietor had constitutional rights, right to travel, Due Process Claus Process rights, and property rights violated while he is in compliance with NYC DOT Traffic Rule §4-08(j)(1) - §4-01(b).

136. Just like Manti, defendants baseless summonses and vehicle inspections similarly amounted to a business interference based on a baseless / perjurious summonses for financial motive / gains. In the case of Manti the motive was competition. In the case of Ralin the government committed perjury, violated plaintiff's Due Process Clause rights for a ticket quota revenue motive.

137. Based on the aforementioned constitutional violations, conduct, actions, inactions, facts and evidence plaintiff has set forth a prima facie claim for harassment under 42 U.S.C. §1983.

AS A THIRD CAUSE OF ACTION:

18 U.S.C. § 1961-68 for violations under "RICO "- Racketeering.
and 18 U.S.C. § 1951 for violations under the Hobbs Act –
Against all Defendants officially, individually, jointly and severally

138. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 235 with the same force and effect as if herein set forth.

139. The City of New York (a Municipal Corporation), their agencies and agents (" Enterprise " ) have engaged in an illegal ticket quota extortion racket for over 15 years. The Enterprise has used illegal activities to harass, coerce and retaliate against its own agents to extort and loot assets from the citizens of the City of New York. The Enterprise has committed crimes of perjury to obtain fines and judgements to seize assets and vehicle(s) of plaintiff and citizens in the City of NewYork. The Enterprise acts under Color of Law and fabricates without probable cause facts and laws, rules and regulations that do not exist to extort revenues and seize assets from law abiding citizens in the City of New York.

140. As stated above, numerous New York Police Department officers have testified under oath as to the existence of the illegal ticket quota policy and practice. Many of said "whistle blowers " have been retaliated against for exposing ticket quotas or not meeting ticket quotas. Honorable police officers have been retaliated against, demoted, fired and even involuntary committed to a mental institution for refusing to participate in this illegal enterprise. The

illegal ticket quota policy and practice is common knowledge and is reported frequently in the media. - (Ex #1a-1h,#2a-#2e,#33 - #76).

141. As evidenced by the aforementioned actions, facts and evidence, the Enterprise coerces its agents to commit Perjury (violation of Penal Law 210.45) and violated NYS Labor Law § 215 to extort fines and illegally seize assets from the public. Said illegal acts violated plaintiff's : 5th, 14th, 4th and 1st Amendment rights, Due Process Clause rights, 18 USC §241,§242, §245 and other rights guaranteed by the United States Constitution. (Ex#5a,#2d,#2a-¶84).

142. As the above mentioned facts and evidence proves, the City of New York, its agencies and agents is an " Enterprise " using its agents and agencies in an illegal manner under Color of Law. Said pattern of perjury and extortion has been used against plaintiff, its employees, and the public for over 15 years. The Enterprise then uses the extorted revenues and seized assets for government projects, funding of pensions, lawsuit settlements, funding of the militarization of the police and illegal surveillance, for political purposes to influence public policies and elections, and to fund City services etc.

143. It has further been reported that defendant NYPD has destroyed evidence of 850,000 bogus summonses issued to fill ticket quotas - source - [ http://thegrio.com/2015/07/06/nypd-allegedly-destroyed-evidence-showing-they-issued-850000-bogus-summons-to-fill-quotas/].

144. Its also been reported that the Enterprise collected revenues from parking tickets in the year 2010 in the amount of $686,864,943.00  - [source - http://newyorkparkingticket.com/startling-nyc-parking-ticket-data-performance-statistics/ ]

145. Numerous high ranking City of New York and NYPD officials have established, engaged in, and  enforced a ticket quota policy and practice which has violated the aforementioned constitutional rights of plaintiff. Michael Marino is one of many high ranking NYPD officials who Adrian Schoolcraft identifies in his Federal Complaint (1:2010cv6005) Ex#2a - ¶80-¶87) as a perpetrator of illegal ticket quota racketeering activities. As previously mentioned Mayor Bloomberg has publicly stated his policy on ticket quotas as being " For an employee whose function it is to issue parking tickets, a measurement clearly relevant to job performance is the number of summonses issued over the course of a reasonable period of time." - (source - http://gothamist.com/2010/09/30/bloomberg_quotas_for_tickets_are_ne.php) - (Ex#33). Ticket Quotas are municipal policy and custom.

146. In 2006 NYC arbitrator Bonnie Siber Weinstock ruled that the NYPD maintained an illegal "summons quota for traffic violations in the precinct and by penalizing officers for failing to meet the stated number of traffic citations." She ordered the city to cease and desist from the practice.". - [ source - http://www.thenewspaper.com/news/09/914.asp ]. (Ex #34,#43,#2a-¶84)

147. Plaintiff restates to be included all documents and evidence of ticket quotas - [federal lawsuits : Schoolcraft - 1:2010cv6005 and 1:10cv04228 ] as evidence of an illegal ticket quota policy, practice and enterprise by the City of New York, defendants and defendants' agents. Had there been no policy and practice by a ticket quota enterprise, defendants would not have continually issued perjurious nopvs which violated plaintiff's constitutional rights. Plaintiff has set forth irrefutable evidence of formal officially promulgated policy of ticket quotas and or the existence of an unlawful practice by subordinate officials so permanent and well settled to constitute " custom or usage " with proof that the practice was so manifest as to imply the acquiescence of policy making officials, City of St. Louis v. Praprotnik, 485 U.S. 112,127-30 (1985) (plurality opinion).

148. Defendants and defendants' agencies, and agents by threat of seizing plaintiff's vehicle (interfered with his ability and right to freely travel to engage in business) without probable cause via perjury did potentially obstruct, delay, or affect interstate commerce in violation of the Hobbs Act - 18 U.S.C. § 1951. (Ex#77,#78).

149. For the aforementioned reasons, facts and evidence, plaintiff has established a prima facie cause of action for 18 U.S.C. § 1961-68 for violations under "RICO "- Racketeering and 18 U.S.C. § 1951 for violations under the Hobbs Act – as being a direct cause for violations of plaintiff's: 14th, 5th, 4th, and 1st Amendment rights, Due Process Clause, 42 USC §1983, 18 USC §241, 18 USC §242, 18 USC §245, right to travel and other rights guaranteed by the United States Constitution.

AS FOR A FOURTH CAUSE OF ACTION

42 U.S.C. § 1983 – Malicious Abuse of Process
against all Defendants officially, individually, jointly and severally

150. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through   with the same force and effect as if herein set forth.

151. The 15 year issuance of approximately 50 knowingly false, fraudulent and perjurious §4-08(j)(1) Notice of Parking Violations by defendants against plaintiff constitutes regularly issued (abuse of) process.

56

152. Despite dismissals of all above mentioned and possibly more issued
     improper registration  commercial vehicle Notice of Parking Violations, defendants
     continued to issue perjurious nopvs even after plaintiff's vehicle was inspected by
     defendants (inspected over 11 times from 2000-2015 - Ex# 22b etc) and deemed in
     compliance with all NYS and NYC passenger vehicle laws, rules, and regulations.
     Defendants' and their agents perjuriously requested via nopvs that plaintiff install
     rear seats in his passenger vehicle. The dismissed decisions establish that plaintiff is
     in compliance with NYS / NYC vehicle laws, rules and regulations by having one
     permanently installed rear auto seat.  More importantly defendants knew that
     the commercial vehicle definition for a parked vehicle under NYC DOT §4-01(b)
     requires that it bear a commercial plate which plaintiff's vehicle does not have.
     Despite unnecessary vehicle inspections and dismissed decisions which found
     plaintiff in compliance, internal affairs complaints etc and a Commanding Officer
     Michael Sileo allegedly ordering TEA's to cease and desist, defendants continued
     to issue perjurious nopvs that ignored facts and the §4-01(b) NYC DOT traffic rule
     definition. Michael Sileo's August 15, 2014 letter which falsely cited the
     commercial vehicle definition for a parked vehicle in the City of New York, falsely
     accused plaintiff of removing a rear seat and falsely claiming the vehicle had " seat
     fittings " is further evidence of intent to do harm without excuse or justification.

153. Defendants rewriting of NYC DOT Traffic Rule §4-08(j)(1) from the correct
     " laws and rules of New York" to falsely cite as " in accordance with the laws and
     rules of the State of New York " to violate the Due Process Clause and ignore the
     correct NYC DOT Traffic Rule §4-01(b) commercial vehicle definition for a parked
     vehicle when adjudicating plaintiff's nopvs was further proof of intent to do harm
     without excuse or justification and a collateral objective. Despite Commanding
     Officer Michael Sileo's alleged orders (Ex#14b,#14l, #14k) to defendants Hunte
     and Simmons to cease and desist the further issuance of  nopvs on plaintiff's
     properly registered passenger plated vehicle Simmons (and others TEA's listed in
     this  complaint)  continued to issued up to 4 perjurious nopvs each with the intent to
     do harm without excuse or justification with the collateral objectives of retaliation
     for official complaints and ticket quota policy and practice after being ordered to
     cease and desist. Defendants continuous issuance  of said nopvs was not for the
     intended purpose of NYC DOT Traffic Rules (traffic safety and traffic flow) but
     was in retaliation for complaints and motivated by the illegal ticket quota policy and
     practice to extort/loot assets - (Ex #1a-#1h,#2a-#2e,#33-#76).

154. Where there there is no basis or probable cause for the issuance of the process (arrest
     in a criminal case or a summons in a civil case), it can be determined that there was
     an inference of malice which can be used as a basis for a collateral objective in an
     abuse of process claim. "Savino" states: " It then determined that "although abuse
     of process does not require that probable cause be lacking . a lack of probable cause

creates an inference of malice, supporting the collateral objective element" of this claim. Id. (citation omitted). Because it believed that Savino "ha[d] raised genuine issues of fact with respect to probable cause," the District Court denied summary judgment to all of the defendants with respect to the abuse-of-process claim...
Id. - See more at: http://caselaw.findlaw.com/us-2nd-circuit/
1158786.html#sthash.KAgK5MOa.dpuf .
Defendants issuance of nopvs which were perjurious and ignored §4-01(b) lacked probable cause.

155. Due to the fact that numerous City of New York agents issued numerous perjurious nopvs after being ordered not to do so there is clear intent to do harm without excuse or justification (Defendant R. Simmons issuing four nopvs, Bruno Iciano video (Ex#15a ), Janet Hayward - Ida Terry Audio recording (Ex #19f) , Judge Patricoff audio (Ex #24a), Michael Sileo's false and defamatory statements in a 8.14.14 letter to the public advocate (Ex #14b), Adrian Schoolcraft involuntary commitment (Ex#2a-¶175-¶214 etc.). Said evidence demonstrate there were 42 USC §1983 - Abuse of Process violations under Color of Law with intent to do harm without excuse or justification.

156. Said defendants', agencies and their agents used the process in a perverted manner to obtain a collateral objective. By raising revenues for the Enterprise, City of New York agents get promoted and avoid retribution. By increasing revenues through ticket quotas the enterprise then has more funds to: influence public policy, fund pensions, fund campaign donors' public projects, police militarization, illegal surveillance, settle lawsuits, influence elections, and fund city services.

157. Defendants' other collateral objective is that if plaintiff was found guilty on one subsequent (ie Simmons 4th nopv) nopv, defendants' would be exonerated against plaintiff's claims and complaints of perjury, extortion, and failure to supervise control and discipline. As aforementioned, Investigators' Guevara and Katsabanis inspection of plaintiff's vehicle was filmed and found that defendant Michael Sileo's (8.15.14 letter to public advocate) claims that plaintiff's vehicle has " seat fittings " (and that plaintiff removes the rear seat from the seat fittings) is false. Investigator Jacqueline Guevara further found and stated in an April 20, 2015 email that with regards to an internal affair complaint against R. Simmons, that: " members of NYPD Traffic were not properly instructed by their superiors on the issuance of code 83 " improper registration "..." there was sufficient evidence to corroborate your claim". Plaintiff has been denied a copy of the full investigation report by NYPD via subpeona and foil requests. The court has further prejudiced and denied plaintiff due process by refusing plaintiff discovery to obtain the investigation report that is relevant and necessary to support plaintiff's Monell Claims against defendants - (Defendants' willful misconduct / deliberate indifference - failure to screen, train, supervise control, and discipline, fire).

AS FOR A FIFTH CAUSE OF ACTION:

Malicious Prosecution -
against all Defendants officially, individually, jointly and severally

158  Plaintiff repeats and realleges and incorporates by reference the allegations in
paragraphs 1 through 235 with the same force and effect as if herein set forth.

159.  Defendant initiated approximately 50+ nopvs (civil process) over approximately
a 15 year period  perjuriously claiming  without probable cause that plaintiff's
vehicle has an " improper registration " and was a commercial vehicle.

160.  In Ralin as in Manti, the amount of perjurious nopvs  issued without probable cause
were so egregious, " numerous and burdensome " that it is a basis for a malicious
prosecution § 1983 claim - Manti v New York City Transit Authority et al 121 Misc.
2d 824  (N.Y.  Misc. 1983), 165 A.D. 2d 373; 568 NYS 2d 16 (1st Dept. 1991).

161.  A § 1983 claim for malicious prosecution does not have to be based on criminal
proceedings.  "Administrative proceedings conducted in this matter
contained sufficient attributes of judicial proceedings to satisfy the requirements for
instituting a malicious prosecution claim "- Manti v New York City Transit
Authority et al 121 Misc. 2d 824 (N.Y.  Misc. 1983), 165 A.D. 2d 373; 568  NYS 2d
16 (1st Dept. 1991). Groat v Town Bd., 73 AD  2d 426, appeal dismissed 50 NY2d
928; Glenn v State of New York 144 Misc 2d. - 101). The requirement for Malicious
Prosecution claims to be criminal is not absolute. In addition to Groat...Washington v
County of Rockland - states:" While we did not foreclose the possibility that "civil
prosecution [could] give rise to a cause of action under § 1983," we surmised that,
absent official conduct that is conscience-shocking, "it normally will not." Id. at
1018.". (http://openjurist.org/373/ f3d/310/washington-iv-v-county-of- rockland-f-j -
malicious prosecution claims - #11.) - Washington v. County of Rockland, 373 F. 3d
310, 316 (2d Cir. 2004). Defendants' and defendants' agents aforementioned
egregious "official " conduct, Due Process Clause violations, actions,inactions .
perjury, extortion, unimpartial tribunals and illegal ticket quotas over a 15 year
period which plaintiff has been forced to endure is nothing less than " conscience -
shocking".

162.  All of said NYC DOT Traffic Rule §4-08(j)(1) improper registration commercial
vehicle nopvs issued by defendants against plaintiff were dismissed.

163.  The willful misconduct and actions by Michael Sileo and his subordinate
TEA's which caused the issuance of dismissed perjurious nopvs was
a malicious intended response and retaliations to plaintiff's  complaints.

(Ex#14b,#22b,#5a,#22a,#3a,#4a,#6a,#7a,#4a-#4i).

164. The issuance of all the improper registration - commercial vehicle nopvs were perjurious, not based on an observed violation, and lacked probable cause. Defendants' and their agents inspected plaintiff's vehicle on 11+ occasions over a 15 year period including but not limited to Michael Sileo on September 24, 2012 and observed a rear bolted auto seat complying with NYS and NYC passenger vehicle definition rules and regulations. On September 24, 2012 plaintiff was told by Michael Sileo and Harjinder Singh that all agents would be trained regarding improper registration commercial vehicle summonses and to not issue any further nopvs on plaintiff's properly registered passenger van. Said Inspection(s) was baseless because under NYC DOT traffic rule §4-01(b) a passenger plated vehicle cannot be deemed a commercial vehicle. (Ex#11a,#14b, #14l,#22b,#14d, #14e,#14k)

165. Again on October 21, 2013 Michael Sileo's subordinate Hossain.Islam stated in an email with regards to improper registration - commercial vehicle nopvs being issued by NYPD traffic agents against plaintiff's van...: " ...All enforcement personals were advised that not to write any summonses to the vehicle which is properly registered...". - (Ex #14l)

166. However, on March 1, 2014 R. Simmons issued her 4th perjurious improper registration NOPV, on August 26, 2014 J.A. Hunte issued a perjurious NOPV falsely claiming no rear seats, seats faced backwards, not bolted, no seat belt, on September 12, 2014 Gita Paul issued a perjurious improper registration commercial vehicle NOPV false claiming no rear seats. The issuance by TEA's who were advised by supervisors that plaintiff's vehicle was a properly registered passenger van and were told to not issue further improper registration commercial vehicle nopvs but did so anyway acted with actual malice.

167. Defendant Michael Sileo's August 15, 2014 letter to the public advocate is evidence of actual malice that caused the issuance of his subordinates' perjurious NYC DOT traffic rule §4-08(j)(1) improper registration commercial vehicle nopvs. Michael Sileo lied to the public advocate falsely stating the commercial vehicle definition for a parked vehicle in the City of New York is NYS DMV §106.3.d when it is in fact NYC DOT traffic rule §4-01(b) (which requires a commercial plate). Sileo also fraudulently accuses plaintiff of removing the rear seat (which he cannot do), having seat fittings (which do not exist) (#14b,#22b) as an diversion and excuse for his agents crimes of perjury.

168. As such plaintiff has demonstrated a prima facie cause of action for malicious prosecution.

AS FOR A SIXTH CAUSE OF ACTION:

14th Amendment Rights - Under 42 U.S.C. § 1983
against all Defendants officially, individually, jointly and severally

169. Plaintiff repeats and realleges and incorporates by reference the allegations in
paragraphs 1 through 235 with the same force and effect as if herein set forth.

170. Defendants' and their agents issuance of NYC DOT traffic rule §4-08(j)(1)
improper registration commercial vehicle nopvs against plaintiff were crimes of
perjury, lacked probable cause, and violated plaintiff's 14th Amendment rights
under the United States Constitution.

171. Defendants fabricated facts and laws which do not exist when enforcing and
adjudicating §4-08(j)(1) improper registration commercial vehicle nopvs against
plaintiff. Defendants issued perjurious nopvs falsely accusing plaintiff of violating
NYC DOT traffic rule §4-08(j)(1) for an improper registration - commercial vehicle:
no rear seats, backseats faced wrong, no seatbelt, seat not bolted etc.

172. Defendants and defendants' agents and agencies knew continuously from 2000-2015
that plaintiff's vehicle was inspected 11+ times and deemed a properly registered
passenger van with one permanently bolted rear auto seat.

173. All of defendants and defendants agents approximately 50+ perjurious nopvs issued
over approx. 15 years which lacked probable cause were dismissed. Defendants
willfully failed and refused to properly screen, hire, train, supervise, control,
discipline and fire agents who issued knowingly false and perjurious nopvs.

174. Defendants and their agents enforcement of NYC DOT traffic rule §4-08(j)(1)
improper registration commercial vehicle notice of parking violations was arbitrary,
capricious and an abuse of discretion and a violation of the Due Process Clause.
Defendants ignored, suppressed and concealed the only NYC DOT commercial
vehicle definition for a parked/locked vehicle in the City of New York. NYC DOT
traffic rule §4-01(b) is the only commercial vehicle definition for a parked vehicle
in the City of New York. NYC DOT traffic rule §4-01(b) states: " For the purposes
of parking, standing and stopping rules, a vehicle shall not be deemed a commercial
vehicle or a truck unless: it bears **commercial plates**, and...". (Ex #11a)

175. Instead of using the only commercial vehicle definition for a parked vehicle
in the City of New York-§4-01(b) to enforce §4-08(j)(1) violations, defendants used
NYS DMV 106.3.d . NYS DMV 106.3.d allows for a van to be registered in the
passenger class if it has " at least one seat or set of seat fittings that is **installed**
behind the driver,...".§106.3.d cannot be used to define a parked/locked commercial

61

vehicle because it is physically impossible to observe seat bolts under a rear seat from outside a parked locked vehicle (Ex #22b,#14b). The use of §106.3.d is also flawed because even if all rear seats are removed and not visible the presence of " seat fittings " allows for a van to be registered in the passenger class (Ex #10a). It should also be noted that no §4-08(j)(1) nopv issued claimed no " seat fittings ". Defendants use of §106.3.d was arbitrary, capricious, an abuse of discretion and allowed for TEA's to meet ticket quotas by commit perjury and falsely claim they observed no rear seats.

176. Defendants and their agents violated the Due Process Clause by their arbitrary and capricious adjudication of NYC DOT §4-08(j)(1) improper registration commercial vehicle nopvs. NYC DOT §4-08(j)(1) states: "... (j) Standing or **parking** vehicles that violate registration and inspection rules are covered or have the VIN obscured. (1) Vehicles must be properly registered. No person shall stand or park a vehicle bearing a New York license plate or plates unless it is properly registered **in accordance with the laws and rules of New York**.". - (Ex #11c). When adjudicating plaintiff's §4-08(j)(1) improper registration commercial vehicle nopvs NYC DOF PVB ALJ violated the Due Process Clause by rewriting and mis-citing §4-08(j)(1) as " Vehicles must be properly registered. No person shall stand or park a vehicle bearing a New York license plate or plates unless it is properly registered **in accordance with the laws and rules of the State of New York**.".- (Ex #3b,#4c,#5l,#6b,#7e,#8b etc.). Said decisions and orders state that the ALJ's decisions were based on " State of New York " laws and rules and did not consider or base their decisions on City of New York laws for a City of New York parking violation and commercial vehicle definition. Every one of plaintiff's §4-08(j)(1) nopvs should have been dismissed based on the passenger plate.

177. NYC DOF PVB ALJ's violated the Due Process Clause by not only rewriting the law and rule in their decisions and orders but by ignoring and suppressing NYC DOT traffic rule §4-01(b) parked commercial vehicle definition when adjudicating NYC DOT traffic rule §4-08(j)(1) improper registration commercial vehicle notice of parking violations. The adjudication of NYC DOT §4-08(j)(1) using NYS DMV§106.3.d was an abuse of discretion and facilitated TEA's perjury and Due Process Clause violations. ALJ's use of the improper, subjective and flawed §106.3.d definition allowed for ALJ's to adjudicate more fines and meet ticket quota revenue goals.

178 Said perjurious nopvs caused plaintiff to be subjected to an impartial tribunal for the aforementioned reasons - also see - also see a September 11, 2010 New York Law Journal ran a letter captioned "Reform Needed at Parking Bureau." That letter cited the New York County Lawyers Association 2005 "Administrative Law Judge Reform Report" - [source - http://newyorkparkingticket.com/reform-still-needed-at-parking-violations-bureau/].-- (Ex #25).

179. Further evidence of defendants' Due Process Clause violations, lack of impartial tribunals, racketeering and the " enterprise" is identified in an " Administrative Law Judge Reform Report:
" The September 11, 2010 New York Law Journal ran a letter captioned "Reform Needed at Parking Bureau." That letter cited the New York County Lawyers Association 2005 "Administrative Law Judge Reform Report" suggesting (at 8) New York City ALJs are conflicted between:

- Their duty to adjudicate disputes independently and in a fair and impartial manner; and,
- What they perceive as the requirement of loyalty to their employing agency.

The letter concluded "After NYCLA released its report, the city adopted rules of conduct for its administrative law judges, but those rules have had little effect at the Parking Violations Bureau, where leadership continued to conduct business as usual. **IF** that leadership would encourage administrative law judge independence and impartiality, and inform the law judges on the few recurring bureau adjudication issues that an average motorist sitting as an administrative law judge cannot be expected to resolve adequately with a copy of the New York City Traffic Rules, the bureau's administrative law judges can and will do a very good job.". [source - http:// newyorkparkingticket.com/reform-still-needed-at-parking-violations-bureau/]. (Ex. #25).

180. With regards to ticket quotas and unimpartiality of NYC DOF PVB ALJ's, the " ALJRR " further states: " The failure by the City to draw this distinction in the rules and regulations governing its ALJ's and Hearing Officers is significant because when an ALJ receives evidence from an agency as part of his/her rule-making function, impartiality is not assumed, while impartiality is essential to the adjudicatory process. In order to prevent the role played by the ALJ serving the rule-making function from undermining the independence of ALJ's performing the adjudicatory function, the State and Federal governments have distinguished these two roles. The City, however, has not. The failure to do so undermines theconfidence of the Bar in the way the adjudicatory function is performed. Compounding this problem is the fact that the City, unlike the State, does not mandate that its ALJ's be independent of the agency they serve when performing the adjudicatory function. Specifically, 9 NYCRR § 4.131 bars a State agency from using an ALJ's rulings or decisions as criteria in making decisions concerning salary, promotion and benefits, working conditions, case assignments or opportunities. State agencies may not establish quotas for decisions, nor may the agencies direct the ALJ's to take a particular action in any given case. Furthermore, where an agency head does not adopt an ALJ's decision or recommendation, the agency head must give a written explanation for his/her failure to do so. Similar statutes, 5 U.S.C. §§ 554, 557, 3105

and 5372, have been adopted by the Federal government to insure the independence of its ALJ's. The City has not adopted similar safeguards." . (Ex #25).

181. Other examples of defendants violation of the Due Process Clause / unimpartiality: " Further evidence of defendants' denial of plaintiff's due process rights are based on a lack of impartial tribunal. Supervising Judge Alan Patricoff's statement that he " does not care " / " im not looking " about/at pictures which prove as fact and that his subordinate Judge Levine (guilty decision on NOPV # 3903997286) is corrupt and ignoring evidence (based on prejudice due to plaintiff's stated complaints against Levine) of a rear seat is one example. Not only was NOPV#3903997286 by TEA S. Mccain overturned on appeal but another improper registration NOPV # 3914792530 by S. Mccain was dismissed on the merits. - (Ex#24a,#24b,#16c, #16d,#16e,#16f,#15a)

182. Another example of Due Process Clause / unimpartiality violations is the appeal on NOPV # 131099184 where 2 appeal judges found plaintiff guilty. Subsequent to complaints that plaintiff's NOPV # 31099184 in person appeal request was illegally ignored, a second new 3 judge appeal panel found plaintiff not guilty on the merits despite a previous decision of guilty (the first appeal decision mysteriously and illegally disappeared). (#20c,#20f,#20a,#20b,#20e,#20g-#20j)

183. Another example of lack of impartiality and a corrupt NYC Dept. of Finance tribunal racket is ALJ Bradlee Biller who found plaintiff guilty on NOPV #1100489927 (summons issued at 1:00pm on June 8, 2006) where on June 8, 2006 in the same afternoon Biller stated in his decision " The photographs , and prior decisions, and statement of correction dated in 20002 do not (!!!!) persuasively establish that the required rear seat and fittings were removed from the vehicle at the time of the summons". Photos taken on the same day were provided to Biller in court within 4 hours of the issuance of the NOPV. Also it should be noted that on June 29, 2005 at 11:00pm plaintiff received NOPV # 1081626800 for improper registration. On June 30, 2005 ALJ Bradlee Biller states in another decision (on NOPV # 1081626800) on June 30, 2005 where he finds plaintiff not guilty : " respondent claims that the vehicle was properly equipped at the time the summons was issued, respondent's claim is supported by persuasive documentary evidence, testimony, photos etc.". Complaints by plaintiff against all of the above for said incidents were ignored. Plaintiff was forced to file 3 appeals on 3 separate NOPV's with all 3 being overturned in Plaintiff's favor. The above stated incidents are just a few examples of the conduct, actions and inaction by participants in this racketeering enterprise that are extreme and outrageous, shocking to the conscience, should not be tolerated in a civilized society.- (Ex #18a - #18n)

184. The continuous issuance and dismissal of all of approximately 50+ NOPV's over a 15 year period after the defendants and defendants' agents knew plaintiff

was in compliance with vehicle registration laws rules and regulations is a violation of due process.

185. Defendants refusal to allow plaintiff the right to cross-examine the government's witness who committed perjury on the accusatory Notice of Parking Violation document is a denial of due process. NYC Charter Chapter 45 §1046 which exempts the Parking Violations Bureau from " due process " discriminates and is a violation of equal protections clause and the Due Process Clause.- (Ex. #26)

186. Defendants and defendants agencies and agents extorted monies from plaintiff under duress with intimidation via perjurious s.

187. Defendant's long term continuous pattern of perjurious allegations that plaintiff is violating laws rules regulations that to not exist deprived plaintiff of his life liberty and pursuit of happiness.

188. Defendants' violation of plaintiff's 14th Amendment rights and Due Process Clause rights were also violations under Color of Law - 42 USC §1983 and 18 USC 241, 18 USC §242, and 18 USC §245.

AS FOR A SEVENTH CAUSE OF ACTION:

4th Amendment Rights 42 U.S.C. § 1983
against all Defendants officially, individually, jointly and severally

189. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 235 with the same force and effect as if herein set forth.

190. Defendants' perjurious issuance of nopvs without probable cause violated plaintiff's 4th Amendment rights under the United States Constitution.

191. Defendant's violated plaintiff's right to be secure in his papers and effects without probable cause.

192. Defendants fabricated facts and laws which do not exist. Defendants issued perjurious nopvs falsely accusing plaintiff of violating NYC DOT traffic rules for an improper registration - commercial vehicle.

193. Defendants and defendants' agents and agencies knew continuously from approx. 2000-2015 that plaintiff's vehicle was inspected and deemed a properly registered passenger van with one rear auto seat permanently installed behind the driver's seat.

194. All of defendants approximately 50+ perjurious nopvs from from approx.
2000-2015 issued without probable cause were dismissed. Defendants willfully
failed and refused to properly screen, hire, train, supervise, control, discipline and
fire agents who issued knowingly false and perjurious nopvs.

195. All of said issued  perjurious nopvs forced plaintiff to appear at an administrative
hearing before corrupt judges who were participants in the ticket quota enterprise
racket.

196. Defendants' continuous issuance of  perjurious nopvs infringed on plaintiff's right
to privacy and to be free from government harassment and oppression.

197. Defendants' continuous perjurious issuance of nopv's coerced plaintiff under
duress without probable cause under the threat of asset seizure to produce personal
papers and effects, identification, photos, videos etc in violation of his 4th
Amendment rights.

198. Defendants demanded that plaintiff produce papers and effects and testimony
without probable cause or warrant in Court under threat of asset seizure
amounted to an unreasonable search and seizure.

199. Defendants coerced plaintiff into paying fines before being able to proceed to
3 appeals. Said process was conducted  by corrupt judges at an unimpartial tribunal
based based on perjurious nopvs without probable cause. Said continuous process
amounted to an unreasonable search and seizure.

200. Defendants' violation of plaintiff's 4th Amendment rights were also violations
under Color of Law - 42 U.S.C. §1983 and 18 U.S.C. §241, §242, §245 .

AS FOR A EIGHTH CAUSE OF ACTION:

5th Amendment Rights 42 U.S.C. § 1983
against all Defendants officially, individually, jointly and severally

201. Plaintiff repeats and realleges and incorporates by reference the allegations in
paragraphs 1 through 235 with the same force and effect as if herein set forth.

202. Defendants' perjurious issuance of nopvs without probable cause violated
plaintiff's 5th Amendment rights under the United States Constitution.

203. Defendants fabricated facts and laws which do not exist. Defendants issued
perjurious nopvs falsely accusing plaintiff of violating NYC DOT
traffic rules for an improper registration - commercial vehicle.

66

204. Defendants and defendants' agents and agencies knew continuously from 2000-2015 that plaintiff's vehicle was inspected and deemed a properly registered passenger van with one rear auto seat.

205. All of defendants approximately 50+ perjurious nopvs from 2000-2015 issued without probable cause were dismissed. Defendants willfully failed and refused to properly screen, hire, train, supervise, control, discipline and fire agents who issued knowingly false and perjurious nopvs.

206. Plaintiff was coerced into giving up his right to remain silent due to defendants threats of asset and vehicle seizure.

207. If plaintiff did not come to court approximately 50+ times to provide sworn testimony defense and papers and effects defendants would have issued a judgment against plaintiff and seized his assets.

208. Defendants' violation of plaintiff's 5th Amendment rights were also violations under Color of Law - 42 U.S.C. §1983 and 18 U.S.C. § 241, § 242, §245.

AS FOR A NINTH CAUSE OF ACTION:

1st Amendment Rights 42 U.S.C. § 1983
against all Defendants officially, individually, jointly and severally

209. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 235 with the same force and effect as if herein set forth.

210. Plaintiff's 1st Amendment rights were violated.

211. Plaintiff's right to petition the government for a redress of grievances was violated.

212. Plaintiff made approximately 50 complaints to NYPD internal affairs. Internal affairs never responded to plaintiff regarding his many complaints in writing, via telephone and emails.

213. On one occasion, plaintiff was contacted by Jacqueline Guevara from NYPD traffic which is the same agency plaintiff complained about. Said alleged investigation is a conflict of interest. Complaints to internal affairs concerning the investigation, ticket quotas, the continuous issuance of perjurious nopvs and defamatory statements Michael Sileo made to obstruct a public advocate's inquiry were never responded to.- (#14b, #22b, #22a).

214. Defendants' and defendants' agents have responded with malicious intent to plaintiff's official complaints. Defendants' and defendants agents have targeted plaintiff's vehicle with up to 4 nopvs by one agent (R. Simmons). Defendants' agents have threatened plaintiff and his process server with arrest (other previous threats of arrest). Defendants and defendants agents have defamed plaintiff accusing him of removing the rear seat and having seat fittings that do not exist. Defendants have encouraged the harassment of plaintiff by refusing to discipline or punish subordinates' willful misconduct. Defendants and their agents have ignored plaintiff's complaints / "grievances" (failing to take action on almost 50 internal affair complaints for 15 years). Defendants' continuous refusal to address plaintiff's requests for redress of grievances and retaliation in response his complaints violated his constitutional rights under the 1st amendment. (Ex #30a,#30b,#30c)

215. On or about July 30, 2014 Chief ALJ Judge Mary Gotsopoulis had armed guards threaten plaintiff with violence and arrest for complaining about a clerk at 66 John Street and for not responding to plaintiff's grievance letters concerning the continuous issuance of perjurious improper registration NOPV's. Said conduct was done under color of law and in violation of Plaintiff's 1st Amendment right to petition government for redress of grievances. Plaintiff's 1st amendment right to make a complaint to government without fear of punishment or reprisals was violated. As stated throughout the complaint, plaintiff has been retaliated against by defendants and their agents for his continuous complaints over 15 years. Said retaliation has consisted of defendants' actions, inactions, continued issuance of perjurious nopvs threatening vehicles confiscation, defamation, slander, libel, and threats etc. (Ex. #29).

216. No agency redressed plaintiff's grievances. Defendants by their failure to redress plaintiff's grievances promoted further harassment and violations of plaintiff's constitutional rights.

217. Defendants' violation of plaintiff's 5th Amendment rights were also violations under Color of Law - 42 U.S.C. §1983 and 18 U.S.C. § 241, §242, §245..

### AS FOR A TENTH CAUSE OF ACTION

42 U.S.C. § 1983 - Gross Negligence - Willful Misconduct
against all Defendants officially, individually, jointly and severally

218. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 235 with the same force and effect as if herein set forth.

219. Defendants' and defendants' agents' above mentioned actions, continuous issuance of perjurious nopvs, violations of plaintiff's Due Process Clause rights, and violation of plaintiff's constitutional rights over approx. a 15 year period constitutes gross negligence and willful misconduct.

220. Defendants and their agents aforementioned tortious and constitutional violations was intentional, with a reckless indifference / disregard for plaintiff's rights. Defendants failed to use reasonable care to avoid causing plaintiff damages.

221. Defendants ALJ's decisions and orders which disregarded NYC DOT traffic rule §4-01(b) for plaintiff's parked vehicle by stating " all laws and rules of the State of of New York " is evidence of official municipal policy and custom. Defendants and defendants agents aforementioned acts which violated plaintiff's constitutional rights amounted to intentional wrongdoing.

222. Defendants and defendants agents actions and inactions were ministerial acts. Ministerial acts—meaning conduct requiring adherence to a governing rule, with a compulsory result—may subject the municipal employer to liability for negligence (*Tango v Tulevech*, <u>61 N.Y.2d 34</u>, 40-41).

223. Defendants' and defendants' agents have willfully engaged in the aforementioned extreme and outrageous conduct with malevolent intent causing severe emotional distress over approximately a 15 year period.

AS FOR A ELEVENTH CAUSE OF ACTION

Monell Claims -
- Ticket Quota Policy and Practice,
- Failure To Screen, Hire, Train, Supervise, Control, Discipline, Fire -
against all Defendants- officially, individually, jointly and severally

224. Plaintiff repeats and realleges and incorporates by reference the allegations in paragraphs 1 through 235 with the same force and effect as if herein set forth.

225. Plaintiff's aforementioned facts and evidence are constitutional violations that make out Monell Claims.

226. Defendants' and defendants' agents willful failure and refusal to screen, train, supervise, control, discipline and fire subordinate Traffic Enforcement Agents and NYPD Police Officers is the cause of plaintiff receiving approximately 50+ perjurious nopvs over approx. a 15 year time period.

227. Defendants aforementioned ticket quota policy and practice is official policy and

custom. Said ticket quota policy and practice is the cause of the issuance of the aforementioned issuance of perjurious nopvs and tortious and related constitutional violations.

228. Defendants and their agents inspected plaintiff's vehicle on 11 or more occasions over a 15 year period and observed a rear auto seat that was permanently installed in compliance with all NYC and NYS passenger vehicle registration laws. Defendants further knew plaintiff was in compliance with NYC DOT traffic rule §4-01(b) but refused to enforce and adjudicate with said commercial vehicle definition for a parked vehicle in the City of New York. Defendants refusal to apply the correct laws and rules of New York caused constitutional violations and other violations of law.

229. Despite knowing plaintiff's vehicle was in compliance with vehicle registration laws and Michael Sileo's claims to have instructed his subordinates to not issue nopvs on plaintiff's van, Simmons and Hunte (and other TEA's) ignored direct orders and issued perjurious nopvs.

230. Despite complaints to NYPD Internal Affairs and many City of New York officials, defendants and their agents continuously issued approx. 50+ perjurious nopvs over a 15 year period. Many agents targeted plaintiff with numerous nopvs despite complaints and knowledge that plaintiff was in compliance with NYS DMV and NYC DOT registration rules.

231. The Aforementioned acts by R. Simmons (4 nopvs), J.A.Hunte, Bruno Iciano, Michael Sileo Janet Hayward, Ida Terry and others agents over the 15 year period etc. amounts to " deliberate indifference " - City of Canton, Ohio v. Harris 489 U.S. 378 (1989).

232. NYPD has a history of failure to supervise and train. Adrian Schoolcraft states a first hand account of defendants' failure to train and supervise in his 2nd Amended Complaint (#2a - ¶87) which states " Furthermore, this meeting was an attempt to prevent plaintiff from exposing the NYPD's pattern and practice of falsifying training logs during roll calls, in which commanding officers would require patrol officers to sign a log indicating that they received training that day on various police subjects, when in fact, they had received no such training from their supervisors ".

233. Other evidence of defendants' failure to train and supervise is proven in an email dated (October 21, 2013 Michael Sileo's subordinate Hossain.Islam stated in an email with regards to improper registration - commercial vehicle NOPV's being issued by NYPD traffic agents against plaintiff's van...): " ...**All enforcement personals were advised that not to write any summonses to the vehicle which is**

**properly registered...".** Despite said alleged training and supervision, R. Simmons subsequently issued a perjurious NOPV on March 1, 2014 that was dismissed on merits. Subsequent perjurious NOPV's by J.A. Hunte on August 26, 2014, Gita Paul on September 12, 2014 and other TEA's also prove failure to train and supervise. (Ex. #14l,#14k,#14b,#14d etc.).

234. More evidence of supervisor's failure to train is as follows:
On or about January 28, 2015 NYPD Traffic Investigator Jacqueline Guevara was asked to investigate complaints plaintiff made to NYPD Internal Affairs Bureau. Plaintiff complained to the City of New York, their agencies and agents approximately 50+ times that issued nopvs were perjurious, harassment and the result of a policy and practice of ticket quotas. Over a 15 year period of complaints to " IAB " resulted in only one complaint response to complaint # 14-08088 by referring said complaint to NYPD Traffic for investigation. Said referral was a conflict of interest. NYPD has refused to provide the final investigation report in violation of FOIL laws without any basis in fact or law. However, Investigator Jacqueline Guevara stated in an April 20, 2015 email that " On April 20, 2015 the Traffic Enforcement District Communication Unit completed the investigation of your complaint IAB # 14-08088 in that your vehicle received summonses for violation code 83 "Improper Registration " , and that members of NYPD Traffic were <u>not properly instructed by their supervisors</u> on the issuance of summonses of code 83 " Improper Registration " . The investigation revealed that there was sufficient evidence to corroborate your claim therefore this investigation is closed as substantiated. ". City of Canton, Ohio v. Harris 489 U.S. 378 (1989). It should be noted that the subject of the investigative complaint is defendant R. Simmons who issued 2 perjurious nopvs before supervisors Sileo and Singh inspected the vehicle in September 2012 and assured plaintiff that Simmons (and all other traffic agents) were advised to not issue anymore improper registration nopvs against plaintiff. However, Simmons issued 2 more perjurious improper registration nopvs subsequent to being ordered not to do so. No disciplinary action was taken against Simmons for her refusal to follow alleged instructions / orders and her further criminal acts of perjury and harassment. Said willful misconduct by City official and their agents is proof of deliberate indifference,failure to screen, supervise, train, discipline and fire which is a basis for a monell claim - Monell v. Department of Soc. Svcs., 436 U.S. 658 (1978). Defendants' deliberate indifference also is evidence of a ticket quota policy and practice, and racketeering.

<u>REQUESTED RELIEF</u>

235. WHEREFORE, Plaintiff, Brad Ralin, Individually, respectfully requests that this Honorable Court will grant judgment against Defendants as hereinafter set forth:

   1. On the First Cause of Action against all Defendants (officially, individually,

jointly and severally), economic, compensatory, punitive, general, special exemplary and plenary damages in the amount of One Million Dollars or an amount to be determined at trial, and reasonable attorneys' fees and costs under 42 U.S.C. Section 1988;

2. On the Second Cause of Action against all Defendants (officially, individually, jointly and severally), economic, compensatory, punitive, general, special exemplary and plenary damages in the amount of One Million Dollars or an amount to be determined at trial, and reasonable attorneys' fees and costs under 42 U.S.C. Section 1988;

3. On the Third Cause of Action, against all Defendants (officially, individually, jointly and severally), for punitive damages and all treble damages based on compensatory damages per RICCO statute and/or the Hobbs Act in the amount of Five Hundred Thousand Dollars or as allowed by law to be determined at trial;

4. On the Fourth Cause of Action against all Defendants (officially, individually, jointly and severally), economic, compensatory, punitive, general, special, exemplary, and plenary damages in the amount of One Million Dollars or in an amount to be determined at trial;

5. On the Fifth Cause of Action against all Defendants ( officially, individually, jointly and severally), economic, compensatory, punitive, general, special, exemplary. and plenary damages in the amount of Five Hundred Thousand Dollars or in an amount to be determined at trial;

6. On the Sixth Cause of Action against all Defendants (officially, individually, jointly and severally), economic, compensatory, punitive, general, special, consequential, incidental, exemplary, and plenary damages in the amount of Two Million Dollars or in an amount to be determined at trial;

7. On the Seventh Cause of Action against all Defendants (officially, individually, jointly and severally), economic, compensatory, punitive, general, special exemplary, and plenary damages in the amount of One Hundred Thousand Dollars or in an amount to be determined at trial;

8. On the Eighth Cause of Action against all Defendants (officially, individually, jointly and severally), economic, compensatory, punitive, general, special exemplary, and plenary damages in the amount of One Hundred Thousand Dollars or in an amount to be determined at trial;

9. On the Ninth Cause of Action against all Defendants (officially,

72

individually, jointly and severally), economic, compensatory, punitive,
general, special exemplary and plenary damages in the amount of
One Hundred Thousand   Dollars or an amount to be determined at trial,

10. On the Tenth Cause of Action against all Defendants (officially,
individually, jointly and severally), economic, compensatory, punitive,
general, consequential, incidental,special exemplary and plenary damages in
the amount of One Million Dollars or an amount to be determined
at trial,

11. On the Eleventh Cause of Action against all Defendants (officially,
individually, jointly and severally), economic, compensatory, punitive,
general, special exemplary and plenary damages in the amount of One Million
Dollars or an amount to be determined at trial,

12.  Against all Defendants (officially, individually, jointly and severally) for
prejudgment interest as allowed by law;

13.  For all costs of suit, including attorney fees, investigators and other related
fees and costs pursuant to 42 U.S.C. § 1988;

14. For such other and further extraordinary declaratory and injunctive relief as
this Honorable Court may deem just and proper on behalf of plaintiff and
others similarly situated and to preserve the United States Constitution.

15.  For such other and further relief as this court may deem necessary, just and
proper and in the interest of justice.

**** DVD Exhibits 1a-79 - 241 files attached on page 74..
Exhibit # 79 = list of exhibits

July 5, 2016

Brad Ralin

TO: MR DANIEL G. SAAVEDRA ESQ
ATTORNEY FOR DEFENDANTS
NYC LAW DEPT.
100 CHURCH STREET
N.Y. N.Y. 10007

65-09 99th STREET
FLUSHING, NY 11374
PROSE 2015 @HOTMAIL.COM

73

**DVD EXHIBITS**
**# 1a-79**
**241 FILES**
**Ralin v City of New York et al**
**15 cv 2978**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------X

Brad Ralin

                    Plaintiff,

          -against-

CITY OF NEW YORK
ET AL          Defendant. S

----------------------------------------X

**ORIGINAL**

2016 JUL -5 PM 3:07

Affirmation of Service

15 cv 2978 ( )
(KAM) (ST)

I, Brad Ralin, declare under penalty of perjury that I have

served a copy of the attached 3rd AMENDED COMPLAINT AND DVD EXHIBITS

upon MR. DANIEL G. SAAVEDRA ESQ ATTORNEY FOR DEFENDANTS

whose address is: NYC LAW DEPT
100 CHURCH STREET NY NY 10007

Dated: JULY 5, 2016
                    , New York

                              _____
                              Signature
                              65-09 99th STREET
                              Address
                              FLUSHING, NY 11374
                              City, State, Zip Code